JUSTINE FISCHER, ATTORNEY AT LAW
JUSTINE FISCHER, OSB # 81224
710 S.W. Madison Street, Suite 400
Portland, OR  97205
Telephone:  503/222-4326
503/222-6567 (fax)
Jfattyor@aol.com

ROBBINS GELLER RUDMAN
    & DOWD LLP
DARREN J. ROBBINS
DAVID C. WALTON
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
drobbins@rgrdlaw.com
dwalton@rgrdlaw.com

Attorneys for Plaintiff

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| MICHAEL E. DEERING, Individually and on Behalf of All Others Similarly Situated, ) <br><br> Plaintiff, ) <br><br> vs. ) <br><br> GALENA BIOPHARMA, INC., MARK J. AHN, RYAN M. DUNLAP and MARK W. SCHWARTZ, ) <br><br> Defendants. ) | No. _____ <br><br> CLASS ACTION <br><br> COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS <br><br><br><br> DEMAND FOR JURY TRIAL |

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES
LAWS

Plaintiff, individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Galena Biopharma, Inc. ("Galena" or the "Company"), as well as media reports about the Company and Company press releases. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all persons who purchased or otherwise acquired Galena common stock between November 6, 2013 and February 14, 2014, inclusive (the "Class Period"), against Galena and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 ("1934 Act"). These claims are asserted against Galena and certain of its officers and/or directors who made materially false and misleading statements during the Class Period in press releases and filings with the SEC.

2.      Galena is a biotechnology company focused on the development and commercialization of targeted oncology treatments that address major unmet medical needs to advance cancer care. The Company is pursuing the development of cancer therapeutics using peptide-based immunotherapy products, including its main product candidate, NeuVax$^{TM}$ ("E75"), for the treatment of breast cancer and other tumors.

3.      Throughout the Class Period, defendants violated the federal securities laws by disseminating false and misleading statements to the investing public. As a result of defendants'

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Page 1

false statements, Galena's stock traded at artificially inflated prices during the Class Period, reaching a high of $7.48 per share on January 16, 2014.

4.     On February 12, 2014, Adam Feuerstein ("Feuerstein") published an article on *TheStreet.com* claiming Galena was engaging in a misleading brand awareness campaign aimed at boosting its stock price. Additionally, the article represented that Galena paid investor relations firm The DreamTeam Group ("DreamTeam") to publish articles under aliases promoting the Company's stock without disclosing who paid for them.

5.     On this news, Galena's stock dropped $0.85 per share to close at $4.34 per share on February 12, 2014, a one-day decline of 16% on volume of nearly 24 million shares.

6.     Then, on February 14, 2014, Galena issued a letter to its shareholders admitting the Company had paid DreamTeam to promote the Company's stock.

7.     On this news, Galena's stock dropped $0.63 per share to close at $3.73 per share on February 14, 2014, a one-day decline of 14% on volume of nearly 41 million shares.

8.     As a result of defendants' false statements, Galena stock traded at artificially inflated levels during the Class Period. While Galena's stock was artificially inflated, its Chief Executive Officer ("CEO") was able to sell $3.8 million worth of his Galena stock. However, after the above revelations seeped into the market, the Company's stock was hammered by massive sales, sending the stock's price down 50% from its Class Period high.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the 1934 Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 (17 C.F.R. §240.10b-5) promulgated thereunder by the SEC. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the 1934 Act (15 U.S.C. §78aa).

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

10.    Venue is proper in this District pursuant to §27 of the 1934 Act and 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District, Galena maintains its principal place of business in this District and certain of the acts and conduct complained of herein, including dissemination of materially false and misleading information to the investing public, occurred in this District.

11.    In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

12.    Plaintiff Michael E. Deering purchased the common stock of Galena during the Class Period as set forth in the certification attached hereto and was damaged as the result of defendants' wrongdoing as alleged in this complaint.

13.    Defendant Galena is an integrated global oncology company.  Galena maintains its headquarters at 4640 SW Macadam Avenue, Suite 270, Portland, Oregon  97239.

14.    Defendant Mark J. Ahn ("Ahn") is, and at all relevant times was, President, CEO and a director of the Company.  During the Class Period, defendant Ahn sold 796,765 shares of his Galena stock for proceeds of over $3.8 million.

15.    Defendant Ryan M. Dunlap ("Dunlap") is, and at all relevant times was, Chief Financial Officer ("CFO") and Vice President of the Company.

16.    Defendant Mark W. Schwartz ("Schwartz") is, and at all relevant times was, Chief Operating Officer and Executive Vice President of the Company.  During the Class Period, defendant Schwartz sold 100,000 shares of his Galena stock for proceeds of $557,000.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES
LAWS

17.    The defendants named above in ¶¶14-16 are referred to herein as the "Individual Defendants."

18.    The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Galena's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

19.    Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about Galena.  Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Galena common stock was a success, as it: (i) deceived the investing public regarding Galena's prospects and business; (ii) artificially inflated the price of Galena common stock; (iii) caused plaintiff and other members of the Class to purchase Galena common stock at inflated prices; and (iv) permitted defendants Ahn and Schwartz and other insiders to sell over 2.8 million shares of their Galena stock at artificially inflated prices for proceeds of over $15.2 million.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES
LAWS

Page 4

## BACKGROUND

20.    Galena is a biopharmaceutical company that develops and commercializes innovative, targeted oncology treatments that address major unmet medical needs to advance cancer care. It is developing a pipeline of immunotherapy product candidates for the treatment of various cancers based on the E75 peptide.

21.    In July 2013, Galena entered into a contract with DreamTeam to promote its stock for 240 days. DreamTeam then published a variety of articles under multiple aliases on *TheStreet.com*, omitting to disclose that DreamTeam was paid by Galena to promote it. Several of the articles were also falsely attributed to various third parties.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

22.    On November 6, 2013, Galena issued a press release announcing its third quarter 2013 financial results. The Company reported a net loss of $9.3 million, or $(0.11) diluted earnings per share, and net revenue of $1.2 million for the third quarter ending September 30, 2013. The release stated in part:

> "Our commercial success to date with Abstral® has been very encouraging and we are excited to report initial revenues ahead of schedule. With our sales force and commercial organization fully deployed, we continue to make significant strides with physicians, payors and patients—and expect continuing strength with the launch," said Mark J. Ahn, Ph.D., President and Chief Executive Officer. "We are also making steady progress in advancing our NeuVax™ and FBP cancer immunotherapy pipeline."

23.    On January 16, 2014, Galena's stock reached its Class Period high of $7.48 per share.

24.    On February 12, 2014, Feuerstein published an article on *TheStreet.com*, claiming Galena was engaging in a misleading brand awareness campaign aimed at boosting its stock price. Additionally, the article represented that Galena paid investor relations firm DreamTeam to publish

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Page 5

articles under aliases promoting the Company's stock without disclosing who paid for them. The

article stated in part:

> Two articles touting Galena Biopharma(GALE) were removed from *Seeking Alpha* Monday because they were written by the same person using different aliases.
>
> This is the second time Seeking Alpha has been forced to take action against individuals using multiple aliases to tout Galena, a small drug developer with a breast cancer vaccine in a phase III study. In January 2013, the investor Web site removed five articles promoting Galena written by the same individual under three different pseudonyms.
>
> The most recent incident is more serious and potentially damaging because of evidence linking Galena to a stock-promotions firm which wrote and published the articles on *Seeking Alpha*. The articles were part of a broader, coordinated "brand awareness campaign" designed to boost Galena's stock price, according to a document obtained by *TheStreet*.
>
> Aided by this promotional campaign, Galena shares tripled in value from this summer. Coincidence or not, Galena insiders have made millions of dollars by selling company stock in January.
>
> Galena did not respond to phone calls and emails seeking comment.
>
> In July 2013, Galena paid $50,000 to a subsidiary of The DreamTeam Group for 240 days of "advertising, branding, marketing, investor relations and social media services," according to a disclaimer on The DreamTeam Group's Web site.
>
> *     *     *
>
> Publicly traded companies routinely pitch their stock to new investors, but some of DreamTeam's marketing tactics appear to resemble stock promotion schemes which run afoul of standard investor relations practices. Among its other services, DreamTeam Group operates more than two dozen investor Web sites with names like "Home Run Stocks," "Touchdown Stocks," "Quality Stocks," and "Tout Sheet." The Web sites entice investors with stock picks that can "trade for at least a 100% profit."
>
> All the stock picks touted on these DreamTeam Web sites, including Galena, are paying clients – a fact omitted from the Web sites unless someone clicks on a small disclaimer link.
>
> Galena was promoted on many of the DreamTeam stock-touting Web sites to create "market buzz about the company to a new group of investors," according to a DreamTeam document, "Galena Biopharma Case Study: Investor Awareness Campaign" obtained by *TheStreet*.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Page 6

As part of this campaign, DreamTeam published favorable articles about Galena on Seeking Alpha on Aug. 7, 2013 and Nov. 22, 2013, according to the case-study document. But the articles were written under aliases and make no mention of DreamTeam or its paid marketing relationship with Galena. Instead, they're written from the perspective of individual investors recommending an investment in Galena to other readers of *Seeking Alpha.*

"... investors must look for biopharmaceutical companies that have a unique approach to science, a deep pipeline, drugs with huge market potential, and a healthy fundamental picture. Galena has all of these attributes and shareholders with patience will be handsomely rewarded in due time," is how the author "Wonderful Wizard" pitches Galena to Seeking Alpha readers in the article, headlined "Galena Biopharma Presents an Attractive Investment Opportunity," [The article was actually published on Aug. 6.]

On Nov. 22, "Kingmaker" published a similar article on *Seeking Alpha* titled, "Galena Biopharma Continues to Develop a Deep Pipeline of Products." Neither article disclosed a financial relationship with DreamTeam Group or Galena.

Both articles were removed from *Seeking Alpha* on Monday because they were written by the same person.

"We pulled the Aug. 6 and Nov. 22 articles. Upon investigation, the contributor was in violation of our Terms of Use because 'Kingmaker' and 'Wonderful Wizard' were the same person but failed to tell us so," said *Seeking Alpha* Vice President of Content and Editor in Chief Eli Hoffman.

*Seeking Alpha* was unable to determine if the author was paid by DreamTeam Group to write the two articles on Galena, added Hoffman. Hoffman would not disclose the real identify of the author publishing under the "Kingmaker" and "Wonderful Wizard" aliases.

\*       \*       \*

All that DreamTeam promotion worked wonders for Galena's stock price, which tripled in value from $2 per share in July 2013 to almost $7.50 in the middle of January. DreamTeam's contract for eight months of work with Galena ends this month.

Galena CEO Ahn unloaded $2.8 million in company stock in January, according to SEC filings. Director Steven Kriegsman, who's also the CEO of Cytrx, pocketed $2.1 million from the sale of Galena stock in the same month, according to SEC filings. Other Galena executives and directors have also been selling shares.

25.    On this news, Galena's stock dropped $0.85 per share to close at $4.34 per share on

February 12, 2014, a one-day decline of 16% on volume of nearly 24 million shares.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES                    Page 7
LAWS

26.    Then, on February 14, 2014, Galena issued a letter to shareholders signed by

defendant Ahn, which stated in part:

Dear Shareholders:

Due to the recent media attention on Galena Biopharma that we acknowledge
is having an impact on investor confidence, we felt it necessary, as a service to our
shareholders, to publicly respond to the discussions and set the record straight.

The genesis of this attention is due to a single reporter, Adam Feuerstein from
TheStreet.com, who clearly has an agenda when it comes to Galena. This can be
evidenced by his numerous, tabloid-like articles on the company that have appeared
over the past three years and are sensational but largely devoid of true information.
The article this week is just another in the line, which for us have become noise.

\*        \*        \*

The only facts in Mr. Feuerstein's most recent article that are remotely
accurate are that Galena previously engaged the DreamTeamGroup and that insiders
at the company, including me, divested shares in mid January.

27.    On this news, Galena's stock dropped $0.63 per share to close at $3.73 per share on

February 14, 2014, a one-day decline of 14% on volume of nearly 41 million shares.

28.    As a result of defendants' false statements, Galena common stock traded at artificially

inflated levels during the Class Period.  However, after the above revelations seeped into the market,

the Company's stock was hammered by massive sales, sending the stock's price down 50% from its

Class Period high.

### LOSS CAUSATION

29.    During the Class Period, as detailed herein, defendants made false and misleading

statements and engaged in a scheme to deceive the market and a course of conduct that artificially

inflated the price of Galena common stock and operated as a fraud or deceit on Class Period

purchasers of Galena common stock by misrepresenting the Company's business and prospects.

Later, when defendants' prior misrepresentations and fraudulent conduct became apparent to the

market, the price of Galena common stock fell precipitously, as the prior artificial inflation came out

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES                    Page 8
LAWS

of the price over time. As a result of their purchases of Galena common stock during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## NO SAFE HARBOR

30.     Galena's verbal "Safe Harbor" warnings accompanying its oral forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.

31.     Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Galena who knew that the FLS was false. None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Galena common stock during the Class Period (the "Class"). Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

33.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Galena has over 105 million shares of stock outstanding, owned by hundreds if not thousands of persons.

34.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions which may affect individual Class members include:

      (a)     whether the 1934 Act was violated by defendants;

      (b)     whether defendants omitted and/or misrepresented material facts;

      (c)     whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

      (d)     whether defendants knew or deliberately disregarded that their statements were false and misleading;

      (e)     whether the price of Galena common stock was artificially inflated; and

      (f)     the extent of damage sustained by Class members and the appropriate measure of damages.

35.     Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

36.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

37.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

38.    Plaintiff makes the allegations herein based upon the investigation of plaintiff's counsel, which included a review of regulatory filings made by Galena with the SEC, as well as other regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

39.    Plaintiff incorporates ¶¶1-38 by reference.

40.    During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

41.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)    employed devices, schemes and artifices to defraud;

(b)    made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Galena common stock during the Class Period.

42.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Galena common stock.  Plaintiff and the Class

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Page 11

would not have purchased Galena common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

43.     Plaintiff incorporates ¶¶1-42 by reference.

44.     The Individual Defendants acted as controlling persons of Galena within the meaning of §20(a) of the 1934 Act. By virtue of their positions with the Company, and ownership of Galena stock, the Individual Defendants had the power and authority to cause Galena to engage in the wrongful conduct complained of herein. Galena controlled the Individual Defendants and all of its employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding plaintiff and the members of the Class damages, including interest;

C.     Awarding plaintiff's reasonable costs and attorneys' fees; and

D.     Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED:  March 5, 2014

JUSTINE FISCHER, Attorney at Law
JUSTINE FISCHER
710 S.W. Madison Street, Suite 400
Portland, OR  97205
Telephone:  503/222-4326
503/222-6567 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
DARREN J. ROBBINS
DAVID C. WALTON
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

JOHNSON & WEAVER, LLP
FRANK J. JOHNSON
110 West A Street, Suite 750
San Diego, CA  92101
Telephone:  619/230-0063
619/255-1856 (fax)

Attorneys for Plaintiff

S:\CptDraft\Securities\Cpt Galena Biopharma.docx

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES
LAWS

Page 13

## CERTIFICATION OF PLAINTIFF PURSUANT
## TO THE FEDERAL SECURITIES LAWS

I, Michael E Deering, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.     I have reviewed the complaint and authorize its filing.

2.     I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3.     I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4.     I made the following transactions during the Class Period in the securities that are the subject of this action.

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 1/10/2014 | 2,000 | $ 6.38 |
| 1/17/2014 | 1,000 | $ 7.07 |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| 2/12/2014 | 2,000 | 4.46 |
| | | |

5.     I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

6.     I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _28_ day of February 2014.