# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MICHAEL E. DEERING,** individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>**GALENA BIOPHARMA, INC., MARK J. AHN, RYAN M. DUNLAP, and MARK W. SCHWARTZ**,<br><br>    Defendants.<br>_____ | Case No. 3:14-cv-00367-SI<br>Related Cases:<br> 3:14-cv-00389-SI<br> 3:14-cv-00410-SI<br> 3:14-cv-00435-SI<br> 3:14-cv-00558-SI<br><br><br>**ORDER CONSOLIDATING CASES, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD AND LIAISON COUNSEL** |
| **DAVID HAU,** individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>**GALENA BIOPHARMA, INC., MARK J. AHN, RYAN M. DUNLAP, and MARK W. SCHWARTZ**,<br><br>    Defendants.<br>_____ | Case No. 3:14-cv-00389-SI |

| | |
|---|---|
| **JAMES CLAVIJO,** individually and on behalf of all others similarly situated, | Case No. 3:14-cv-00410-SI |
| Plaintiff, | |
| v. | |
| **GALENA BIOPHARMA, INC., MARK J. AHN, RYAN M. DUNLAP, and MARK W. SCHWARTZ,** | |
| Defendants. | |
| ──────────────────────── | |
| **YOUNG JANG,** individually and on behalf of all others similarly situated, | Case No. 3:14-cv-00435-SI |
| Plaintiff, | |
| v. | |
| **GALENA BIOPHARMA, INC., MARK J. AHN, STEVEN KRIEGSMAN, THE DREAMTEAM GROUP, and MISSIONIR,** | |
| Defendants. | |
| ──────────────────────── | |
| **GONZALO BAYA,** individually and on behalf of all others similarly situated, | Case No. 3:14-cv-00558-SI |
| Plaintiff, | |
| v. | |
| **GALENA BIOPHARMA, INC., MARK J. AHN, MARK W. SCHWARTZ, STEVEN KRIEGSMAN, THE DREAMTEAM GROUP, and MISSIONIR,** | |
| Defendants. | |

PAGE 2 – ORDER CONSOLIDATING CASES

**Michael H. Simon, District Judge.**

Several shareholders of Galena Biopharma, Inc. ("Galena" or "the Company") filed five putative class action securities fraud lawsuits against Galena, several of its officers or directors, and others. These lawsuits assert substantially the same claims arising under the Securities Exchange Act of 1934 ("1934 Act"), although the beginning and ending dates of the alleged class periods differ to some extent. In addition, although all five lawsuits name as defendants both Galena and its president and chief executive officer, Mark J. Ahn ("Ahn"), who was also a director of Galena, the lawsuits differ to some extent in their other named defendants.

Five persons or groups of persons who allege they are shareholders of Galena have filed, under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, timely motions to: (a) consolidate the five lawsuits; (b) be appointed by the Court as lead plaintiff; and (c) have the Court approve the lead plaintiff's selection of lead and liaison counsel. The Court first considers the pending motions to consolidate. Second, the Court turns to the motions to appoint the lead plaintiff or plaintiffs. Third, the Court addresses the appropriate lead and liaison counsel to represent the lead plaintiff or plaintiffs in the consolidated action.

## STANDARDS

### A.    Consolidation

The Court must resolve pending motions to consolidate before appointing the lead plaintiff and approving lead counsel. According to the PSLRA, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under [the 1934 Act] has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination [of lead plaintiff] until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA, however, did not displace the traditional legal standards for consolidation under Rule 42 of the Federal Rules

of Civil Procedure ("Rule 42"). *See In re Fusion-io, Inc. Securities Litigation*, 2014 WL 2604991, at *2 (N.D. Cal. June 10, 2014).

Rule 42(a) provides:

> If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

In determining whether to consolidate cases, the court weighs the interest in judicial convenience against the potential for delay, confusion, and prejudice caused by consolidation. *Fusion-io*, 2014 WL 2604991, at *2 (citing *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984)). Further, the district court has broad discretion under Rule 42 to consolidate cases pending in the same district. *Investors Research Co. v. United States Dist. Court for Cent. Dist.*, 877 F.2d 777, 777 (9th Cir. 1989).

## B. Selection of Lead Plaintiff

As explained by U.S. District Judge Koh in *Fusion-io*, the PSLRA governs the selection of a lead plaintiff in private securities class actions. *Fusion-io*, 2014 WL 2604991, at *3. The lead plaintiff is to be the "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). Under the PSLRA, a three-step process determines the lead plaintiff. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). First, the plaintiff who filed the earliest action governed by the PSLRA must publicize the pendency of the action, the claims made, and the purported class period "in a widely circulated national business-oriented publication or wire service." 15 U.S.C. § 78u-4(a)(3)(A)(i)(I).[1] This notice must also alert the

---

[1] This publication is to be made "[n]ot later than 20 days after the date on which the complaint is filed." 15 U.S.C. § 78u-4(a)(3)(A)(i).

public that "any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).[2]

Second, the court selects the presumptive lead plaintiff. *See Cavanaugh*, 306 F.3d at 729-30 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). In order to determine the presumptive lead plaintiff, "the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Id.* at 730 (footnote omitted). After the court identifies the plaintiff (or plaintiff group)[3] with the most to gain, the court determines whether that plaintiff, based on the information he or she provides, "satisfies the requirements of Rule 23(a) [of the Federal Rules of Civil Procedure ("Rule 23(a)"], in particular those of 'typicality' and 'adequacy.'" *Id.* If that plaintiff satisfies the requirements of Rule 23(a), that plaintiff becomes the presumptive lead plaintiff. *Id.* If not, the court selects the plaintiff with the next-largest financial stake and determines whether that plaintiff satisfies the requirements of Rule 23(a). *Id.* The court repeats this process until it selects a presumptive lead plaintiff. *Id.* Further, "[t]he majority of the courts have permitted plaintiffs to aggregate their losses for purposes of the lead plaintiff determination," *Yanek v. Staar Surgical Company*, 2004 WL 5574358, at *4 (C.D. Cal. Dec. 15, 2004), although the Ninth Circuit has not yet expressed its view on this issue. *See Cavanaugh*, 306 F.3d at 731 n.8 ("While a 'group of persons' can collectively serve as a lead plaintiff, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), we are not asked to determine whether a group can satisfy the 'largest financial interest' requirement by aggregating losses.").

---

[2] Those who wish to move the court for appointment as lead plaintiff must do so "not later than 60 days after the date on which the notice is published." 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

[3] The PSLRA expressly provides that "the most adequate plaintiff" may be a "group of persons." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Third, those plaintiffs not selected as the presumptive lead plaintiff may "rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.* (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). This is done by showing that the presumptive lead plaintiff either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb). If the court determines that the presumptive lead plaintiff does not meet the typicality or adequacy requirements, then it must return to step two, select a new presumptive lead plaintiff, and again allow the other plaintiffs to rebut the new presumptive lead plaintiff's showing. *Cavanaugh*, 306 F.3d at 731. The court repeats this process "until all challenges have been exhausted." *Id.* (citation and footnote omitted).

**C.    Approval of the Lead and Liaison Counsel**

Under the PSLRA, the lead plaintiff is given the right, subject to court approval, to "select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "[T]he district court should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently." *Cohen v. U.S. Dist. Court,* 586 F.3d 703, 711 (9th Cir. 2009) (citation omitted). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Id.* at 712 (citations omitted).

**BACKGROUND**

**A.    The Allegations Against Galena and Others**

As alleged in the several complaints, Galena is a biotechnology company based in Portland, Oregon. The Company is focused on the development and commercialization of targeted oncology treatments that address major unmet medical needs to advance cancer care.

Galena is pursuing the development of cancer therapeutics using peptide-based immunotherapy products, including its main product candidate, NeuVax™, for the treatment of breast cancer and other tumors.

On May 9, 2013, Galena issued a press release and filed a Form 8-K with the United States Securities and Exchange Commission ("SEC") reporting financial and operating results for the quarter ending March 31, 2013. Also on May 9, 2013, Galena filed with the SEC a Form 10-Q quarterly report for the period ending March 31, 2013. On June 12, 2013, the SEC declared effective the Form S-3 that Galena filed on May 24, 2013, in connection with the Company's offering of 17,500,000 shares of common stock and warrants to purchase up to 6,125,000 shares of common stock.

In July 2013, Galena entered into a contract with The DreamTeam Group or one of its subsidiaries (collectively "DreamTeam"). One subsidiary of The DreamTeam Group is MissionIR (also known as "Mission Investor Relations"); another subsidiary is MissionPR (also known as "Mission Public Relations"). Galena paid DreamTeam $50,000 for 240 days of advertising, branding, marketing, investor relations, and social media services. Plaintiffs allege that as part of these services DreamTeam was to place, or plant, fraudulent articles touting Galena. It is further alleged that Galena maintained editorial control and final approval over all articles about Galena placed by DreamTeam.

The first article placed by DreamTeam touting Galena after the July 2013 contract appeared on or about August 6, 2013, on the online investment advice website *Seeking Alpha*. The article recommended investment in Galena stock, but failed to disclose any financial relationship between the author, who was identified only as "Wonderful Wizard," and either Galena or DreamTeam.

PAGE 7 – ORDER CONSOLIDATING CASES

A second article placed by DreamTeam touting Galena in *Seeking Alpha* appeared on November 22, 2013, this time by an author identified as "Kingmaker," who also failed to disclose any relationship with either Galena or DreamTeam. The two articles about Galena in *Seeking Alpha* were purportedly written by two different people, each recommending investment in Galena. Also on November 22, 2013, *The Motley Fool* published an article about Galena that was purportedly written by an investment analyst identified as "Kingmaker." Like the article in *Seeking Alpha* (which may have been the same article), *The Motley Fool* article touted Galena, urged investment in its stock, and stated that "the rewards of success [from investing in Galena] far outweighs the penalties of failure." Kingmaker also affirmatively, but allegedly falsely, stated in the article: "I have no business relationship with any company whose stock is mentioned in this article."

Galena's first and only commercial product to date is Abstral® ("Abstral"), which Galena launched in October 2013. Shortly after Galena introduced Abstral into the market in October 2013, several positive reports and articles about both that product and, more generally, Galena's future prospects were published in investor websites and newspapers, including *Seeking Alpha*, *The Motley Fool*, and the *Wall Street Cheat Sheet*.

On January 15, 2014, the *Wall Street Cheat Sheet* published an article purportedly authored by an investment analyst named "Christine Andrews," entitled "The Momentum Continues for Galena Biopharma." This article touted both Galena and its new product Abstral, stating:

> Abstral sales may eventually be sufficient to fund the entire company's research and development program. Given the depth and potential of Galena's pipeline, that would be a huge relief for shareholders as they would no longer have to fear dilution.

*       *       *

PAGE 8 – ORDER CONSOLIDATING CASES

> [Galena] is quickly becoming . . . a household name within the
> biotechnology sector and appears to have the potential to better the lives of
> many cancer patients around the world. If the leadership decisions that are
> being made are any indication, investors should be extremely confident
> holding shares through future data releases.

The accompanying biographical statement described Ms. Andrews as an "analyst and fund manager" with almost 20 years of investment experience who "likes to write about value stocks, poorly understood or under-followed situations, and contrarian perspectives."

The very next day, January 16, 2014, Galena's stock traded at its all-time high of $7.48 per share. From September 17, 2013 through January 16, 2014, the Company's stock price increased by 347 percent, from $1.93 per share to $7.48 per share.

Less than one month later, on Monday, February 10, 2014, the website *Seeking Alpha* removed from its website the August 6, 2013 article by "Wonderful Wizard" and the November 22, 2013 article by "Kingmaker." *Seeking Alpha*'s Vice President of Content and Editor-in-Chief, Eli Hoffman, explained that the removal of the articles was done because they violated *Seeking Alpha*'s terms of use when the author failed to disclose to *Seeking Alpha* that "Kingmaker" and "Wonderful Wizard" were, in fact, the same person.

Two days later, on February 12, 2014, Adam Feuerstein published an online article on *TheStreet.com* titled "Galena Biopharma Pays for Stock-Touting Campaign While Insiders Cash Out Millions." In his article, Mr. Feuerstein alleged that Galena was engaging in a misleading brand-awareness campaign aimed at boosting its stock price. The article also reported that Galena had paid DreamTeam to publish articles promoting the Company's stock without disclosing who paid for those articles. On this news, Galena's stock dropped $0.85 per share to close at $4.34 per share on February 12, 2014, a one-day decline of 16 percent on volume of nearly 24 million shares. Two days later, on February 14, 2014, Galena issued a letter to its

shareholders admitting that the Company had paid DreamTeam to promote the Company's stock. On that same day, Galena's stock dropped $0.63 per share to close at $3.73 per share on February 14, 2014, a one-day decline of 14 percent on volume of nearly 41 million shares. Thus, during the one-month period between January 16, 2014 and February 14, 2014, Galena's share price fell by approximately 50 percent from its all-time high of $7.48 per share.

On March 13, 2014, financial analyst and author Richard Pearson published his investigation into the relationship between Galena, CytRx Corp., and DreamTeam on *Seeking Alpha* in an exposé entitled "Behind the Scenes with Dream Team, CytRx and Galena." The article detailed Mr. Pearson's findings after going "undercover" as a writer for DreamTeam assigned to promote both Galena and CytRx (Galena's former parent company).

In the course of his investigation, Mr. Pearson states, he learned that the purported investment analysts Kingmaker and Christine Andrews were actually aliases used by Tom Meyer, an author paid by DreamTeam to place promotional pieces for Galena or CytRx. According to Mr. Pearson's article, Mr. Meyer also published articles at DreamTeam's behest under both his own name and the pseudonyms John Rivers, James Johnson, Ted Mayer, Wonderful Wizard, Options Guru, and Expected Growth. Mr. Meyer never disclosed in any of his promotional articles that he was paid by, or had an affiliation with, DreamTeam.

On March 17, 2014, two trading-days after the publication of the Pearson exposé, Galena announced that it was under investigation by the SEC, stating in its 10-K regulatory filing: "In February 2014, we learned that the SEC is investigating certain matters relating to our company and an outside investor-relations firm that we retained in 2013. We have been in contact with the SEC staff through our counsel and are cooperating with the investigation." Upon disclosure of

the SEC investigation, Galena's common stock share price dropped to $2.68, representing a 16.5 percent loss in market capitalization in a single day.

Finally, according to the several complaints filed in these securities class actions, between November 6, 2013 and February 14, 2014, Galena's president and chief executive officer, Ahn, sold 796,765 shares of his Galena stock for approximately $3.8 million. During this same period, Galena's chief operating officer and executive vice president, Mark W. Schwartz ("Schwartz"), sold 100,000 shares of his Galena stock for proceeds of approximately $557,000. Further, during approximately the same time period, Galena's director Steven Kriegsman ("Kriegsman") sold 200,000 shares of his Galena stock for proceeds of about $1,320,000.[4]

Based on these allegations, Plaintiffs allege claims under Sections 10(b) and 20(a) of the 1934 Act and SEC Rule 10b-5 promulgated thereunder. The claims are asserted against Galena and Ahn, and, depending upon the particular complaint, Schwartz, Kriegsman, Galena's chief financial officer and vice president Ryan Dunlap ("Dunlap"), DreamGroup, and MissionIR.

## B.   Procedural History

The five securities fraud class action complaints alleging wrongdoing by Galena related to the activities of DreamTeam were filed in the United States District Court for the District of Oregon on March 5, March 10, March 12, March 17, and April 4, 2014.[5] The following table sets forth the various class periods alleged in each action.

---

[4] In a separate pending shareholder derivative action filed against the board members of Galena, the verified consolidated complaint alleges that Ahn sold 796,765 shares on January 27, 2014, at $4.83 per share for total proceeds of $3,848,374, Schwartz sold 100,000 shares on January 30, 2014, at $5.57 per share for total proceeds of $557,000, and Kriegsman sold 200,000 shares on January 17, 2014, at $7.00 per share and an additional 250,000 shares on January 22, 2014, at $6.13 per share for combined total proceeds of $2,932,500. *In re Galena Biopharma, Inc. Derivative Litigation*, Case No. 3:14-cv-00382-SI (ECF No. 32, at ¶ 57).

[5] *Deering v. Galena Biopharma, Inc., et al.*, Case No. 3:14-cv-00367-SI (filed March 5, 2014); *Hau v. Galena Biopharma, Inc., et al.*, Case No. 3:14-cv-00389-SI (filed March 10,

| Named Plaintiff | Alleged Class Period (by Named Plaintiffs) |
|---|---|
| *Deering* | November 6, 2013 – February 14, 2014 |
| *Hau* | November 6, 2013 – February 14, 2014 |
| *Clavijo* | May 9, 2013 – February 14, 2014 |
| *Jang* | November 22, 2013 – February 14, 2014 |
| *Baya* | May 9, 2013 – March 17, 2014 |

On March 5, 2014, the same day that the first complaint was filed, one of the Plaintiffs'

law firms in that first filed case, Robbins Geller Rudman & Dowd LLP ("Robbins Geller")

caused a notice to be published in the *Business Wire*, a national business-oriented wire service.[6]

The notice advised class members that a class action had been filed, described the claims

asserted in that lawsuit, stated that the class period alleged in the complaint was November 6,

2013 through February 14, 2014, and explained that any shareholder may move within 60 days

to be appointed as lead plaintiff.[7] The 60-day period closed May 5, 2014.

On May 5, 2014, the final day for shareholders to move for appointment as lead plaintiff,

the following persons or groups of persons filed timely motions:

1.      Kisuk Cho, Anthony Kim, Pantelis Lavidas, and Joseph Buscema ("Cho Group"),
        ECF No. 21, filed in Case No. 3:14-cv-00367-SI;

---

2014); *Clavijo v. Galena Biopharma, Inc., et al.*, Case No. 3:14-cv-00410-SI (filed March 12, 2014); *Jang v. Galena Biopharma, Inc., et al.*, Case No. 3:14-cv-00435-SI (filed March 17, 2014); and *Baya v. Galena Biopharma, Inc., et al.*, Case No. 3:14-cv-00558-SI (filed April 4, 2014).

[6] Under the PSLRA, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under [the 1934 Act] is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with clause (i)." 15 U.S.C. § 78u-4(a)(3)(A)(ii).

[7] The PSLRA describes the required content for the early notice to class members. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).

2.  Saul Rosenthal ("Rosenthal"), ECF No. 21, filed in Case No. 3:14-cv-00367-SI;

3.  Iqbal Dadabhoy, Fabian Koronczok, Boris Beljak, Joseph Murphy, Bilel Bensalem, and Aicha Bensalem ("Galena Investor Group"), ECF No. 26, filed in Case No. 3:14-cv-00367-SI;

4.  Guillaume Stroker and Robert Schacht ("S&S Group"), ECF No. 28, filed in Case No. 3:14-cv-00367-SI; and

5.  Gary Haas and David Hau ("H&H Group"), ECF No. 20, filed only in Case No. 3:14-cv-00389-SI).

Four of these five movant groups allege class periods of May 9, 2013 through March 17, 2014, a period of slightly more than ten months. One movant group, however, alleges a substantially shorter class period. That movant, S&S Group, alleges a class period of November 6, 2013 through February 14, 2014, a period of just more than three months, which is less than one-third the duration of each of the other alleged class periods.

| Movant | Alleged Class Period (by Movants to be Lead Plaintiff) |
|---|---|
| *Cho Group* | May 9, 2013 – March 17, 2014 |
| *Rosenthal* | May 9, 2013 – March 17, 2014 |
| *Galena Investor Group* | May 9, 2013 – March 17, 2014 |
| *S&S Group* | November 6, 2013 – February 14, 2014 |
| *H&H Group* | May 9, 2013 – March 17, 2014 |

On May 19, 2014, movant Galena Investor Group filed a Statement of Non-Opposition to Competing Motions, but noted that if the Court were to determine that the competing movants are disqualified from serving as lead plaintiff, the Galena Investor Group stands ready and able to fill that role. (ECF No. 32, filed in Case No. 3:14-cv-00367-SI). On May 23, 2014, H&H Group withdrew their motion, but noted that they remain ready, willing, and able to serve as lead plaintiff if the Court declines to appoint another movant. (ECF No. 29, filed only in Case No. 3:14-cv-00389-SI). On June 12, 2014, Rosenthal withdrew his motion, but explained that he

stands ready, willing, and able to serve as the lead plaintiff if the Court concludes that neither

Cho Group nor S&S Group are eligible to serve as lead plaintiff. (ECF No. 42, filed in Case

No. 3:14-cv-00367-SI). Thus, the Court is left, at least for the time being, with considering the

competing motions of S&S Group and Cho Group.

## DISCUSSION

### A.    Consolidation

The Court has reviewed the complaints in the five pending putative class action securities

fraud lawsuits against Galena and the other defendants. Each lawsuit claims violations of the

federal securities laws under Sections 10(b) and 20(a) of the 1934 Act and SEC Rule 10b-5 on

behalf of classes of persons and entities that traded in Galena securities. The lawsuits allege that

Galena, working with DreamTeam, made false statements and failed to disclose material facts,

including, among other things, that favorable articles recommending Galena stock purportedly

written by different people were in fact written by the same author, or a small number of authors,

working through DreamTeam on behalf of Galena. Although the lawsuits allege somewhat

different class periods, these differences are not so great as to affect the consolidation analysis.[8]

*See Freudenberg v. E*Trade Fin. Corp.*, 2008 WL 2876373, at *3 (S.D.N.Y. July 16, 2008). The

five actions assert essentially identical claims based on essentially identical factual allegations.

They involve common questions of both law and fact, even though either would be sufficient

under Rule 42(a). Finally, no party opposes consolidation. Thus, these five cases are well-suited

for consolidation and are hereby consolidated.

---

[8] As discussed in the next section, however, the differing class periods play a more significant role in determining who should be appointed as lead plaintiff.

PAGE 14 – ORDER CONSOLIDATING CASES

**B.      Appointment of Lead Plaintiff**

**1.      Procedural Requirements**

The initial complaint (*Deering*) was filed on March 5, 2014, and the plaintiff in that action published notice to the purported class in *BusinessWire* that same day, which is within 20 days of the filing of the complaint. Both the initial complaint and the notice alleged a three-month class period of November 6, 2013 through February 14, 2014. The second complaint (Hau) alleged the same class period. The third complaint (*Clavijo*) brought the beginning of the alleged class period back to May 9, 2013, and ended the class period on February 14, 2014. The fourth complaint (*Jang*) began the class period on November 22, 2013, and ended it on February 14, 2014. The fifth (and final) complaint (*Baya*) alleged a class period beginning May 9, 2013, but extended the alleged class period through March 17, 2014. The Court is unaware of any legal basis for concluding that the differences in the duration of the alleged class periods are sufficient to find that the notice failed to comply with the PSLRA. The notice listed the claims, the originally-pleaded class period, and advised putative class members that they had 60 days from the date of the notice to file a motion to seek appointment as lead plaintiff in the lawsuit. Five groups of shareholders timely moved for appointment, and the Court concludes that *Deering*'s notice satisfies the procedural requirements of 15 U.S.C. § 78u-4(a)(3)(A).

**2.      Presumptive Lead Plaintiff**

In light of the positions taken by movants Rosenthal, Galena Investor Group, and H&H Group conditionally withdrawing their motions or stating non-opposition to the motions of others, the Court begins its consideration of the presumptive lead plaintiff by considering only the motions filed by S&S Group and Cho Group. Only if neither is appropriate for appointment as lead plaintiff will the Court consider the other movants.

a. **Largest Financial Interest**

The most capable plaintiff is generally the one who has the greatest financial stake in the outcome of the case, provided that plaintiff meets the requirements of Rule 23. *Cavanaugh*, 306 F.3d at 729.[9] District courts have generally equated financial interest with actual economic losses suffered. *See Fusion-io*, 2014 WL 2604991, at *4 (citing *Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *3 (N.D. Cal. 2011)). In addition, as previously discussed, the majority of courts permit groups of plaintiffs "to aggregate their losses for purposes of the lead plaintiff determination." *Yanek*, 2004 WL 5574358, at *4.

Applying these factors, the alleged losses of S&S Group of approximately $818,000 during its alleged class period exceeds the alleged losses of Cho Group of approximately $745,000 during its alleged class period. The Court notes, however, that the class period alleged by S&S Group of November 6, 2013 through February 14, 2014 is significantly shorter than the class period alleged by Cho Group of May 9, 2013 through March 17, 2014. Thus, there is a potential concern that the Court may not be comparing similar damage claims. The Court addresses this issue later, when considering whether the presumption of S&S Group as lead plaintiff has been rebutted. Before turning to that issue, however, a few additional observations will be helpful.

i. **S&S Group**

As stated above, S&S Group alleges a three-month class period of November 6, 2013 through February 14, 2014. During this time, S&S Group asserts, the two individuals in that

---

[9] "Appointing lead plaintiff on the basis of financial interest, rather than on a 'first come, first serve' basis, was intended to ensure that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation, not lawyers." *Freudenberg*, 2008 WL 2876373, at *4 (quotation marks and citation omitted).

group, Guillaume Stroker and Robert Schacht, collectively purchased more than 285,000 shares of Galena common stock and suffered more than $818,000 in alleged losses as a result of the defendants' alleged fraud. In support of these contentions, S&S Group submitted signed declarations by Mr. Stroker and Mr. Schacht as well as a loss chart. *See* ECF No. 30-3 (S&S Group Loss Chart).

For Mr. Stroker, the loss chart shows that during the relevant period he made numerous purchases and one sale of Galena stock. These transactions all occurred between January 6, 2014 and January 16, 2014, resulting in an alleged net loss of approximately $624,000. Mr. Stroker's one sale occurred on January 6, 2014, when he sold 187,337 shares at $2.84 per share for approximately $533,000 in proceeds. On that same day, January 6, 2014, Mr. Stroker purchased 100,000 shares at prices ranging from $5.19 to $5.24 per share. He also made purchases on January 7 and January 16, 2014, totaling 87,337 shares at prices ranging from $5.19 per share to $7.46 per share. Thus, on January 6, 2014, Mr. Stroker sold 187,337 shares of Galena stock that he had previously purchased on undisclosed dates for undisclosed prices and then, within the next ten days, he purchased back precisely the same numbers of shares, 187,337 shares. In addition, because S&S Group alleges a class period of November 6, 2013 through February 14, 2014, the loss chart submitted by S&S Group does not disclose any purchases or sales of Galena stock by Mr. Stroker before November 6, 2013.

For Mr. Schacht, the loss chart discloses several purchases and sales of Galena stock made between December 24, 2013 and January 24, 2014, with an alleged net loss of approximately $194,000. Similarly, the loss chart submitted by S&S Group does not disclose any purchases or sales of Galena stock by Mr. Schacht before November 6, 2013.

### ii.    Cho Group

Turning next to Cho Group, that group alleges a class period of May 9, 2013 through March 17, 2014, and alleged losses of $744,933. Cho Group aggregates the losses of four individuals, Kisuk Cho, Anthony Kim, Pantelis Lavidas, and Joseph Buscema. Cho Group also supplied a loss chart. *See* ECF No. 23-3 (Cho Group Loss Chart).

According to the loss chart submitted by Cho Group, Mr. Cho has the largest individual claimed loss of approximately $330,000. He made purchases of Galena stock between January 22, 2014 and February 24, 2014, and sales of Galena stock between January 24, 2014 and February 18, 2014. These transactions include purchases made after February 18, 2014, of 190,000 shares of Galena stock at prices ranging from $3.35 to $4.84. Mr. Kim's claimed losses result entirely from purchases and sales made between January 10, 2014 and January 17, 2014, are approximately $134,000. Mr. Lavidas's claimed losses, resulting from purchases made between January 21, 2014 and March 13, 2014, and sales made between February 7, 2014 and April 14, 2014, total approximately $139,000. Finally, Mr. Buscema's claimed losses, resulting from two purchases made on January 23 and 24, 2014, are approximately $142,000.

### b.    Rule 23 Requirements

After concluding, at this stage, that S&S Group is the plaintiff, or group of plaintiffs, that has the greatest financial stake in the outcome of the litigation, the Court next must "focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.' If the plaintiff with the largest financial stake in the

controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff." *Cavanaugh*, 306 F.3d at 730 (emphasis in original).[10]

### i.    Typicality

Looking only at the pleadings and declarations provided by S&S Group,[11] it appears that this group has claims typical of the claims of the class because its members purchased Galena stock at prices that were allegedly artificially inflated by defendants' alleged misconduct. The claims of the lead plaintiff need not be identical to the claims of the class to satisfy typicality. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). *See generally* 7 Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 22:24, at 107-108 (4th ed. 2002) ("The majority of class action decisions support the view that when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is met.").

### ii.    Adequacy

It also appears that S&S Group satisfies the adequacy requirement by not having any apparent conflicts of interest with the class members[12] and by timely moving to be appointed as lead plaintiff, timely filing the requisite certifications, and selecting qualified proposed lead and

---

[10] "If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Cavanaugh*, 306 F.3d at 730.

[11] "At step two of the process, when the district court makes its initial determination, it must rely on the presumptive lead plaintiff's complaint and sworn certification; there is no adversary process to test the substance of those claims." *Cavanaugh*, 306 F.3d at 730.

[12] There are no apparent conflicts of interest with the "class members" if the class period is the period alleged by S&S Group. Whether that period is too brief, however, is better addressed in the next step, when considering whether the presumption of lead plaintiff has been rebutted.

liaison counsel who appear to have the requisite skills, experience, and competence to prosecute the claims vigorously and efficiently in the best interests of the class. *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Thus, at this second step, S&S Group is the presumptive lead plaintiff.

### 3.      Rebuttal of Presumptive Lead Plaintiff

The third step of the process gives "other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Cavanaugh*, 306 F.3d at 730 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). As the Ninth Circuit has explained:

> In seeking evidence that could rebut the presumptive lead plaintiff's showing on these points, other plaintiffs may be allowed to conduct discovery if they "demonstrate[ ] a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv).

> \*      \*      \*

> At the third stage, the process turns adversarial and other plaintiffs may present evidence that disputes the lead plaintiff's prima facie showing of typicality and adequacy. The district court may need to hold an evidentiary hearing, and to make a renewed determination of typicality and adequacy.

*Id.* at 730-31 (first alteration in original). According to the PSLRA, the presumption of the most adequate plaintiff "may be rebutted *only* upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff [either] (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added).

Cho Group makes three primary arguments in its effort to rebut the presumption that S&S Group is the most adequate plaintiff. First, Cho Group argues that courts routinely look to the longest class period noticed to determine financial interest, implying that under such a period

Cho Group might well have the largest financial interest. Second, Cho Group argues that S&S Group cannot adequately represent the class in the longer-noticed period. Third, Cho Group argues that S&S Group could potentially suffer from unique defenses that could render that group both atypical and inadequate. The Court considers each argument in turn.

### a.    Length of Class Period to Determine Financial Interest

Courts have almost universally held that the longest, most inclusive class period should be used to determine which lead plaintiff movant has the largest financial interest in the relief sought by the class. *See, e.g.*, *In re BP Sec. Litig.*, 758 F. Supp. 2d 428, 437 (S.D. Tex. 2010) (concluding that it would be "inappropriate to narrow the class period at this stage of the litigation"); *Miller v. Dyadic Int'l, Inc.*, 2008 WL 2465286, at *4 (S.D. Fla. Apr. 18, 2008) (finding that "the longest, most inclusive class period is appropriate at this stage in the litigation because 'it encompasses more potential class members'") (citations omitted); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402 (S.D.N.Y. 2006) ("For the purpose of determining lead plaintiff, I find that the use of the longer, most inclusive class period . . . is proper, as it encompasses more potential class members."); *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) (applying the longest class period, and noting that courts usually "use the most inclusive class period and select as lead plaintiff the movant with the largest financial interest under that period"); *In re Star Gas Sec. Litig.*, 2005 WL 818617, at *7 (D. Conn. Apr. 8, 2005) (finding that "it would be premature" to use a shortened class period at the lead plaintiff stage, and that the "appointed lead plaintiffs can decide how to frame their amended complaint in terms of an appropriate class period in their best judgment"). Indeed, one court even noted that it was "wary of arguments advocating a shorter class period instead of the longest potential class period" because it "would have the effect of

reducing the class size and limiting the potential amount of damages" and was likely only advocated because "*it was in the best interest of that particular plaintiff only.*" *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008) (emphasis added).

The alleged class period used by S&S Group of November 6, 2013 through February 14, 2014 commences several months after Galena and DreamTeam had already released several allegedly fraudulent statements, including the publication dated August 6, 2013, on the website *Seeking Alpha* of the article by "Wonderful Wizard." In addition, several of the complaints allege that Galena issued allegedly fraudulent statements as early as May 9, 2013. For these reasons, the Court stated during the hearing on June 25, 2014, that the appropriate class period, for purposes of determining which movant has the largest financial interest, is May 9, 2013 through March 17, 2014. ECF No. 48. The Court then allowed limited discovery regarding the purchase and sale transactions in Galena stock made by S&S Group and Cho Group during this period. *Id*.

In a post-hearing statement, S&S Group acknowledged that under the longer class period "Guillaume Stroker and Robert Schacht possess a smaller financial interest in the outcome of this litigation than that claimed by Cho Group." ECF No. 49 at 4 of 11. S&S Group added that if the members of Cho Group later withdraw, fail to present themselves as class representatives, or fail to satisfy Rule 23, then Messrs. Stroker and Schacht should be considered and substituted as lead plaintiff. *Id*. In light of this concession, the Court concludes that Cho Group has the largest financial interest and should be treated as the presumptive lead plaintiff.

### b.    Adequate Representation of Class in Longer-Noticed Period

Cho Group also argued that the decision by S&S Group to use a class period start date of November 6, 2013 is directly at odds with the interests of the majority of the proposed class based on a longer period and raised questions whether S&S Group will act as effective advocates

for all class members (under a longer class period). A proposed lead plaintiff is an adequate representative of the class only when it "does not have interests that are antagonistic to the class that [it] seeks to represent . . ." *Sgalambo v. McKenzie*, 268 F.R.D. 170, 174 (S.D.N.Y. 2010); *see also In re Safeguard Scientifics*, 216 F.R.D. 577, 582 (E.D. Pa. 2003) (class representative's indifference to fraudulent statements placed him in a position antagonistic to the class). Cho Group argues that S&S Group excised more than two thirds of the class period alleged in several of the complaints in order to serve the purposes of S&S Group. The Court agrees. Based on the acknowledgement by S&S Group that Cho Group has the greater financial interest over the period of May 9, 2013 through March 17, 2014, the Court concludes that S&S Group would not be an adequate representative of the class during this longer period, at least when compared with Cho Group, and that Cho Group would provide adequate representation of the class.

### c.    Potentially Unique Defenses

Cho Group further argues that it is a reasonable inference that S&S Group alleged a significantly shorter class period because the members of that group may have achieved substantial gains on Galena stock transactions during the period between May 9, 2013 and November 6, 2013. If that assumption is correct, argues Cho Group, then S&S Group would be inadequate to represent the Class because courts around the country consistently have rejected applications for lead plaintiff made by net sellers and net gainers, recognizing the difficulty of proving damages at trial. *See*, *e.g.*, *Andrada v. Atherogenics, Inc.*, 2005 WL 912359, at *3-4 (S.D.N.Y. Apr. 19, 2005) (finding merit in the argument that a net purchaser was induced by the fraud to purchase shares, while a net seller who owned substantial stock before the class period might have profited from that same fraud); *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 174 (W.D.N.Y. 2007) ("I agree with the rationale of those courts finding that net

sellers and net gainers, . . . are ill-suited to serve as lead plaintiffs. If nothing else, its status as a net gainer may 'subject [it] to unique defenses that render such plaintiff incapable of adequately representing the class.'") (second alteration in original); *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 946 (N.D. Ill. 2001) (rejecting application of first-in-first-out methodology, finding that net seller and net gainer status rendered movant "totally out of the running for designation as lead plaintiff"); *In re Cardinal Health, Inc. Sec. Litig.,* 226 F.R.D. 298, 308 (S.D. Ohio 2005) ("[C]ourts usually reject these so-called net gainers as lead plaintiffs, opting instead for net losers that will have less trouble proving damages."). The Court agrees, and finds that this factor further supports the selection of Cho Group as lead plaintiff.

**C.**      **Approval of Lead and Liaison Counsel**

Cho Group requests that The Rosen Law Firm, P.A. and Pomerantz, LLP be appointed as co-lead counsel for the class and that Ransom, Gilbertson, Martin & Ratliff, LLP be appointed as liaison counsel for the class. ECF No. 51. The Court has reviewed the qualifications of these law firms and approves the request made by Cho Group.

## CONCLUSION

The Court consolidates the five cases whose captions are shown in this Order. Going forward, each document filed by a party in this litigation shall bear the following caption: *In re Galena Biopharma, Inc. Securities Litigation,* Case No. 3:14-cv-00367-SI. In addition, all filings in this case going forward shall be made only in the consolidated case. The Court appoints Kisuk Cho, Anthony Kim, Pantelis Lavidas, and Joseph Buscema (also known as "Cho Group") as the Lead Plaintiff for the putative class. The Court also appoints The Rosen Law Firm, P.A. and Pomerantz, LLP as Co-Lead Counsel for the putative class, as requested by the Lead Plaintiff. The Court further appoints Ransom, Gilbertson, Martin & Ratliff, LLP as Liaison Counsel for the putative class, also as requested by the Lead Plaintiff. The motion filed by Cho Group for

consolidation, appointment as lead plaintiff, and approval of lead plaintiff's selection of counsel, ECF No. 21, is GRANTED; all other pending motions for appointment as lead plaintiff or lead or liaison counsel in any of the five consolidated cases are DENIED. Within 28 days of entry of this Order, the Lead Plaintiff shall file a consolidated amended complaint. Within 28 days thereafter, Defendants shall respond to the consolidated amended complaint.

**IT IS SO ORDERED**.

DATED this 3rd day of October, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge