# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

IN RE GALENA BIOPHARMA, INC.
SECURITIES LITIGATION,

CASE No.:3:14-cv-00367-SI

## NOTICE OF MOTION AND MOTION FOR AN ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, pursuant to an Order of the Court issued on February 16, 2016 ("Preliminary Approval Order"), on June 23, 2016 at 3:30 p.m.., or as soon thereafter as counsel may be heard, at the United States Court, District of Oregon, Portland Division, 1000 Southwest Third Avenue, Portland, Oregon 97204, before the Honorable Michael H. Simon, Lead Plaintiffs Kisuk Cho, Anthony Kim, Pantelis Lavidas and Joseph Buscema ("Lead Plaintiffs") and Plaintiff Alan Theriault (together with Lead Plaintiffs, the "Plaintiffs") will move for an order approving the partial settlement of this Action and partially dismissing it with prejudice.

This motion is supported by this Notice of Motion; the Joint Declaration of Leigh Handelman Smollar and Laurence M. Rosen in Support of Lead Plaintiffs' Motion and supporting exhibits ("Joint Decl."), filed herewith; the Declaration Of Justin R. Hughes Regarding (A) Mailing Of The Notice And Proof Of Claim; and (B) Report On Requests For Exclusion Received To Date ("Hughes Decl."), filed herewith; the Declarations of Lead Plaintiffs Kisuk Cho, Anthony Kim, Pantelis Lavidas and Joseph Buscema, filed herewith; the Motion and Memorandum of Law in Support of Attorneys' Fees and Reimbursement of Expenses and exhibits in support thereof, filed with the Court herewith; the accompanying Memorandum of Points and Authorities in Support thereof; the Stipulation and the exhibits filed therewith; and all other pleadings and papers filed in this action.

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND .................................................................................................. 3

        A.      Procedural History ..................................................................................... 4

        B.      Preliminary Approval and Notice ............................................................. 5

III.    APPLICABLE STANDARDS FOR FINAL APPROVAL OF CLASS
        ACTION SETTLEMENTS ................................................................................... 7

IV.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE
        SETTLEMENT AND CERTIFY THE SETTLEMENT CLASS ......................... 9

        A.      The Settlement Is Fair, Reasonable And Adequate ................................... 9

                1.      The Overall Strength of Plaintiffs' Case, Including the Risk,  Expense,
                        Complexity, and Likely Duration of Further Litigation, Supports Final
                        Approval of the Settlement ............................................................... 9

                2.      The Risks of Continued Litigation Weigh Heavily in Favor of
                        Settlement ....................................................................................... 10

                3.      The Settlement Recovers A Significant Portion of Provable Damages.... 15

                4.      The Amount of Discovery Completed and the Stage of the Proceedings
                        Support Approval of the Settlement ............................................... 16

                5.      Experienced Counsel Concur that the Settlement, Which Was
                        Negotiated in Good Faith and at Arm's-Length, Is Fair, Reasonable,
                        and Adequate ................................................................................... 18

                6.      The Absence of a Governmental Participant ................................... 19

                7.      The Reaction of the Class Members Supports Approval of the
                        Settlement ....................................................................................... 19

        B.      Final Certification Of The Class Should Be Granted ............................. 20

                1.      The Class Meets the Requirements of Rule 23(a) .......................... 20

                2.      The Class Meets the Requirements of Rule 23(b)(3)...................... 21

        C.      The Proposed Plan of Allocation is Fair, Reasonable and Adequate and
                Should be Approved ................................................................................ 21

        D.      The Notice Program Satisfied Due Process And Complied With Fed. R. Civ.
                P. 23(E) ................................................................................................... 22

                1.      The Dissemination Plan Satisfies Due Process............................... 23

                2.      The Contents of the Notice Satisfy Due Process ........................... 23

V.      CONCLUSION .................................................................................................. 24

## **TABLE OF AUTHORITIES**

Cases

*Amchem Prods. v. Windsor*,

    521 U.S. 591 (1997).................................................................................................. 21

*Boyd v. Bechtel Corp.*,

    485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................... 8

*Browne v. Am. Honda Motor Co.*,

    No. CV 09-06750 MMM DTBX, 2010 WL 9499072 (C.D. Cal. July 29, 2010)..................... 14

*Class Plaintiffs v. City of Seattle*,

    955 F.2d 1268 (9th Cir. 1992) ................................................................................... 8

*Colesberry v. Ruiz Food Products, Inc.*,

    No. CV F 04-5516, 2006 WL 1875444 (E.D. Cal. Jun. 30, 2006) ........................... 23

*Eisen v. Carlisle & Jacquelin*,

    417 U.S. 156 (1974)................................................................................................. 23

*Ellis v. Naval Air Rework Facility*,

    87 F.R.D. 15 (N.D.Cal. 1980) ................................................................................. 18

*Franks v. Kroger Co.*,

    649 F.2d 1216 (6th Cir. 1981) ................................................................................. 23

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1998) .............................................................................. 9, 20

*Hughes v. Microsoft Corp.*,

    No. C98-1646C, C93-0178C, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) ..................... 8

*In re Apple Inc. Sec. Litig.*,

    No. 5:06-CV-05208-JF HRL, 2011 WL 1877988 (N.D. Cal. May 17, 2011)......................... 20

*In re Cardizem CD Antitrust Litig.*,

    218 F.R.D. 508 (E.D. Mich. 2003) ............................................................................ 9

*In re Cendant Corp. Litig.*,

    264 F.3d 201 (3d Cir. 2001)..................................................................................... 16

*In re Charles Schwab Corp. Sec. Litig.*,

    No. C 08-01510 WHA, 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011)................................... 13

*In re Heritage Bond Litig.*,

No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ................................ 10, 16

*In re Immune Response Sec. Litig.*,

497 F.Supp.2d 1166 (S.D. Cal. 2007) ................................................................................. 13, 17

*In re Indep. Energy Holdings PLC*,

00 Civ. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ...................................... 9

*In re Mego Fin. Corp. Sec. Litig.*

213 F.3d 454 (9th Cir. 2000) ............................................................................................ 11, 20

*In re Mfrs. Life Ins. Co. Premium Litig.*,

MDL 1109, 1998 WL 1993385 (S.D. Cal. Dec. 21, 1998) ...................................................... 11

*In re NASDAQ Market-Makers Antitrust Litig.*,

94 Civ. 3996 (RWS), 2000 WL 379922 (S.D.N.Y. Jan. 18, 2000) .......................................... 22

*In re OmniVision Techs., Inc.*,

559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................................... 8, 10, 21

*In re Oracle Sec. Litig.*,

No. C-90-0931 VRW, 1994 WL 502054 (N.D. Cal. Jun. 18, 1994) ....................................... 22

*In re Pac. Enters. Sec. Litig.*,

47 F.3d 373 (9th Cir. 1995) ...................................................................................................... 9

*In re Painewebber Ltd. P'ships. Litig.*,

171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................................................ 18

*In re Sumitomo Copper Litig.*,

189 F.R.D. 274 (S.D.N.Y. 1999) ............................................................................................ 16

*In re Syncor ERISA Litig.*,

516 F.3d 1095 (9th Cir. 2008) ............................................................................................ 7, 15

*In re Warfarin Sodium Antitrust Litig.*,

391 F.3d 516 (3d Cir. 2004) .................................................................................................... 16

*In re Washington Public Power Supply System Sec. Lit.*,

19 F.3d 1291 (9th Cir. 1994) .................................................................................................. 11

*Janus Capital Grp., Inc. v. First Derivative Traders,*

564 U.S. 135, 131 S. Ct. 2296 (2011) ...................................................................................... 12

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ................................................. 9

*Marshall v. Holiday Magic, Inc.*,
  550 F.2d 1173 (9th Cir. 1977) ............................................... 23

*McPhail v. First Command Fin. Planning, Inc.*,
  No. 05-171-IEG, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ................. 8

*Mendoza v. United States*,
  623 F.2d 1338 (9th Cir. 1980) ............................................... 23

*Molski v. Gleich*,
  318 F.3d 937 (9th Cir. 2003) ................................................. 7

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ......................................... 15, 18

*Nen Thio v. Genji, LLC*,
  14 F. Supp. 3d 1324 (N.D. Cal. 2014) ....................................... 22

*Nobles v. MBNA Corp.*,
  No. C 06-3723-CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009) ............. 11

*Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) .............................................. 7, 8

*Riker v, Gibbons*,
  No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) ....... 18

*Schulte v. Fifth Third Bank,*
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ....................................... 17

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ................................................. 7

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ......................................... 7, 8, 9, 23

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ................................................. 7

*Vinh Nguyen v. Radient Pharm.,*
  No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ........... 12

iv

*Vizcaino v. Microsoft Corp.*,

 290 F.3d 1043 (9th Cir. 2002) ............................................................. 11

*White v. Experian Info. Solutions, Inc.*,

 803 F. Supp. 2d 1086 (C.D. Cal. 2011) ................................................. 15

*White v. NFL*,

 822 F. Supp. 1389 (D. Minn. 1993)....................................................... 22

Other Authorities

Fed. R. Civ. P. 23(a) ................................................................................. 20

Fed. R. Civ. P. 23(b)(3).............................................................................. 21

Fed. R. Civ. P. 23(e) ........................................................................ 7, 9, 23

Rules

MANUAL FOR COMPLEX LITIGATION (Third)

 (1995)........................................................................................................ 18

*Newberg on Class Actions*,

 4 A. Conte & H.B. Newberg (4th ed. 2002) ................................... 18, 23

NOTICE OF MOTION & MOTION; MPA ISO FINAL APPROAL
Case No. 3:14-cv-00367-SI

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs respectfully request that this Court grant final approval of the proposed partial settlement (the "Settlement") reached in this action ("Action") between Lead Plaintiffs, on behalf of the Class, and Defendants Galena Biopharma, Inc. ("Galena," or "the Company"), Ryan M. Dunlap, Remy Bernarda, Rudolph Nisi, Sanford Hillsberg, Steven Kriegsman, Stephen Galliker, Richard Chin and Mark Ahn, and dismissed Defendant Mark Schwartz (collectively, the "Settling Defendants").[1]

After extensive settlement negotiations, the Settling Parties entered into a stipulation setting forth the terms of the settlement of the claims asserted in the Action (the "Stipulation of Settlement" or "Settlement"). Under the terms of the Settlement, a settlement fund was created for the benefit of the class consisting of $19.0 million in cash and $1.0 million worth of freely tradable shares of Galena common stock (the "Settlement Fund"). Pursuant to Section II.2(a) of the Amended Stipulation of Settlement (Dkt. No. 170), the Settling Defendants' Directors and Officers liability ("D&O") Insurers paid $16.7 million into the Settlement Fund Escrow Account.[2]  Pursuant to Section II.2(b), the Settling Defendants delivered another $2.3 million in cash to be deposited into the Settlement Fund Escrow Account on May 23, 2016. *Id.* at II.2(b). The Settling Defendants shall cause $1.0 million of freely tradable shares of Galena common stock to be placed into the Settlement Fund Escrow Account within 5 days after this Court enters the Final Order and Judgment approving the Settlement.  *Id.* at II.2(c).

---

[1] Lead Plaintiffs, on behalf of themselves and the Class, and Settling Defendants are collectively referred to as the "Settling Parties."

[2] All capitalized terms not defined herein shall have the meaning ascribed to them in the Stipulation of Settlement.

On February 16, 2016, the Court signed an Order of Preliminarily Approval (the "Order"), Dkt. No. 172, and set a hearing date for final approval of June 23, 2016. Pursuant to the Order, beginning on March 3, 2016 approximately 74,409 Notice Packets setting forth the terms of the Settlement were mailed to potential Class Members and shareholders of record. Pursuant to the Order, the Summary Notice was published once on Investor's Business Daily on March 2, 2016 and once on GlobeNewsWire on March 3, 2016, and all of the relevant settlement papers, including the Notice and Proof of Claim form, have been available online at www.Galenasecuritieslitigation.com. The Claims Administrator has also established and maintained a telephone hotline to accommodate potential Class Members with questions about the Settlement. To date, no Class Members have objected to the Settlement, and only eight potential Class Members have excluded themselves.

As discussed more fully below, this Settlement, which provides a meaningful recovery in the face of extraordinary risks of litigation, is fair, reasonable, adequate, and meets all of the relevant criteria for approval. Moreover, the fairness and adequacy of the Settlement is evidenced by the fact that in response to a nationally published summary notice, and the notices mailed directly to potential members of the Class and shareholders of record, which advised these Class Members and shareholders of record of the Settlement and of their right to object to the Settlement and/or Co-Lead Counsel's fee request, no objections have been filed despite more than 74,000 notices disseminated to potential Class Members. This fact is significant since the Class Members and shareholders of record likely include thousands of individuals and sophisticated financial institutions which have counsel available to advise, represent and assist them in expressing opposition to the request made herein if they so choose. Accordingly, Lead Plaintiffs respectfully submit that the Settlement and Plan of Allocation should be approved by this Court, the Settlement Class certified, Partial Final Judgment entered, and that the Court

award Co-Lead Counsel's attorneys' fees and expenses and Lead Plaintiffs' reimbursement in the form attached as Exhibit 7 to the Joint Decl.[3]

## II.    BACKGROUND

Lead Plaintiffs bring this action on behalf of all persons who purchased or otherwise acquired Galena common stock during the period between August 6, 2013 and May 14, 2014, inclusive (the "Class Period"). Lead Plaintiffs' Consolidated Class Action Complaint for Violations of Federal Securities Laws (the "Complaint") (Dkt. No. 59) alleges that Defendants violated Sections 10(b) and 20(a) of the Securities and Exchange Act (the "Exchange Act").

Plaintiffs allege that the Galena Defendants conducted a pump-and-dump scheme by (a) hiring the Promoter Defendants[4] to publish bullish articles to boost Galena's stock price, and then (b) dumping personally-held shares once the Promoter Defendants had boosted Galena's stock price, for proceeds of more than $16.1 million. Plaintiffs allege that the Promoter Defendants' articles were misleading because they omitted to disclose that the articles were paid promotions.

Plaintiffs allege that the Galena Defendants knew, or recklessly disregarded the fact, that throughout the Class Period, the articles and the message board posts by DreamTeam and Lidingo authors never disclosed that they were paid promotions, nor that the authors were using false aliases. Further, Plaintiffs allege that Galena's SEC filings falsely claimed that Galena was not manipulating its stock price, and that Galena's CEO and CFO falsely claimed that it had disclosed any fraud in which they were involved. Plaintiffs allege that during the Class Period, Defendants concealed from the market the fact that authors of articles published as part of the scheme were required to have Galena sign off on the articles prior to publication, and that Galena

---

[3] Pursuant to the Order, Lead Plaintiffs filed all papers in support of the Motion for Attorneys Fees and Reimbursement of Expenses concurrent herewith. The Proposed Partial Final Order is materially identical to Exhibit B to the Stipulation of Settlement, Dkt. No. 170-5.

[4] The Promoter Defendants are The DreamTeam Group LLC, Michael McCarthy, Kamilla Bjorlin, Lidingo Holdings LLC, and Thomas Meyer.

instructed the authors not to disclose that they were compensated to write the promotional articles.

Plaintiffs allege loss causation through a series of six corrective disclosures from January 2014 to May 2014, ultimately revealing the fraud through an expose by an undercover investigator and disclosure of an SEC investigation. This series of disclosures wiped out the bulk of Galena's market value.

Settling Defendants expressly have denied and continue to vigorously deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the litigation.

A.      **Procedural History**

The first of the five actions that make up this consolidated securities class action was filed on March 5, 2014. Dkt. No. 1. As mandated by the Private Securities Litigation Reform Act (the "PSLRA"), on May 5, 2014, four applications were filed for appointment as lead plaintiffs; among them was Lead Plaintiffs'. Dkts. No. 21, 24, 26, 28. On October 3, 2014, the Court appointed Lead Plaintiffs, and approved their choice of Co-Lead Counsel. Dkt. No. 52, at 24-25.

On October 31, 2014, Lead Plaintiffs filed their Complaint. Dkt. No. 59. The Complaint sought to recover on behalf of investors who bought Galena shares between August 6, 2013, and May 14, 2014, a Class Period which differed from any alleged in any of the complaints filed to date. *Id.* at ¶1. The Complaint named as Defendants Ahn, Schwartz, Kriegsman, DreamTeam, Meyer, McCarthy, Lidingo, Bjorn, Bernarda, Chin, Galliker, Nisi, and Hillsberg, the last nine of whom had not been named as defendants in any of the complaints filed to date. *Id.* at ¶¶21-39. The Complaint alleged six corrective disclosures. *Id.* at ¶¶138, 140, 145, 149, 151, 152. The Complaint also alleged claims under Section 20A of the Exchange Act, allowing recovery for insider trading violations.

The Complaint relied on Plaintiffs' investigation, including discussions with former employees of DreamTeam and Galena, discussions with Seeking Alpha, and a review of message board postings that appeared to have been made by the Promoter Defendants. *Id.* at ¶¶ 52, 80.

4

The Complaint also relied on a report prepared by a Galena Special Committee, as well as the Exhibits thereto, resulting from an investigation into the wrongdoing alleged in this Action. *E.g. id.* at ¶ 73 and n.6. As reflected in an order dated April 28, 2015, the Special Committee Report has been filed under seal with the Court. Dkt. No. 116.

On January 9, 2015, the Settling Defendants filed three separate motions to dismiss the Complaint. Dkts. No. 80, 81, 82. On March 6, 2015, Plaintiffs filed their opposition to the Settling Defendants' motions to dismiss. Dkt. No. 95. And on April 3, 2015, Defendants filed their Replies in further support of their motions to dismiss. Dkts. No. 106, 107, 109. The Court ruled on the motions to dismiss on August 8, 2015, largely upholding the claims against Ahn and Galena, but dismissing claims against certain other Defendants. Dkt. No. 149.

While the Settling Parties briefed the Settling Defendants' motions to dismiss, they also discussed settlement. On March 2, 2015, the Settling Parties and the Settling Defendants' D&O Insurers attended an all-day mediation presided over by the Honorable Layn R. Phillips (Ret.) assisted by the Honorable Gary Allen Feess (Ret.) Dkt. No. 170 at 4. Although the March 2 mediation was not successful, discussions held there were helpful in setting the stage for the later Settlement. The parties continued Settlement discussions over the summer, and following a decision on the motion to dismiss, the Settling Parties held a further mediation on September 19, 2015. *Id.* at 5.

Discussions at the September 19 mediation continued well into the night, with the parties agreeing in principle to settle plaintiffs' claims for $20.0 million. Details of the settlement and payment structure were worked out by the parties over the next few weeks, whereupon a proposal containing the particulars of the material terms was confirmed with the mediator by November. Signing of the Memorandum of Understanding was delayed due to reason unrelated to this litigation until December 3, 2015. *Id.*

B.     **Preliminary Approval and Notice**

On February 5, 2016, Lead Plaintiffs moved the Court for an order granting preliminary approval to the Settlement and directing dissemination of an approved notice of settlement to the

Class. On February 16, 2016, the Court entered the Order, preliminarily approving the Settlement and approving the form of Notice to be disseminated to the Class.

Beginning on March 3, 2016, the Claims Administrator, KCC Class Action Services ("KCC"), began mailing Notice Packets to Class members identifiable from Galena's transfer agent. Hughes Decl. ¶¶3-4. As of May 25, 2016 KCC has received an additional 65,842 names and addresses of potential Class Members (after exact duplicate mailing records were removed) from individuals, brokers, dealers, banks and other nominees requesting Notice Packets to be mailed to such persons. *Id.* at ¶¶6. Also, KCC had received requests from brokers and other nominees for 5,892 Notice Packets to be sent to such brokers and nominees so that they could forward them to their customers. *Id.* at ¶6. All such requests have been complied with in a timely manner. As a result of these efforts, as of May 25, 2016 KCC has mailed a total of 74,834 Notice Packets, including 1,319 Notice Packets that were initially returned as undeliverable, but re-mailed to updated addresses. *Id.* at ¶¶ 7 and n.2.

KCC also caused the approved summary notice to be published over *Investor's Business Daily* on March 2, 2016, and over *GlobeNewsWire* on March 3, 2016. Hughes Decl. ¶ 8.

In addition, KCC established and continues to maintain a toll-free telephone number (1-866-247-7259) to accommodate potential Class Members with questions about the Settlement. As of May 25, 2016, KCC had received a total of 1,637 calls to the telephone hotline for assistance, of which 923 calls were handled by a live operator. *Id.* at ¶9.

Finally, in coordination with Co-Lead Counsel, KCC designed and implemented a website, www.Galenasecuritieslitigation.com, dedicated to the Settlement to assist potential Class Members. The website was operational beginning on March 3, 2016, and is accessible 24 hours a day, 7 days a week. The website lists the exclusion, objection, and claim filing deadlines, as well as the date and time of the Court's Final Settlement Hearing. Also posted on the website are relevant Court Documents, including: the Stipulation of Settlement; Order of Preliminary Approval; and the Notice Packet. Co-Lead Counsel will file Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, the supporting papers thereto, and

the Proposed Order of Final Approval, on May 26, 2016, which will also be posted on the website, all of which may be downloaded by potential Class Members. The website contains electronic claims filing instructions, as well as the contact information for KCC. As of May 25, 2016, the website had received 33,407 hits. *Id*. at ¶ 10.

## III.    APPLICABLE STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome and the typical length of the litigation. An "overriding public interest" exists in settling litigation, and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

In approving a proposed class action settlement under Fed. R. Civ. P. 23(e), the Court must find that the proposed settlement is "fair, reasonable, and adequate." To make this determination, the Ninth Circuit instructs the lower courts to consider several factors:

> [T]he strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625; *accord Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). In deciding whether to approve a proposed settlement pursuant to Federal Rule of Civil Procedure 23(e), the Ninth Circuit has "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (*citing Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *see also In re OmniVision Techs., Inc.*, 559 F.

Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits").

The determination of fairness falls within the "sound discretion" of the district court. *Torrisi*, 8 F.3d at 1375-76. However, a strong initial presumption of fairness applies where, as here, the settlement is reached by experienced counsel after arm's-length negotiations. *See McPhail v. First Command Fin. Planning, Inc.*, No. 05-171-IEG, 2009 WL 839841, at *3 (S.D. Cal. Mar. 30, 2009); *see also Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (finding that "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness").

The Ninth Circuit has placed limits on the inquiry to be made by the Court in considering a settlement. The court in *Officers for Justice* held that a:

> [F]airness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

688 F.2d at 625 (citations omitted).

Here, it is Co-Lead Counsel's considered judgment that this Settlement provides for a fair, reasonable and adequate resolution of the litigation and thus, should be entitled to a presumption of reasonableness. *See Hughes v. Microsoft Corp.*, No. C98-1646C, C93-0178C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001). This presumption of reasonableness is further strengthened because the arm's-length negotiating process involved a mediator experienced in these types of cases. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) (finding mediator's involvement supports settlement approval).[5]

---

[5] *See also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (stating that involvement of mediator or other third parties in settlement discussions is "further evidence of the arm's length . . . nature" of the settlement); *In re Indep. Energy Holdings PLC*, 00 Civ.

Thus, Lead Plaintiffs request that the Court find that the Settlement is "fair, reasonable, and adequate," as required by Fed. R. Civ. P. 23(e). As demonstrated below, consideration of several factors asserted by the Ninth Circuit weighs in favor of settlement in this case.

## IV.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AND CERTIFY THE SETTLEMENT CLASS

### A.   The Settlement Is Fair, Reasonable And Adequate

To determine whether a proposed settlement is fair, reasonable and adequate, a court may consider "some or all" of the following factors: (1) the strength of the plaintiffs' case, including the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status through trial; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of the proceedings; (5) the experience and views of counsel; (6) the presence of a governmental participant; and (7) the reaction of the class members to the proposed settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998); *Torrisi*, 8 F.3d at 1375. "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi*, 8 F.3d at 1376 (citation omitted). As set forth below, an analysis of each of these factors demonstrates that the Settlement is fair, adequate, and reasonable in this case.

### 1.   The Overall Strength of Plaintiffs' Case, Including the Risk,  Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlement

Co-Lead Counsel, who have a great deal of experience in litigating and resolving complex securities class actions, carefully evaluated the merits of this case, in light of all of the risks and potential weaknesses, before Lead Plaintiffs entered into the Settlement. First, Lead Plaintiffs and their counsel conducted a thorough investigation of the claims in this complex case

---

6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) (holding that "the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").

with a multitude of Defendants. Co-Lead Counsel conducted a detailed review of Galena's public filings with the SEC, its press releases and transcripts from its quarterly earnings calls and investment conference appearances, a broad review of media, analyst and news reports about the Company, and other publicly-available data, including trading data relating to the price and trading volume of Galena's publicly-traded securities. In addition, Co-Lead Counsel conducted extensive investigation and analysis of non-public information, including interviews with former employees of Galena and the Promoter Defendants. Co-Lead Counsel also reviewed internal Galena emails and board minutes and agendas concerning the stock promotion, as well as the Report of Galena's Independent Committee. And Co-Lead Counsel obtained and reviewed about 20,000 pages of documents from Galena during the settlement process to confirm the adequacy of the Settlement.

But while the case is strong – *because of* the substantial research and investigation conducted – continued litigation poses many risks. These include the risk that the Class might not be certified, or that the Action might succumb at the summary judgment stage to attacks regarding loss causation, scienter, liability, or damages. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced") (citations omitted); *OmniVision*, 559 F. Supp. 2d at 1041. Further, the Company was on the brink of bankruptcy at the time the settlement negotiations occurred. Additionally, Plaintiffs are still litigating against the Promoter Defendants, DreamTeam, McCarthy, Lidingo, and Bjorlin, with the possibility of additional recovery.

### 2. The Risks of Continued Litigation Weigh Heavily in Favor of Settlement

The risk that the litigation might result in the Class not recovering at all, particularly in a case involving complicated legal issues, is a significant factor in the award of fees. *OmniVision*, 559 F. Supp. 2d at 1047 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002)); *see also In re Washington Public Power Supply System Sec. Lit.*, 19 F.3d 1291, 1299-1301 (9th Cir. 1994). To determine whether the proposed Settlement is fair, reasonable and

adequate, the Court must balance the continuing risks of litigation against the benefits afforded to Class Members and the immediacy and certainty of a substantial recovery. *In Re Mego Fin. Corp.*, 213 F.3d 454, 458 (9th Cir. 2000); *OmniVision*, 559 F. Supp. 2d at 1046.

Although Co-Lead Counsel believes that this case is meritorious, the risks discussed below render the outcome of lengthy litigation and trial extremely uncertain. *See In re Mfrs. Life Ins. Co. Premium Litig.*, No. 1109, 1998 WL 1993385, at *5 (S.D. Cal. Dec. 21, 1998) (stating that "even if it is assumed that a successful outcome for plaintiffs at summary judgment or at trial would yield a greater recovery than the Settlement—which is not at all apparent—there is easily enough uncertainty in the mix to support settling the dispute rather than risking no recovery in future proceedings"). Therefore, careful consideration of the litigation risks supports approval of the Settlement as fair, adequate and reasonable. *See Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009), (deferring to the "reasoned judgment" of class counsel in opting to settle, although the class might have achieved greater recovery in taking the case to trial).

While this case is meritorious, there is a risk that part or all of it might be dismissed, or that Plaintiffs might not succeed at trial. The Court has already trimmed certain of the claims in this action. The Court **has** found that the Complaint states a claim against most Defendants. The Court, however, dismissed most of the claims involving one of the promotions (by Lidingo), dismissed one of the bases of Plaintiffs' insider trading claim, dismissed most of the controlling person claims, and dismissed Defendant Schwartz entirely.

Although the Court sustained Lead Plaintiffs' claims with respect to the alleged misstatements, Settling Defendants raised specific defenses based on a binding line of authority holding that the Galena Defendants cannot be held liable for statements made by the third party promoter Defendants. The Settling Defendants' primary argument was that Galena was not the "maker" of the statements after the Supreme Court ruling in *Janus Capital Grp., Inc. v. First Derivative Traders,* 564 U.S. 135, 131 S. Ct. 2296 (2011). Although Lead Plaintiffs believe that they could adequately respond to the fact specific defenses, it is not clear that a jury would agree

with Lead Plaintiffs' theory that the statements were actually made by the Galena Defendants based on theories of respondeat superior and ultimate authority.

Further, Plaintiffs would now have to prove that the Settling Defendants made false statements *with scienter*. "[A]ny claim requiring proof of an intentional mental state presents challenges." *Vinh Nguyen v. Radient Pharm.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014).

Further, the documents Plaintiffs relied upon to prove their claims are susceptible to multiple interpretations. After public disclosure of the stock promotion, Galena formed a Special Committee consisting of two of its Directors to investigate the purported wrongdoing and recommend whether to proceed with a lawsuit against the alleged culprits. The Special Committee's counsel, Locke Lord LLP, reviewed 140,000 pages of documents, and ultimately produced the Special Committee Report, which concluded that there was no evidence that (1) Galena knew the DreamTeam Defendants paid bloggers to write favorable articles, (2) any insiders other than Ahn knew of the DreamTeam Defendants' activities before trading in Galena's stock, and (3) the DreamTeam Defendants' articles had a material effect on the price of Galena's stock. Though they reached different conclusions, the Special Committee Report relied on many of the documents Plaintiffs relied upon in the Complaint and would rely upon in proving their claims. Indeed, Plaintiffs and the Special Committee Report reached different conclusions from the same specific documents. For example, the Special Committee Report concluded that an email by Lidingo falsely claimed to have boosted Galena's stock price; Plaintiffs concluded that Lidingo's claim was accurate. Dkt. No. 59 at ¶156. The Special Committee Report took Bernarda's claim in an email that she did not know who was one of the DreamTeam writers was as evidence that the promotion was immaterial. Plaintiffs alleged and continue to believe that Bernarda was lying in this email to cover up the fraudulent promotion, and thus conclude that the promotion was very material. *Id.* at ¶178. The Special Committee Report suggested that the timing of DreamTeam's termination was a coincidence. Using the same documents, Plaintiffs alleged and continue to believe that DreamTeam was fired because

its role was disclosed to the public. *Id.* at ¶186. It is difficult to predict the jury's decision when lawyers can argue diametrically opposite conclusions from the same documents.

Further, while Plaintiffs allege several partial disclosures of the scheme, Settling Defendants claim these disclosures did not reveal the fraud, or only revealed publicly available information. While the Court ruled in Plaintiffs' favor, it expressly acknowledged that Settling Defendants might be able to provide evidence to support their arguments at summary judgment or trial. *Id.* Had Settling Defendants succeeded in their arguments on loss causation or damages, the Class' potential recovery would have been severely limited. At the very least, Plaintiffs and Settling Defendants would have engaged in an arduous, expensive battle-of-the-experts on loss causation and damages. Although Plaintiffs believe that they would prevail on these issues, "prosecuting these claims through trial and subsequent appeals would have involved significant risk, expense and delay to any potential recovery…Other risks included proving loss causation and the falsity of the representation at issue."  *In re Charles Schwab Corp. Sec. Litig.*, No. C 08-01510 WHA, 2011 WL 1481424, at *5 (N.D. Cal. Apr. 19, 2011); *In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166, 1172 (S.D. Cal. 2007) ("The Court also recognized that the issues of scienter and causation are complex and difficult to establish at trial" and, as a result, "concludes that the settlement is a prudent course.")

Moreover, this Action, if taken to trial, would have required tremendous preparation and resources by both sides, as well as substantial Court resources. *Browne v. Am. Honda Motor Co.*, No. CV 09-06750 MMM DTBX, 2010 WL 9499072, at *6 (C.D. Cal. July 29, 2010) ("Had the parties aggressively litigated class certification and tried the case, it could have consumed substantial party and court resources. There is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.") Indeed, the sheer length of the Court's opinion on Defendants' motions to dismiss – 90 pages – shows the complexity of the Action, as well as the amount of the Parties' and the Court's resources that would have to be spent to shepherd it through summary judgment and trial. As a result, and given the post-trial

appeals that would likely follow, years would pass before the Class would obtain a judgment, if any.

And even if Plaintiffs obtained a judgment on behalf of the Class, collecting it is another matter. Galena is subject to an ongoing SEC investigation, and certain of its officers and directors may face indictment or SEC suits. Attorneys' fees spent litigating these cases will consume Galena's D&O insurance. There remained the very serious risk that any judgment would go unsatisfied as the legal costs of a trial would eat up most if not all of defendants' D&O insurance, leaving Class Members with the prospect of enforcing a judgment from Galena, a struggling company, and the Individual Defendants.

Galena has never turned a profit, and as of March 31, 2016, had an accumulated deficit of $296 million, and only $35 million in cash and cash equivalents.[6] Without access to capital markets, Galena will eventually run out of money. And, with a securities class action pending, it may be unable to raise funds. It is no coincidence that Galena filed a Registration Statement to sell up to $100 million of its securities the same day it announced that it had reached a settlement in this case.

In sum, despite the strength of Lead Plaintiffs' case, the risk, expense, complexity, and likely duration of further litigation clearly support approval of the Settlement. *See Syncor ERISA Litigation*, 516 F.3d at 1101; *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless settlement is clearly inadequate, approval is preferable to lengthy and expensive litigation with uncertain results.") Thus, this factor supports the Settlement because, "[u]nlike protracted litigation with an uncertain outcome, the Settlement offers class members prompt, efficient and guaranteed relief." *White v. Experian Info. Solutions, Inc.*, 803 F. Supp. 2d 1086, 1095 (C.D. Cal. 2011).

---

[6] Galena Biopharma, Inc., 10-Q for the quarter ended March 31, 2016, available at https://www.sec.gov/Archives/edgar/data/1390478/000139047816000110/gale-20160331x10q.htm.

Given the issues Lead Plaintiffs faced in establishing liability, loss causation, and damages, there is a substantial risk that nothing would be recovered if this case were to proceed to trial. Further, Galena has no ability to pay any potential judgment given its tenuous financial state, and other litigation pending arising from the same set of facts as the instant case. The ability to settle the Action now allowed Class Members to achieve 12% of maximum potential damages. This factor thus weighs in favor of this Court's final approval of the Settlement.

### 3.    The Settlement Recovers A Significant Portion of Provable Damages

The settlement amount of $20.0 million exceeds the median amount obtained in securities fraud class action settlements in 2015. According to Cornerstone Research's *Securities Class Action Settlements: 2015 Review and Analysis* ("Cornerstone Report"), the median settlement for securities class action settlements in 2015 was $6.1 million. *See* Exhibit 2 attached to the Joint Decl., at 1. Thus, the proposed settlement of $20.0 million in this Action is well above the median settlement amount for all securities class action settlements approved in 2015. Indeed, according to Cornerstone research, a $20.0 million settlement falls between the 75th and 90th percentile of all settlements based on 2015 statistics. *Id.* at 6.

Plaintiffs' experts estimate maximum damages are $166.3 million. In Defendants' view, damages were less than $40.0 million. The settlement thus represents over 12% of the maximum estimated damages which the Class would recover if Plaintiffs won on every material issue at trial – and more than 50% of damages using Settling Defendants' estimated damages model – *before* deductions for fees and expenses. Settlements valued at a much lower percentage of possible damages are routinely approved. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *OmniVision*, 559 F. Supp. 2d at 1042 (approving settlement amount of 9% of maximum potential damages). Indeed, in 2015, the median settlements in cases with damages between $125.0 million and $249.0 million recovered approximately 1.7% of estimated damages. Joint Decl. Ex. 2, 9. This Settlement does more than six times better.

Moreover, the estimated recovery of 12% of maximum potential damages does not take into account the various defenses put forth by Settling Defendants. If a jury credits Settling Defendants' damages and loss causation experts over Lead Plaintiffs' experts, in whole or in part, with respect to whether a significant portion of either or both of the alleged share price declines were causally related to Settling Defendants' alleged misrepresentations and omissions, damages could substantially be reduced. *See, e.g.*, *Heritage*, 2005 WL 1594403, at *7 (citing *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999)) (noting instances where a settlement was rejected by a court only to have the ultimate recovery generated by continued litigation be less than the proposed settlement).

Finally, "much of the value of a settlement lies in the ability to make funds available promptly." *Heritage*, 2005 WL 1594403, at *8. Thus, when compared with the "present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing," the Settlement reached in this case is even more valuable. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004). Thus, where "the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court," the recovery of a substantial sum certain today, weighs in favor of the Settlement. *OmniVision,* 559 F. Supp. 2d at 1042 ("[T]he Settlement, which offers an immediate and certain award for a large number of potential class members, appears a much better option"). The Defendants may have no ability to pay any judgment even if Plaintiffs win at trial given the fact that Galena was at high risk of bankruptcy from protracted litigation.

### 4. The Amount of Discovery Completed and the Stage of the Proceedings Support Approval of the Settlement

"[I]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision

about settlement." *Mego*, 213 F.3d at 459 (internal quotations omitted).[7] Rather, "[t]he pertinent inquiry is what facts and information have been provided." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 587 (N.D. Ill. 2011).

Lead Plaintiffs have sufficient information to evaluate the prospects for this case and assess the adequacy of the Settlement. By the time the Settlement was reached, Co-Lead Counsel had:   (1) reviewed and analyzed Galena's Class Period and pre-Class Period public filings, annual reports, press releases, quarterly earnings call and industry and investment conference transcripts, and other public statements; (2) collected and reviewed a compilation of analyst reports and major financial news service reports on Galena; (3) reviewed and analyzed stock trading data relating to Galena; (4) reviewed any potential defenses to Lead Plaintiffs' adequacy as class representatives; (5) investigated third party promoter industry specific practices; (6) conducted extensive investigation and analysis of publicly-available data, presentations, and other relevant materials; (7) conducted extensive investigation and analysis of non-public information, including interviews with former Galena and DreamTeam employees; (8) drafted the initial complaint and the detailed Amended Consolidated Complaint to comply with the PSLRA"; (9) researched, drafted and argued the opposition to five separate Motions to Dismiss by varying Defendants, as well as Defendants' additional Request for Judicial Notice; (10) prepared for and engaged in two separate full days of mediation, including drafting a mediation statement, as well as continued negotiation efforts over the weeks following the mediation sessions in order to finalize the Settlement; and (11) obtained and reviewed over 20,000 pages of internal documents during the settlement process to confirm the adequacy of the Settlement. Joint Decl. ¶54. Under these circumstances, Lead Plaintiffs and Co-Lead Counsel were in an excellent position to evaluate the strengths and weaknesses of the Action and the substantial risks of continued litigation, and to conclude that the Settlement provides a fair, adequate, and

---

[7] Informal information sharing is especially appropriate where an action is stayed pursuant to the PSLRA's discovery stay. *Immune Response*, 497 F. Supp. 2d at 1174.

reasonable recovery in the best interests of the Class. Having sufficient information to properly evaluate the Action, Co-Lead Counsel has managed to settle this Action on terms very favorable to the Class without the substantial additional expense, risk, and uncertainty of continued litigation.

### 5. Experienced Counsel Concur that the Settlement, Which Was Negotiated in Good Faith and at Arm's-Length, Is Fair, Reasonable, and Adequate

"[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980); *see also Nat'l Rural*, 221 F.R.D. at 528 ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (*quoting In re Painewebber Ltd. P'ships. Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)).  Moreover, "a presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." MANUAL FOR COMPLEX LITIGATION (Third) § 30.42 (1995); *Riker v, Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) (quoting 4 A. Conte & H.B. Newberg, *Newberg on Class Actions* §11:42 (4th ed. 2002)).

This case has been litigated by experienced and well-respected counsel on both sides, all of whom specialize in the area of securities litigation. *See* Exhibit A to the Smollar, Rosen and Ratliff Declarations. In addition, the Settlement was achieved with the aid of a nationally-regarded mediator, the Honorable Layn R. Phillips (Ret.). The Parties engaged in negotiation during two separate all-day mediations, spanning over a six month period on March 2, 2016 and September 19, 2016.  Joint Decl. ¶¶ 24, 25. The negotiations were in good faith, at arm's-length and were in no way collusive.  *Id*.  After several days of mediation and months of spirited discussion and back-and-forth bargaining, the Parties agreed to settle the Action for a payment of $20.0 million.

After the settlement in principle was reached, the Parties engaged in further negotiations over the details of the Stipulation and the other facets of the Settlement and its documentation. *Id*. Only after several weeks of additional negotiations, and substantial effort in drafting all of the

Settlement-related documentation and necessary filings, did the Parties finally agree to all the terms of the Settlement reflected in the Stipulation. *Id.* That the Action was hard-fought at every stage by experienced counsel strongly weighs in favor of a finding that the Settlement is fair and reasonable and should be approved.

###### 6.      The Absence of a Governmental Participant

There was no governmental participant litigating on behalf of or alongside the Class.[8] Without this private, civil action there would have been no recovery for the Class.  Accordingly, this factor supports Settlement approval.

###### 7.      The Reaction of the Class Members Supports Approval of the Settlement

Pursuant to the Court's Order dated February 16, 2016 (the "Preliminary Approval Order" Dkt. No. 172), over 74,000 Notice Packets were sent to potential Settlement Class Members, and Summary Notices were distributed over various business news wires on two separate occasions. Hughes Decl. ¶¶7, 8. The reaction of the Class to the Settlement was completely favorable. While the deadline for Settlement Class Members to exclude themselves from the Settlement Class is on June 2, 2016 and the deadline to object to the Settlement, the Plan of Allocation and the application for attorneys' fees and reimbursement of litigation expenses is on June 9, 2016, as of the filing of this Motion (May 26, 2016), there are no objections and only eight exclusions.  Hughes Decl. ¶11. "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."  *Hanlon*, 150 F.3d at 1027; *see also Mego*, 213 F.3d at 458. The fact that there have been no objections raises a strong presumption that the settlement is favorable to the class. *See OmniVision,* 559 F.Supp.2d at 1043; *In re Apple Inc. Sec. Litig.,* No. 5:06-CV-05208-JF HRL, 2011 WL 1877988, at *3 (N.D. Cal. May 17, 2011) Accordingly, Class Members' reaction to the Settlement strongly warrants approval.

---

[8] At the time of the Settlement, to Plaintiffs' knowledge, the SEC had not initiated any proceedings against any Defendants.

**B.      Final Certification Of The Class Should Be Granted**

In the Court's Order dated February 16 2016, the Court conditionally certified the settlement class consisting of "all persons who purchased or otherwise acquired Galena common stock during period, August 6, 2013 through and including May 14, 2014, and were damaged thereby." Dkt. No. 172 ¶ 2. As described in detail in Lead Plaintiffs' memorandum in support of preliminary approval of the settlement, Dkt. No. 169-1 at 19-23, certification of the Class under Rule 23 of the Federal Rules of Civil Procedure is appropriate.

**1.      The Class Meets the Requirements of Rule 23(a)**

In order for a class to be certified, it must meet the following requirements: (a) numerosity; (b) commonality; (c) typicality; and (d) adequacy of representation. *Hanlon*, 150 F.3d at 1019. As detailed in Lead Plaintiffs' memorandum in support of preliminary approval, the Class meets all the requirements of Rule 23(a).

First, as to numerosity, the class is sufficiently numerous given that the Company had approximately 118 million shares of common stock outstanding during the Class Period. Given this amount of shares, it is safe to assume that there are several thousand, if not million, potential members of the Class who purchased during the Class Period.

Second, all of the conduct alleged in the complaint was common to all members of the Class. All of the Class Members purchased common shares of Galena during the Class Period. Therefore, all of the Defendants' alleged misrepresentations and omissions were made to each of the Class Members.

Third, all of the Class Members' claims are interrelated, and Lead Plaintiffs' claims are typical of those of the rest of the class. All Class Members suffered losses by virtue of the corrective disclosures.

Fourth, Lead Plaintiffs are adequate representatives of the Class. Lead Plaintiffs have no conflicts with the other class members, and have retained counsel with vast experience in the prosecution of securities class actions. Lead Plaintiffs have been actively involved in the case

from its inception, maintaining communication with Co-Lead Counsel. Due to Lead Plaintiffs' diligence and retention of experienced counsel, their representation is adequate.

### 2.    The Class Meets the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification where, in addition to the requirements of Rule 23(a), common questions of law or fact predominate over any individual question and a class action is superior to other available means of adjudication. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 607 (1997). This standard, as in most securities class actions, is easily met here. The root of the class action—whether Defendants' publicly disseminated releases and statements omitted and/or misrepresented material facts—is the central issue and predominates over any theoretical individual issue that may arise. Additionally, the class action mechanism is the best method of resolving this suit. Since the controversy for each class member is identical, adjudicating in one suit and one forum is the most economical means of resolving this matter. Moreover, some of the class members' damages are too small to make it feasible to incur substantial litigation costs that would exceed any potential recovery.

### C.    The Proposed Plan of Allocation is Fair, Reasonable and Adequate and Should be Approved

Lead Plaintiffs also request that the Court approve the Plan of Allocation as "fair, reasonable, and adequate." *Officers for Justice*, 688 F.2d at 625 (citations omitted). A "plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *OmniVision*, 559 F. Supp. 2d at 1045 (internal quotations omitted, emphasis added); *see also In re Oracle Sec. Litig.*, No. C-90-0931 VRW, 1994 WL 502054, at *1 (N.D. Cal. Jun. 18, 1994).

In making this determination, courts have given great weight in determining the fairness, reasonableness and adequacy of a proposed plan of allocation to the opinion of class counsel. *See In re NASDAQ Market-Makers Antitrust Litig.*, 94 Civ. 3996 (RWS), 2000 WL 37992, at *2 (S.D.N.Y. Jan. 18, 2000) (stating that "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' Class Counsel")

(quoting *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993)) (the court "affords considerable weight to the opinion of experienced and competent counsel that is based on their informed understanding of the legal and factual issues involved" in approving distribution of different categories of claims reflecting differences in damages).

There is no preferential treatment of any Lead Plaintiff or any other Class Member. The proposed Plan of Allocation provides formulas for calculating the recognized claim of each Class Member, based on each such person's purchases and sales of Galena securities on the open market during the Class Period and when they sold. Lead Plaintiffs will receive a distribution from the Net Settlement Fund based on the same formulas that govern the recovery of every member of the Class.[9] There can be no preferential treatment where Lead Plaintiffs are treated exactly like absent class members. *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1334-35 (N.D. Cal. 2014). As such the Plan of Allocation is fair, reasonable and adequate.

### D.    The Notice Program Satisfied Due Process And Complied With Fed. R. Civ. P. 23(E)

Due process requires that the class members be given notice of a proposed settlement and their right to be heard at the fairness hearing. There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements. Rather, to satisfy due process and comply with Fed. R. Civ. P. 23(e), notice for the approval of a class settlement by class members must only fairly apprise them of the subject matter of the suit, the proposed terms of the settlement, and the members' opportunity to be heard. *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177 (9th Cir. 1977); *see also Torrisi*, 8 F.3d at 1374-75. Thus, notice may contain only a "very vague description" of the proposed settlement. *Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980). Notice is "adequate if it may be understood

---

[9] While Lead Plaintiffs are applying for awards to compensate them for their time, "[t]he Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Nen Thio*, 14 F. Supp. 3d at1335 (internal quotations omitted).

by the average class member." 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.53 at 167.

### 1. The Dissemination Plan Satisfies Due Process

There is no statutory or due process requirement that all class members receive actual notice by mail or other means. Rather, "individual notices must be provided to those Class Members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974). "Rule 23(e) gives the Court 'virtually complete' discretion as to the manner of service of settlement notice." *Colesberry v. Ruiz Food Products, Inc.*, No. CVF 04-5516 AWISMS, 2006 WL 1875444, at *7 (E.D. Cal. June 30, 2006) (citing *Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981)). Here the notice was disseminated via individual mailing of over 74,000 printed notices and published on two separate occasions over a national business internet newswire. This notice easily satisfies the due process requirement.

### 2. The Contents of the Notice Satisfy Due Process

This circuit provides that proper notice should provide: (1) the material terms of the proposed settlement; (2) disclosure of any special benefit to the class representatives; (3) disclosure of the attorneys' fees provisions; (4) the time and place of the final approval hearing and the method for objecting to the settlement; (5) and explanation regarding the procedures for allocating and distributing the settlement funds; and (6) the address and phone number of class counsel and the procedures for making inquiries. *See Marshall*, 550 F.2d at 1178.

Here, the Court-approved Notice provided all of the required information: a description of the $20.0 million Settlement Fund and Plan of Allocation of that Settlement Fund; Co-Lead Counsel's intent to apply for a fee award in an amount not to exceed 33 $^{1/3}$% of the Settlement Fund for settlement of the class claims and an amount not to exceed $475,000 for reimbursement of expenses; the request for a compensation award to each Lead Plaintiff in the amount of $5,000; and the contact information for Co-Lead Counsel and the Claims Administrator, including how to make inquiries to both. The notice also included the date, time, and place of the fairness hearing, described how to object, and informed class members that any objection must

be postmarked or received by the Court no later than June 9, 2016. Furthermore, the Court-approved notice adequately informed class members of the impact of the settlement, including release of claims against Defendants for any class members who do not opt out.

In sum, broad dissemination of the Court-approved notice satisfied every conceivable requirement of due process. Accordingly, the settlement should be granted final approval.

## V.     CONCLUSION

The complexity of the facts at issue, the substantial expenses if this litigation were to continue to trial, and the risks attendant to prevailing on any subsequent motion to dismiss a second amended complaint, summary judgment, trial and subsequent appeals, weigh in favor of accepting a $20.0 million recovery now on behalf of the Class. The Settlement presents an immediate and sizable benefit to Class Members and Lead Plaintiffs. Accordingly, Lead Plaintiffs respectfully request this Court to approve the Settlement, Notices, and Plan of Allocation as fair, reasonable and adequate; permanently enjoin the assertion of any claim that arise from or relate to the subject matter of the Action; dismiss the Action with prejudice; certify the Class; enter Final Judgment in the form attached as Exhibit 7 to the Joint Declaration; approve payment of Co-Lead Counsel's fees in the amount of $5.0 million and expenses in the amount of $112,534.65; and award $5,000 in reimbursement to each Lead Plaintiff for their time, costs and expenses relating to their representation.

DATED: May 26, 2016                    Respectfully submitted,

                                       **POMERANTZ LLP**


                                       /s/Leigh Handelman Smollar

                                       Patrick V. Dahlstrom
                                       Leigh Handelman Smollar
                                       Louis C. Ludwig
                                       Ten South LaSalle Street, Suite 3505
                                       Chicago, Illinois 60603
                                       Tel: (312) 377-1181
                                       Fax: (312) 377-1184
                                       Email: lsmollar@pomlaw.com


                                       -and-


                                       /s/ Phillip Kim (pro hac vice)

                                       **THE ROSEN LAW FIRM, P.A.**
                                       Laurence M. Rosen (pro hac vice)
                                       Phillip Kim (pro hac vice)
                                       275 Madison Avenue, 34th Floor
                                       New York, NY 10016
                                       Phone: (212) 686-1060
                                       Fax: (212) 202-3827
                                       Email: lrosen@rosenlegal.com

                                       *Co-Lead Counsel for Lead Plaintiffs and the
                                       Class*

                                       **RANSOM, GILBERTSON, MARTIN &
                                       RATLIFF, L.L.P.**
                                       Jeffrey Ratliff
                                       1500 NE Irving Street, Suite 412
                                       Portland, Oregon 97232
                                       Tel: 503-226-3664

                                       *Liaison Counsel for Lead Plaintiffs and the Class*

NOTICE OF MOTION & MOTION; MPA ISO FINAL APPROVAL
Case No. 3:14-cv-00367-SI

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record who have consented to electronic notification. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all non-CM/ECF participants.

DATED: May 26, 2016

<u>/s/ Phillip Kim</u>

NOTICE OF MOTION & MOTION; MPA ISO FINAL APPROAL
Case No. 3:14-cv-00367-SI