# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| IN RE GALENA BIOPHARMA, INC. SECURITIES LITIGATION, | Case No.:3:14-cv-00367-SI<br>Date: June 23, 2016<br>Time: 3:30 P.M.<br>Place: District of Oregon |

**JOINT DECLARATION OF LEIGH HANDELMAN SMOLLAR AND LAURENCE M. ROSEN IN SUPPORT OF MOTION FOR (I) FINAL APPROVAL OF CLASS ACTION SETTLEMENT; (II) APPROVAL OF PLAN OF ALLOCATION; (III) CLASS CERTIFICATION; (IV) AWARD OF ATTORNEYS' FEES; (V) REIMBURSEMENT OF EXPENSES; AND (VI) AWARDS TO LEAD PLAINTIFFS**

We, Laurence M. Rosen and Leigh Handelman Smollar, hereby declare as follows:

1. We are, respectively, partners at The Rosen Law Firm, P.A., and Pomerantz LLP, Co-Lead Counsel to Lead Plaintiffs Kisuk Cho, Anthony Kim, Pantelis Lavidas and Joseph Buscema ("Lead Plaintiffs") and Plaintiff Alan Theriault (together with Lead Plaintiffs, the "Plaintiffs") in the above-referenced action, and make this Declaration in support of Plaintiffs' motion for final approval of the Settlement with Defendants Galena Biopharma, Inc. ("Galena," or "the "Company"), Ryan M. Dunlap, Remy Bernarda, Rudolph Nisi, Sanford Hillsberg, Steven Kriegsman, Stephen Galliker, Richard Chin and Mark Ahn, and Mark Schwartz (the "Settling Defendants"). Lead Plaintiffs and the Settling Defendants are referred to herein as the "Settling Parties".

2. By Order dated October 3, 2014, this Court appointed Kisuk Cho, Anthony Kim, Pantelis Lavidas and Joseph Buscema as Lead Plaintiffs and approved the law firm of Pomerantz LLP and The Rosen Law Firm, P.A. as Co-Lead Counsel, and Ransom, Gilbertson, Martin & Ratliff, LLP as Liaison Counsel. Dkt. No. 52. As Lead and Liaison Counsel, in consultation with the Lead Plaintiffs, our firms have directed every aspect of the prosecution and resolution of this Action on behalf of the Class.

3. We have personal knowledge of various matters set forth herein based on our

1

day-to-day participation in the prosecution and settlement of this Action, and, if called as witnesses, could and would testify completely thereto. Additionally, as two of the primary partners associated with this matter, we have learned about, and have a detailed understanding of the efforts of other attorneys who have worked on the Action. Additional matters are attested to, via exhibit, by the Claims Administrator in this case, KCC Class Action Services ("KCC").

## I. INTRODUCTION

4. After an inquiry into the merits of the claims, assessing defenses, and estimating likely damages that could be recovered by the Class, the Parties agreed to arm's-length negotiations under the supervision of a respected mediator, the Honorable Layn R. Phillips (Ret.). As a result of these negotiations, the Parties agreed to a settlement valued at $20.0 million (the "Settlement").

5. On February 16, 2016 the Court preliminarily approved the Settlement and directed Notice of the Settlement to the Class. Dkt. No. 172.

6. The Claims Administrator has now delivered 74,834 claims packets to potential Class Members, which included the Notice and the Proof of Claim Form ("Notice Packets"). *See* Declaration of Justin R. Hughes ("Hughes Decl."), attached hereto as Exhibit 1, ¶ 6. Additional copies of the Notice and Proof of Claim Form were made available for download on the Claims Administrator's website. *Id.* at ¶ 8.

7. At the time of this filing, no Class Members have objected to the Settlement. Additionally, there have been eight potential Settlement Class Member requests for exclusion from the Settlement Class. *See* Hughes Decl. ¶ 9; Hughes Decl., Exh. C.

8. As explained herein, and in the memoranda filed herewith, Co-Lead Counsel respectfully submit that the Settlement is an excellent result for the Settlement Class and worthy of approval, that the Plan of Allocation is equitable and just, and that the requested fee and expense reimbursement should be awarded in full.

## II. LITIGATION EVENTS

### A. Initial Class Action and Consolidation

9. On March 5, 2014, the initial complaint in this matter was filed by Plaintiff Michael Deering in the United States District Court for the District of Oregon. Mr. Deering alleged that Galena ("Galena") and certain of its officers had violated the federal securities laws. The case was captioned *Michael E. Deering*, *Individually and on behalf of all others similarly situated v. Galena Biopharma, Inc., Mark Ahn, Ryan Dunlap and Mark Schwartz.* Dkt. No. 1. There were four other separate cases filed alleging similar violations.

10. By Order dated October 3, 2014, the Court ordered consolidation of all five cases into *In re Galena Biopharma, Inc. Securities Litigation*, Case No. 3:14-cv-00367-SI. Dkt. No. 52.

### B. The Consolidated Amended Complaint

11. On October 31, 2014, after substantial further research and investigation, Lead Plaintiffs filed their Consolidated Class Action Complaint ("Complaint"), on behalf of purchasers of Galena common stock between August 6, 2013 and May 14, 2014, inclusive (the "Class Period"), against """"the Settling Defendants, The DreamTeam Group LLC ("DreamTeam"), Thomas Michael Meyer, Michael McCarthy, Lidingo Holdings, LLC ("Lidingo"), and Kamilla Bjorlin. Dkt. No. 59.

12. The Complaint alleged claims under Sections 10(b), 20(a) and 20A of the Securities Exchange Act of 1934 (the "Exchange Act") related to a stock promotion scheme wherein Defendants manipulated the market price of Galena stock by publishing bullish articles regarding Galena on third-party websites which claimed to have been written by sophisticated investors and omitted to tell the market that they were paid promotions.

13. The Complaint further alleged that the effect of the pump-and-dump scheme peaked in January 2014 when the price of Galena stock reached $7.48 per share, its highest price since 2010, which also was the time insiders began selling off all of their holdings. In February 2014, the price of Galena common stock began to decline in a series of partial disclosures, eventually causing the stock price to fall back to its pre-class period level of approximately $2.00 per share after all of the corrective disclosures were revealed.

14. Lead Plaintiffs based the Complaint on an extensive factual investigation during

which Co-Lead Counsel, *inter alia*: conferred with experts regarding loss causation and damage analyses; retained an expert to conduct a damages analysis; reviewed publicly-available information regarding the third party promoter and Settling Defendants' scheme; reviewed and analyzed data from message boards and undercover investigators who were involved in exposing the scheme; retained a private investigator who interviewed multiple former Galena and DreamTeam employees regarding the issues raised in the Complaint; and reviewed Galena's public filings with the SEC, press releases issued by the Company, transcripts of quarterly earnings calls and investment conferences, media, analyst and news reports about the Company, and other publicly available data, including trading data relating to the price and trading volume of Galena's publicly-traded securities.

### C. Defendants' Motions to Dismiss were Denied as to the majority of the Defendants and Claims

15. On January 9, 2015, three different sets of Settling Defendants moved to dismiss the Consolidated Amended Complaint. Dkt. Nos. 80-84.

16. Defendants argued under *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011) ("*Janus*"), they were not the "makers" of the statements pursuant to the requirements of the Exchange Act, or, alternatively, that they did not have a duty to disclose. Dkt. No. 82. Defendants also vigorously contested reliance, loss causation and various claims of control person liability. *Id.*

17. After conducting additional research to respond to the arguments raised by Defendants in their motions to dismiss, Lead Plaintiffs filed one omnibus opposition responding to all of the Settling Defendants' Motions to Dismiss. Dkt. No. 95. Defendants filed reply briefs in further support of the motion to dismiss the Complaint on April 3, 2015. Dkt. Nos. 106-109.

18. On April 20, 2015, Lead Plaintiffs filed a Supplemental Authority regarding the issue of scheme liability under subsections (a) and (c) of Rule 10b-5, as well as false statements under *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302, 180 L. Ed. 2d 166 (2011). Dkt. No. 108. Defendants filed a response on April 22, 2015. Dkt. No. 112.

19. On April 28, 2015, the Settling Parties appeared before the Court for oral argument on the motions to dismiss. Dkt. No. 116. At oral argument, the Court requested supplemental briefing on the complex legal issues. *Id.*

20. On May 5, 2015, the Parties submitted additional briefing. Dkt. Nos. 127-130.

21. On August 5, 2015, the Court granted in part and denied in part Defendants' motions to dismiss, issuing a thorough and detailed 90 page Opinion addressing each side's respective arguments. Dkt. No. 149. The Court granted Lead Plaintiffs leave to amend the claims that were dismissed.

### III. RESOLVING THE LITIGATION

22. While the Motions to Dismiss were pending, the parties began to engage in preliminary settlement discussions and decided that it would be helpful to attempt to resolve the Action with the assistance of a mediator.

23. The Parties scheduled an all-day mediation with the Honorable Layn R. Phillips (Ret.) at one of Settling Defendants' Counsel's office in New York. Prior to the mediation, both Parties prepared confidential mediation statements outlining the relative strengths and weaknesses of their positions in the Action.

24. On March 2, 2015, the Parties engaged in an all-day mediation. The mediation was attended by Co-Lead Counsel, Patrick Dahlstrom and Leigh Handelman Smollar of Pomerantz LLP, Larry Rosen and Jonathan Horne of The Rosen Law Firm, P.A., and Liaison Counsel, Jeffrey Ratliff of Ransom Gilbertson Martin & Ratliff, LLP, as well as counsel for and representatives of the various Settling Defendants and their insurers.

25. Following the March 2, 2015, mediation, there were extensive negotiations with all Settling Parties attempting in good faith to resolve the Action. Shortly after the Court issued its Order, largely upholding the Complaint, on September 19, 2015, the Settling Parties and the D&O Insurers engaged in an additional mediation session with the Honorable Layn R. Phillips, which went well into the night, with the parties agreeing to settle 'the claims for $20.0 million.

26. Details of the settlement and payment structure were worked out by the parties over

the next few weeks, whereupon a proposal containing the particulars of the material terms were confirmed with the mediator by November. Signing the Memorandum of Understanding was delayed due to reason unrelated to this litigation until on December 3, 2015.

27. In the weeks and months that followed, the Parties continued to negotiate over the details of the Settlement, as well as the terms of the Stipulation of Settlement, which included numerous discussions and exchanges of drafts of the Stipulation and its many exhibits.

28. Throughout the course of the Action and settlement negotiations, the Parties were represented by counsel experienced in securities class actions. The Settlement was the result of an adversarial process designed to produce a fair and honest compromise, was the result of arm's-length negotiations, and was aided by an experienced and well- respected mediator.

## IV. PRELIMINARY APPROVAL OF THE SETTLEMENT

29. The Stipulation and Motion for Preliminary Approval were submitted to the Court for preliminary approval on February 5, 2016. Dkt. No. 167.

30. On February 10, 2016, Plaintiffs re-submitted an Amended Stipulation pursuant to the Court's request for additional information. Dkt. No. 170.

31. By Order dated February 16, 2016, the Court granted preliminary approval of the Settlement. Dkt. No. 172. The preliminary approval order: (a) found the Settlement to be sufficiently within the range of reasonableness to warrant the conditional certification of the Class, the scheduling of the Final Approval Hearing, and the dissemination of Notice to Class Members; and (b) appointed KCC Class Action Services to serve as the Claims Administrator. Dkt. No. 172.

32. The Court set a final settlement approval hearing date of June 23, 2016, at 3:30 pm (the "Final Approval Hearing"). *Id.*

## V. SUMMARY OF THE SETTLEMENT AND PLAN OF ALLOCATION

33. The Settlement Consideration is an all-in settlement number valued at $20.0 million, meaning that it includes all attorneys' fees, administration costs, expenses, class member benefits, as well as any other costs, expenses, or fees of any kind whatsoever associated with the resolution of the Action. *See* Stipulation, Dkt. No. 170.

34.     The Class consists of all Persons who purchased or otherwise acquired Galena common stock during the period from August 6, 2013, through and including May 14, 2014, and were damaged thereby. Excluded from the Class are: (1) the Settling Defendants; (2) all current and former directors and officers of Galena during the Class Period; (3) any family member, trust, company, entity, or affiliate controlled or owned by any of the excluded persons or entities referenced above; (4) those persons who file valid and timely requests for exclusion in accordance with the Order.

35.     The Settlement Consideration is to be distributed *pro rata* pursuant to the Plan of Allocation to those Class Members submitting valid claims (the "Authorized Claimants"). As set forth in the Notice, the Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Settlement Consideration (less taxes, approved costs, fees and expenses) based upon each Authorized Claimant's "Recognized Loss."

36.     The proposed Plan of Allocation is based on the legal theory that the decrease in the price of Galena's securities occurring upon the revelation of the truth about Defendants' alleged material misrepresentations and omissions and scheme to manipulate the price of Galena securities may be used to measure the alleged artificial inflation in the price of Galena's securities prior to such revelations. For this reason, the Plan of Allocation is fair and reasonable and equitably treats similarly-situated Class Members.

### VI.    NOTICE OF SETTLEMENT

37.     Pursuant to the Court's Order dated February 16, 2016, Co-Lead Counsel, through the Claims Administrator, implemented a comprehensive notice program which provided notice to Class Members by mail. The Notice contained, *inter alia*, the following information necessary to evaluate the benefits of the Settlement to the Class Members: (a) the amount and makeup of the Settlement Fund; (b) the Plan of Allocation; (c) that Co-Lead Counsel would apply for a fee award in an amount not to exceed $33^{1/3}\%$ of the Settlement Consideration, as well as expenses incurred prosecuting this Action in an amount not to exceed $475,000, and file papers in support thereof 28 days prior (May 26, 2016) to the Final Approval Hearing; (d) that any Class Member could object

to the Settlement and/or fee and expense application or seek exclusion from the Class; (e) a detailed explanation of the reasons for the Settlement; (f) that the deadline for requesting exclusion from the Settlement is June 3, 2016; (g) that objections to the Settlement, the Plan of Allocation or the fee application must be postmarked on or before June 9, 2016; (h) the date, time, and location of the Final Approval hearing and that Class Members have the right to attend and be heard; and (i) that the deadline for filing Proofs of Claim is April 16, 2016.

38. Copies of the Notice and a Proof of Claim form (the "Notice Packet") were mailed to all record transferees of Galena's securities during the Class Period as shown in the transfer records obtained from Galena's transfer agent. *See* Hughes Decl., attached hereto as Exhibit 1.

39. Copies of the Notice and Proof of Claim were also mailed to major brokerage houses, who act as nominees for many securities holders, together with a letter requesting them to forward copies of the Notice to their beneficiaries or to provide the Claims Administrator with lists of their beneficiaries so that the Claims Administrator may forward copies to the beneficiaries. *Id.*

40. From March 3, 2016 to May 25, 2016, 2016, the Claims Administrator received 65,842 names and addresses of potential Settlement Class Members (after exact duplicate mailing records were removed) from individuals or from brokerage firms, banks, institutions and other nominees requesting Notice Packets to be mailed to such Persons. *Id.* at ¶¶6. The Claims Administrator also mailed Notice Packets to 675 potential Settlement Class Members whose names were available from the transfer agent. *Id.* at ¶3. The Claims Administrator also received requests from brokers and other nominee holders for 5,892 Notice Packets to be sent to such brokers and nominee holders so that they could forward them to their customers. *Id.* at ¶ 6.

41. All such requests were complied with in a timely manner, and as a result, as of May 25, 2016, the Claims Administrator has disseminated 74,834 Notice Packets to potential Class Members. *Id.* at ¶ 7.

## PUBLICATION OF THE SUMMARY NOTICE

42. Pursuant to the Order of Preliminary Approval, KCC caused the Summary Notice of Pendency and Proposed Settlement of Class Action (the "Summary Notice") to be transmitted

over *Investor's Business Daily* on March 2, 2016 and caused the Summary Notice to be transmitted over the *GlobeNewsWire* on March 3, 2016. *Id.* at ¶8. Attached hereto as Exhibit 2 are confirmation reports for all wire service publications.

43. As of the time of this filing, no Class Member has objected to the Settlement.

44. As of the time of this filing, eight potential Class Members have requested to be excluded from the Class. *Id.* at ¶ 11; Exhibit C to Hughes Decl.

## VII. THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

45. Before determining that the Settlement is fair, reasonable, and adequate, and entering into it, Co-Lead Counsel, experienced securities class action attorneys, evaluated the prospects of obtaining a better result at trial - one that would also have to withstand later attack on appeal.

46. Co-Lead Counsel firmly believes - based on their investigation - that Plaintiffs' claims against the Settling Defendants have considerable merit, and that Plaintiffs ultimately would prevail at trial. However, Co-Lead Counsel also recognizes that establishing liability would by no means be guaranteed. Prosecuting the case through trial would have first required Plaintiffs to obtain class certification and survive motions for summary judgment. There is no guarantee that this Action would have cleared these hurdles, or if it cleared those hurdles, that it would do so fully and without being pared in a manner that would substantially reduce the maximum potential for recovery.

47. Even after class certification, Plaintiffs would face considerable challenges and expense in proving this case through trial. The issue of *scienter* would have been hotly contested, with Settling Defendants claiming that they did not know that their paid promotions were omitted from third party publications. Similarly, Settling Defendants would have contested that they had ultimate authority over the contents and publication of the promotional articles.

48. Plaintiffs would have faced challenges concerning proof of the elements of loss causation and damages. Lead Plaintiffs would have had to proffer expert testimony in order to prove: (1) what the "true value" of Galena's shares would have been had Defendants made no

9

alleged material misstatements and/or omissions; (2) the amount by which Galena's stares were inflated by the alleged material misstatements and omissions; (3) the amount of inflation removed, if any, by each alleged disclosure of alleged true facts and; (4) the number of shares that were damaged.

49.     Lead Plaintiffs' experts would have had to disentangle the potential effects of multiple pieces of news disclosed around the time of each of the revelations of the truth when the alleged pump-and-dump scheme came to light.  Meanwhile, the Settling Defendants would have presented their own experts to present conflicting conclusions and theories as to the reasons for Galena's price decline. Lead Plaintiffs likely would face *Daubert* motions and, if the expert testimony was admissible, risk having a jury decide the "battle of the experts"- an intrinsically unpredictable process.

50.     Even if Lead Plaintiffs were able to successfully establish liability and damages, and ultimately prevail at trial, the Class would still face the risk of losing any recovery to an unfavorable ruling in a dispositive post-trial motion or a reversal of the verdict on appeal.  Further, the Company's stock is trading at less than $2.00 per share, and there would likely be no funds available from the Company to pay any potential judgment.

51.     In light of the various risks in this Action and based on the strengths and weaknesses of the claims asserted, the evidence developed through investigation, and the damages that might be proven at trial, the Settlement, which provides an aggregate recovery in excess of $20.0 million, is in the best interests of the Class, and is well within the range of reasonableness.

## VIII. CO-LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES

### A. The Fee Application

52.     As compensation for their efforts, Co-Lead Counsel are applying for an award of attorneys' fees in the amount of 25% of the Settlement Fund ($5.0 million), in the same proportion of cash and stock as the Settlement, and reimbursement of $112,534.65 in expenses reasonably incurred in the prosecution and settlement of the Action.  Co-Lead Counsel has prosecuted this

case for two years without any compensation, and each firm has incurred tens of thousands of dollars in expenses without any guarantee of success.

53. The fee request is within the range of fees awarded by courts in the Ninth Circuit, as further detailed and discussed in Co-Lead Counsel's Memorandum in Support of Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Fee Brief"), filed herewith.

### B. Co-Lead Counsel's Work and Expertise

54. Lead Plaintiffs, through the vigorous efforts of Co-Lead Counsel, engaged in extensive factual investigation and litigation of the claims alleged in the Complaint. By the time the Settlement was reached, Co-Lead Counsel had: (1) reviewed and analyzed Galena's Class Period and pre-Class Period public filings, annual reports, press releases, quarterly earnings call and industry and investment conference transcripts, and other public statements; (2) collected and reviewed a compilation of analyst reports and major financial news service reports on Galena; (3) reviewed and analyzed stock trading data relating to Galena; (4) investigated challenges to Lead Plaintiffs' adequacy as class representatives; (5) investigated third party promoter industry specific practices; (6) conducted extensive investigation and analysis of publicly-available data, presentations, and other relevant materials; (7) conducted extensive investigation and analysis of non-public information, including interviews with former Galena employees; (8) drafted the initial complaint and the detailed Complaint to comply with the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (9) researched, drafted and argued the opposition to five separate Motions to Dismiss by various Defendants, and responded to Settling Defendants' additional Request for Judicial Notice; (10) traveled to Oregon for oral argument on the Motion to Dismiss; (11) prepared for and engaged in two separate full days of mediation, including drafting a mediation statement, as well as continued negotiation efforts over the weeks following the mediation sessions in order to finalize the Settlement; and (12) obtained and reviewed over 20,000 pages of internal documents during the settlement process to confirm the adequacy of the Settlement.

55. The expertise and experience of Co-Lead Counsel is also an important factor to be

weighed in assessing a fair fee. As demonstrated in their firm biographies, both Co-Lead Counsel are comprised of experienced and skilled practitioners in the securities litigation field, while Liaison Counsel are respected Oregon attorneys. Co-Lead Counsel have achieved significant securities class action settlements, as well as being counsel of record in cases establishing important precedents that enable litigation such as this to be successfully prosecuted. *See* Smollar Decl., Exhibit A; and Rosen Decl., Exhibit A.

56. Co-Lead Counsel prosecuted the Action vigorously, expending substantial time and resources without any assurance of obtaining any compensation for their efforts. Co-Lead Counsel have already devoted a significant amount of time to this case, and fully expect to devote more time in the future administration and distribution of the Settlement.

### C. Standing and Caliber of Opposing Counsel

55. The quality of the work performed by Co-Lead Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition. Settling Defendants were represented by some of the nation's leading law firms, King & Spalding LLP, Perkins Coie LLP and Debevoise & Plimpton LLP, all highly-respected law firms that specialize in the defense of public companies in securities class actions, and who staffed the case with top-flight legal talent at all levels. In the face of this knowledgeable and formidable opposition, Co-Lead Counsel were nevertheless able to develop a case that was sufficiently strong to persuade the Settling Defendants to settle it on terms that were favorable to the Class.

### D. The Risks of Contingent Litigation

56. Co-Lead Counsel undertook representation of Lead Plaintiffs and the Class on a wholly contingent basis. Co-Lead Counsel knew from the outset that they would expend a substantial amount of time prosecuting this action, yet receive no compensation if the Action proved ultimately unsuccessful. Thus, the contingent nature of payment of fees and expenses and the risks and complexity of the Action should be given substantial weight by the Court in considering the instant application for fees and expenses.

57. Continued litigation would have entailed significant risks to the Class, as the

Action could be derailed in any number of ways before a final judgment in Plaintiffs' favor was entered (and withstood possible appeal).

58.     Even assuming Plaintiffs were to establish Settling Defendants' liability to the Class, Plaintiffs would have faced the challenge of establishing class-wide damages. As stated above, Plaintiffs would need to proffer expert testimony about the "true value" of Galena's shares without the paid promotions. The presentation of conflicting conclusions and theories would require a jury to decide a "battle of the experts".

59.     Even if Lead Plaintiffs were to obtain and maintain class certification, and establish liability and damages at trial, the Class would still face the risk of no recovery should Defendants prevail on either post-trial motions or on appeal. Further, Galena's financial state is tenuous and it most likely would not withstand protracted litigation.

60.     As a result of consistent and persistent efforts in the face of substantial risks and uncertainties, Co-Lead Counsel achieved a significant recovery for the benefit of the Class. In circumstances such as these, and in consideration of Co-Lead Counsel's hard work and the excellent result achieved, the requested 25% fee is reasonable and should be approved. *See* Fee Brief, filed herewith.

### E.     The Reaction of the Class to the Requested Fee

61.     74,834 copies of the Notice have been mailed to potential Class Members. Hughes Decl. ¶ 7. The Notice advised Class Members that Co-Lead Counsel would apply for an award of attorneys' fees from the Settlement Fund, not to exceed $33^{1/3}$% of the Fund.

62.     As of the time of this filing, there have been no objections to the Settlement. Additionally, as of the time of this filing, only eight requests for exclusion have been received from potential Class Members. Hughes Decl. ¶ 9 and Exh. C.

### F.     The Fee Request is Also Justified Under the Lodestar/Multiplier Approach

63.     The Ninth Circuit has found that a court may also consider a lodestar/multiplier approach in assessing the reasonableness of a fee request. The lodestar is determined by multiplying the number of reasonable hours worked on a client's case by a reasonable hourly

13

billing rate for such services given the geographical location, the nature of the services provided, and the experience of the lawyer. It can then be increased or decreased based upon the contingent nature or risk in the particular case involved, and the quality of the attorney's work. A percentage increase or decrease of the lodestar amount is referred to as a "multiplier".

64.     Altogether, Co-Lead Counsel dedicated over 2,203.25 hours to prosecuting this Action. *See* Smollar Declaration, attached hereto as Exhibit 9; Rosen Declaration, attached hereto as Exhibit 10; and Ratliff Declaration, attached hereto as Exhibit 11. These hours were compiled from contemporaneous time records maintained by each attorney and each paralegal affiliated with Co-Lead Counsel. *Id.* Applying Co-Lead Counsel's normal hourly rates, which are consistent with those charged by similarly skilled firms in their respective geographic areas, to the hours expended in this Action yields a lodestar amount of $1,493,175.00. *Id.* Co-Lead Counsel's total expenses were $112,534.65. *Id.* These substantial hours and expenses reflect Co-Lead Counsel's commitment to the aggressive prosecution of this Action.

The following table provides a summary of the lodestar analysis:

|  | Hours | Lodestar |
|---|---|---|
| The Rosen Law Firm, P.A. | 840 | $505,941.00 |
| Pomerantz LLP | 1,282 | $955,396.50 |
| Ransom Gilbertson Martin & Ratliff, LLP | 81.25 | $31,837.50 |
| Total Lodestar |  | $1,493,175.00 |

65.     The fee requested by Co-Lead Counsel represents a multiplier of approximately 3.3. As set forth in the Fee Brief, in contingent litigation, lodestar multipliers between 1.0 and 4.0 have been routinely awarded by courts in the Ninth Circuit and in other federal jurisdictions.

66.     Co-Lead Counsel thus respectfully submit that with respect to a lodestar analysis, a lodestar multiplier of 3.3 evidences that Co-Lead Counsel's fee request is more than reasonable, particularly in light of the complexity of the case and its highly uncertain outcome.

**IX.     CO-LEAD COUNSEL'S REQUEST FOR REIMBURSEMENT OF**

14

**EXPENSES**

67. Co-Lead Counsel also requests reimbursement of $112,534.65 in expenses, which is less than the estimate of $475,000 in expenses contained in the Notice. The amount of out-of-pocket expenses, by category, incurred in this Action are set out in Exhibits B to the Smollar, Rosen, and Ratliff declarations. The expenses requested are reflected in the records of Co-Lead Counsel, prepared in the normal course of business and are an accurate record of the expenses incurred. The expenses noted are reasonable and were incurred for items necessary to the prosecution of the Action. The expenses were incurred largely in conjunction with mediation fees and expert fees. Additionally, because the expenses were incurred for the benefit of the Class and are of a type generally reimbursed in the marketplace, they should be reimbursed from the common fund prior to the payment of attorneys' fees, in the same manner as an individual client would reimburse counsel's expenses. *See* Fee Brief.

**X.    LEAD PLAINTIFFS' REQUESTS FOR REIMBURSMENT OF COSTS**

69. Lead Plaintiffs Kisuk Cho, Anthony Kim, Pantelis Lavidas and Joseph Buscema, have dedicated substantial time and expenses to prosecuting the Action. For example, Lead Plaintiffs reviewed the Complaint and other pleadings in this matter, gathered documents, responded to interrogatories, regularly communicated with Co-Lead Counsel to stay apprised of developments in the case, and participated in settlement discussions with Co-Lead Counsel.

70. Lead Plaintiffs submit herewith declarations documenting their reasonable reimbursement incurred in connection with the Action in the amount of $5,000 each. *See* Declarations of Kisuk Cho, Anthony Kim, Pantelis Lavidas and Joseph Buscema, filed herewith.

**XI.    CONCLUSION**

71. Co-Lead Counsel respectfully submit that, based on an understanding of the facts and circumstances concerning the subject matter of this Action, the principles of law applicable to them, the procedural posture of this Action, and the risks of continued litigation against the Settling Defendants, the Settlement is fair, reasonable and adequate, and represents an extremely favorable result for the Class and should be approved by this Court.

72.     Based on all of these factors, as well as Co-Lead Counsel's extensive experience in litigating securities class actions, Co-Lead Counsel believe that the Settlement, which provides a significant recovery to the Class, is far more beneficial than continuing to prosecute the Action towards an uncertain outcome.

73.     Lead Plaintiffs respectfully submit that the Settlement and Plan of Allocation are fair, reasonable and adequate in light of the criteria generally considered by courts in this Circuit. Therefore, Lead Plaintiffs and Co-Lead Counsel request that this Court approve the Settlement and Plan of Allocation and grant the application for attorneys' fees in the amount of 25% of the Settlement Fund and, in addition, grant reimbursement of reasonable expenses in the amount of $112,534.65, and reasonable reimbursements to each Lead Plaintiff for time spent in prosecuting this Action in the amount of $5,000.

## XII.    EXHIBITS

74.     Annexed hereto as Exhibit 1 is a true and correct copy of the Declaration of Justin R. Hughes, a representative of the Claims Administrator.

76.     Annexed hereto as Exhibit 2 is a true and correct copy of the Cornerstone Research Report entitled *Securities Class Action Settlements: 2015 Review and Analysis.*

77.     Annexed hereto as Exhibit 3 is a true and correct copy of the Declaration of Kisuk Cho in support of the Settlement and Co-Lead Counsel's Motion for Attorneys' Fees and Reimbursement of Expenses.

78.     Annexed hereto as Exhibit 4 is a true and correct copy of the Declaration of Anthony Kim in support of the Settlement and Co-Lead Counsel's Motion for Attorneys' Fees and Reimbursement of Expenses.

79.     Annexed hereto as Exhibit 5 is a true and correct copy of the Declaration of Pantelis Lavidas in support of the Settlement and Co-Lead Counsel's Motion for Attorneys' Fees and Reimbursement of Expenses.

80.     Annexed hereto as Exhibit 6 is a true and correct copy of the Declaration of Joseph Buscema in support of the Settlement and Co-Lead Counsel's Motion for Attorneys' Fees and

Reimbursement of Expenses.

81. Annexed hereto as Exhibit 7 is a Proposed Order and Partial Final Judgment.

82. Annexed hereto as Exhibit 8 is the Transcript of Proceedings for Derivative Class Hearing ("Derivative Tr."), 3:14-cv-382, April 21, 2016.

83. Annexed hereto as Exhibit 9 is the Declaration of Leigh Handelman Smollar in Support of Lead Plaintiffs' Unopposed Motion For An Award Of Attorneys' Fees And Reimbursement Of Expenses.

84. Annexed hereto as Exhibit 10 is the Declaration of Laurence M. Rosen in Support of Lead Plaintiffs' Unopposed Motion For An Award Of Attorneys' Fees And Reimbursement Of Expenses.

85. Annexed hereto as Exhibit 11 is the Declaration of Jeffrey Ratliff in Support of Lead Plaintiffs' Unopposed Motion For An Award Of Attorneys' Fees And Reimbursement Of Expenses.

Pursuant to Title 28, United States Code, Section 1746, we declare under penalty of perjury that the above statements are true and correct.

*/s/ Leigh Handelman Smollar*

Leigh Handelman Smollar

*/s/Laurence M. Rosen*

Laurence M. Rosen

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record who have consented to electronic notification. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all non-CM/ECF participants.

DATED**:**  May 26, 2016

/s/ Phillip Kim