IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re GALENA BIOPHARMA, INC. SECURITIES LITIGATION | Case No. 3:14-cv-00367-SI (LEAD) Associated cases: 3:14-cv-00389 3:14-cv-00410 3:14-cv-00435 3:14-cv-00558 |
| In re GALENA BIOPHARMA, INC. DERIVATIVE LITIGATION, | Case No. 3:14-cv-00382-SI (LEAD) Associated cases: 3:14-cv-00514-SI 3:14-cv-00516-SI 3:15-cv-01465-SI |

**OPINION AND ORDER AWARDING ATTORNEY'S FEES**

Jeffrey S. Ratliff, RANSON GILBERTSON MARTIN & RATLIFF, LLP, 1500 N.E. Irving Street, Suite 412, Portland, OR 97232; Leigh R. Handelman Smollar and Patrick V. Dahlstrom, POMERANTZ LLP, Ten South La Salle Street, Suite 3505, Chicago, IL 60603; Jeremy A. Lieberman, POMERANTZ LLP, 600 Third Avenue, 20th Floor, New York, NY 10016; Laurence M. Rosen and Phillip Kim, THE ROSEN LAW FIRM, P.A. 275 Madison Avenue, 34th Floor, New York, NY 10016. Of Attorneys for Securities Plaintiffs.

Christopher A. Slater and Michael J. Ross, SLATER ROSS, Sovereign Hotel, 4th Floor, 710 S.W. Madison Street, Portland, OR 97205; Robert B. Weiser, Brett D. Stecker, and James M. Ficaro, THE WEISER LAW FIRM, P.C., 22 Cassatt Avenue, First Floor, Berwyn, PA 19312; Kathleen A. Herkenhoff, THE WEISER LAW FIRM, P.C., 12707 High Bluff Drive, Suite 200, San Diego, CA 92130; Michael J. Hynes and Ligaya Hernandez, HYNES KELLER & HERNANDEZ, LLC, 1150 First Avenue, Suite 501, King of Prussia, PA 19406; Nadeem Faruqi, FARUQI & FARUQI, LLP, 685 Third Avenue, 26th Floor, New York, NY 10017; William B. Federman and Sara E. Collier, FEDERMAN & SHERWOOD, 10205 N. Pennsylvania Avenue, Oklahoma City, OK 73120. Of Attorneys for Derivative Plaintiffs Klein and Rathore.

PAGE 1 – OPINION AND ORDER AWARDING ATTORNEY'S FEES

Michael Hanrahan, Paul A. Fioravanti, Jr., and Kevin H. Davenport, PRICKETT, JONES & ELLIOTT, P.A., 1310 N. King Street, Wilmington, DE 19801; Eric L. Zagar, Robin Winchester, and Matthew A. Goldstein, KESSLER TOPAZ MELTZER & CHECK, LLP, 280 King of Prussia Road, Radnor, PA, 19087; Stuart Grant and Cynthia Calder, GRANT & EISENHOFER P.A.,123 Justison Street, Wilmington, DE 19801; James S. Notis and Kira German, GARDY & NOTIS, LLP, 126 East 56th Street, 8th Floor, New York, NY 10022; Lee Squitieri, SQUITIERIE & FEARON LLP, 32 East 57th Street, 12th Floor, New York, NY 10022. Of Attorneys for Derivative Plaintiffs Fuhs and Spradling.

Kristen Tranetzki, ANGELI UNGAR LAW GROUP LLC, 121 S.W. Morrison Street, Suite 400, Portland, OR 97204; Jonathan R. Tuttle and Scott N. Auby, DEBEVOISE & PLIMPTON LLP, 801 Pennsylvania Avenue, N.W., Suite 500, Washington D.C., 20004. Of Attorneys for Defendant Mark J. Ahn.

Robert L. Aldisert and Heidi Stoller, PERKINS COIE LLP, 1120 N.W. Couch Street, 10th Floor, Portland, OR 97209. Of Attorneys for Defendants Rudolph Nisi, Sanford Hillsberg, Steven Kriegsman, Stephen Galliker, Richard Chin, Mark Schwartz, Ryan Dunlap, and William Ashton.

Lois O. Rosenbaum and Stephen H. Galloway, STOEL RIVES LLP, 760 S.W. Ninth Avenue, Suite 3000, Portland, OR 97205; Paul R. Bessette, Michael J. Biles, James P. Sullivan, KING & SPALDING LLP, 401 Congress Avenue, Suite 3200, Austin, TX 78701. Of Attorneys for Defendant Galena Biopharma, Inc.

James T. McDermott and Ciaran P.A. Connelly, BALL JANIK LLP, 101 S.W. Main Street, Suite 1100, Portland, OR 97204; Jacob S. Frenkel, DICKINSON WRIGHT PLLC, International Square 1825 Eye Street, Suite 900, Washington, D.C. 20006
Russell D. Duncan, and Renee B. Kramer, SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A., 12505 Park Potomac Avenue, Sixth Floor, Potomac MD 20854. Of Attorneys for Securities Defendants Michael McCarthy and The DreamTeam Group, LLC.

Joseph C. Arellano and Daniel L. Keppler, KENNEDY WATTS ARELLANO LLP, 1211 S.W. Fifth Avenue, Suite 2850, Portland, OR 97204; Edward Gartenberg, GARTENBERG GELFAND HAYTON LLP, 15260 Ventura Blvd., Suite 1920, Sherman Oaks, CA 91403. Of Attorneys for Securities Defendants Lidingo Holdings, LLC and Kamilla Bjorlin.

**Michael H. Simon, District Judge.**

     This Opinion and Order determines the appropriate award of attorney's fees in

circumstances where a securities fraud class action (the "Securities Action") and related

consolidated shareholder derivative actions (collectively, the "Derivative Action")[1] have settled

---

[1] The Court refers to the Securities Action and the Derivative Action collectively as the "Actions."

in a parallel and related settlement process.[2] Plaintiffs in both cases, who are shareholders of

defendant Galena Biopharma, Inc. ("Galena" or "Company"), allege that Galena, certain

members of Galena's Board of Directors ("Board"), and the executive officers of Galena

engaged in a fraudulent scheme to promote Galena and increase its stock price so that many of

Galena's officers and directors could (and did) sell their personally-owned Galena stock at

artificially high prices, in a "pump and dump" insider trading scheme. Plaintiffs in the Securities

Action (the "Securities Plaintiffs") further allege that Non-Settling Defendants, The DreamTeam

Group LLC ("DreamTeam") and its Managing Member Michael McCarthy, and Lidingo

Holdings, LLC ("Lidingo") and its Managing Member Kamilla Bjorlin,[3] participated in the

scheme by publishing bullish articles, comments, blogs, posts, and email blasts, including having

authors publish this material using false aliases and without including the required disclosures

that the authors were being paid by Galena to try to inflate its stock price.

On April 21, 2016, the Court held a Fairness Hearing in the Derivative Action, which the

Court continued to June 23, 2016 so that the Court could hold a combined Fairness Hearing in

both the Derivative Action and the Securities Action. By separate Orders, filed concurrently with

this Opinion and Order, the Court approved the settlement agreements in both sets of cases. For

the reasons discussed below, the motions for attorney's fees, expenses, and incentive awards in

both sets of cases are granted in part. The Court awards $9 million ($9,000,000) in total

---

[2] To be precise, the Securities Action only has partially settled. The claims asserted in the Securities Action against Defendants The DreamTeam Group LLC, Michael McCarthy, Lidingo Holdings, LLC, and Kamilla Bjorlin (collectively, the "Non-Settling Defendants") have not settled. In this Opinion and Order, the Court refers to the Defendants who have settled, which are all of the other Defendants, as the "Settling Defendants." The Court refers to Plaintiffs and the Settling Defendants collectively as the "Settling Parties."

[3] Ms. Bjorlin was misidentified in the complaint in the Securities Action as "Milla Bjorn."

PAGE 3 – OPINION AND ORDER AWARDING ATTORNEY'S FEES

attorney's fees, to be divided equally between the Securities Action and the Derivative Action, for an award of attorney's fees in the amount of $4.5 million in each set of cases. Counsel in the Securities Action additionally is awarded $112,534.65 for expenses in that case and counsel in the Derivative Action additionally is awarded $153,081.02 for expenses in that matter.[4] In addition, the requested incentive awards are allowed.

## BACKGROUND

In March 2014, Plaintiffs Werbowsky, Rathore, and Klein (the "Oregon Plaintiffs") separately filed in this Court derivative actions on behalf of Galena. On April 11, 2014, the Court consolidated the three actions. On June 20, 2014, Plaintiffs Fuhs and Spradling (the "Delaware Plaintiffs") filed a derivative action in the Delaware Court of Chancery. In this Court, the Oregon Plaintiffs successfully responded to two motions to stay and two motions to dismiss (one of which was withdrawn before oral argument but after briefing had been completed). The Delaware Plaintiffs then voluntarily dismissed the Delaware action and filed a separate derivative action in this Court, which the Court consolidated with the cases filed by the Oregon Plaintiffs that previously had been consolidated.

In March and April, 2014, five putative class action securities fraud cases were filed in this Court.[5] On October 3, 2014, the Court consolidated the five actions, appointed Plaintiffs

---

[4] Counsel in the Derivative Action requested $5 million for attorney's fees and expenses, and did not request expenses as a separate component. Because the Court has determined the appropriate award of attorney's fees is $4.5 million, the Court further awards counsel's expenses separately. The incentive awards in the Derivative Action, however, shall be paid out of the attorney's fees award, as provided in the Derivative Stipulation. *See* ECF 108-1 at 1 ("The Incentive Awards shall be funded from the Fee Award, to the extent that this settlement is approved in whole or in part.") (Derivative Stipulation ¶ 5.6).

[5] Case Nos. 3:14-cv-367-SI, 3:14-cv-389-SI, 3:14-cv-410-SI, 3:14-cv-435-SI, and 3:14-cv-558-SI.

PAGE 4 – OPINION AND ORDER AWARDING ATTORNEY'S FEES

Kisuk Cho, Anthony Kim, Pantelis Lavidas, and Joseph Buscema as Lead Plaintiffs, and approved the selection of Lead Counsel.

On February 4, 2015, the Court granted in part and denied in part the motions to dismiss that had been filed in the Derivative Action. On May 8, 2015, Derivative Plaintiffs sent a joint settlement demand to Defendants. The Derivative Action did not settle at that time.

On March 2, 2015, the Securities Plaintiffs and Settling Defendants, along with Galena's Directors' and Officers' ("D&O") insurance carrier (collectively, "Securities Settling Parties"), engaged in a full-day mediation before the Honorable Layn R. Phillips, U.S. District Judge (Retired). The Settling Defendants had filed three separate motions to dismiss the Securities Action, which were still being briefed as of the date of the mediation. The mediation was unsuccessful, but the parties continued to discuss settlement during the next several months.

On August 5, 2015, the Court issued its Opinion and Order granting in part and denying in part the motions to dismiss filed in the Securities Action. On September 19, 2015, the Securities Settling Parties engaged in a second full-day mediation with Judge Phillips. The mediation lasted well into the night, and the Securities Settling Parties agreed in principle to settle Securities' Plaintiffs' claims for $20 million. The Securities Settling Parties continued negotiating the details of the settlement and executed a memorandum of understanding on December 3, 2015, memorializing their settlement agreement. The Securities Settling Parties subsequently negotiated and signed the Amended Stipulation of Settlement (Securities "Stipulation" or "Settlement"),[6] which documents the Securities Action settlement agreement.

Under the Securities Stipulation, a "Settlement Fund Escrow Account" is to be established and Galena's D&O insurers are required to pay $16.7 million into that escrow

---

[6] ECF 170 in the Securities Action docket.

account, along with $2.3 million paid directly from Galena. Additionally, Galena will transfer $1 million worth of stock to the Settlement Fund Escrow Account. Thus, the total settlement fund to be distributed to the securities class action claimants is $20 million.

Also participating on September 19th in a related but distinct mediation session with Judge Phillips were the parties from the Derivative Action. The mediation was unsuccessful, but the parties in the Derivative Action, along with Galena's D&O insurers, continued negotiating. They eventually reached a settlement and signed a term sheet on December 4, 2015. The parties in the Derivative Action signed their own stipulation of settlement (Derivative "Stipulation" or "Settlement").[7] Both the Securities Stipulation and the Derivative Stipulation expressly condition settlement on final approval of each other's settlements, although not on each other's respective requests for attorney's fees.

Under the Derivative Settlement: (1) Galena's D&O insurers will pay $15 million into "an escrow account for the Company"; (2) Galena will cancel a total of $1.2 million worth of stock options that Plaintiffs allege were improperly granted to certain Galena directors; (3) Galena will cancel all outstanding stock options awarded to Defendant Lidingo; and (4) Galena will adopt and implement certain corporate governance reforms designed to reduce the likelihood of future instances of the type of wrongdoing alleged in the Actions.

Judge Phillips also assisted the parties in the Derivative Settlement in negotiating an amount of attorney's fees and expenses. Judge Phillips submitted to the parties a "mediator's proposal" of attorney's fees and expenses in the total amount of $5 million, which was accepted by the Derivative parties and approved by Galena's Board of Directors. The amount of these fees was negotiated after the Derivative parties already had agreed upon the principal terms of the

---

[7] ECF 108-1 in the Derivative Action docket.

settlement. Further, Galena's D&O insurers agreed to pay these fees in addition to the $15 million settlement amount to be paid in the escrow account. The Derivative parties also agreed that Derivative Plaintiffs Klein and Rathore could request approval from the Court to be paid Incentive Awards in the amount of $5,000 each from the award of attorney's fees.

The $15 million "pass through" payment from the Derivative Settlement is the same $15 million that constitutes most of the $16.7 million payment from the D&O insurers in the Securities Settlement. The "escrow account for the Company" that the Derivative Stipulation requires is the same "Settlement Fund Escrow Account" described in the Securities Stipulation.

Derivative Plaintiffs argue that the $15 million cash settlement benefit from Galena's D&O insurers is a benefit obtained from the Derivative Settlement. Securities Plaintiffs disagree and argue that the $15 million cash from Galena's insurers is a benefit obtained from the Securities Settlement, as shown in a statement in the Securities Stipulation. As discussed below, the Court considers the $15 million to be part of a "global benefit" jointly achieved from both settlements.

The following chart reflects the total settlement benefits provided in the settlement stipulations from both the Derivative and Securities Actions:

| $15 million "pass through" payment from D&O insurers to fund securities settlement | Derivative Settlement | Securities Settlement |
|---|---|---|
| $1.7 million additional from D&O insurers to fund securities settlement | | Securities Settlement |
| $2.3 million additional from Galena to fund securities settlement | | Securities Settlement |
| $1 million in Galena stock to fund securities settlement | | Securities Settlement |
| $5 million additional from D&O insurers to pay attorney's fees in Derivative Action | Derivative Settlement | |
| Benefits from cancelling stock options of Galena directors and Lidingo | Derivative Settlement | |
| Benefits from corporate governance reform | Derivative Settlement | |

PAGE 7 – OPINION AND ORDER AWARDING ATTORNEY'S FEES

On February 4, 2016, the Court preliminarily approved the Derivative Settlement and the proposed procedures for notifying Galena stockholders of the Settlement. In accordance with the approved procedures, Galena notified its stockholders of the tentative settlement of the Derivative Action, the proposed fee and incentive awards, the right to object to the Settlement or the fee or incentive awards, the process and deadline for lodging objections, that a Fairness Hearing on the proposed Settlement was scheduled for April 21, 2016, and the process and deadline for requesting participation in the Fairness Hearing. Derivative Plaintiffs filed their motion seeking final approval of the Derivative Settlement and attorney's fees and incentive awards before the deadline for objections, thereby ensuring that shareholders could make an informed decision about whether to object.

On February 16, 2016, the Court granted preliminary approval of the Securities Settlement, conditionally certified the proposed Settlement Class, approved the settlement administration plan, and approved a plan for giving notice to Class Members. The Court also set deadlines for objecting to the Settlement or proposed attorney's fees and incentive awards. Under the procedures approved by the Court, settlement class members were sufficiently apprised of the tentative settlement of the Securities Action, the proposed attorney's fees and incentive awards, their right to object to the Settlement or attorney's fees or incentive awards, the process and deadline for lodging objections, that a Fairness Hearing on the proposed Settlement was scheduled for June 23, 2016, and the process and deadline for requesting participation in the Fairness Hearing. Securities Plaintiffs also filed their motion seeking final approval of the Securities Settlement and attorney's fees and incentive awards before the deadline for objections, thereby ensuring that settlement class members could make an informed decision about whether to object.

PAGE 8 – OPINION AND ORDER AWARDING ATTORNEY'S FEES

There were no objections filed to the Derivative Settlement or requests to participate in the Derivative Action's fairness hearing. The Court held a Fairness Hearing in the Derivative Action on April 21, 2016, and continued that hearing to June 23, 2016, so that a combined Fairness Hearing in both the Derivative Action and the Securities Action could be held. This would allow the Court to consider the issue of reasonable attorney's fees in both cases at the same time.

Only one objection was filed against the Securities Settlement. This objection was filed by the non-settling DreamTeam Defendants. They object that the release contained in the Securities Action's proposed Order and Partial Judgment is impermissibly broad and that Galena appears to construe it as precluding DreamTeam Defendants from later seeking from Galena the attorney's fees or defense costs incurred by DreamTeam Defendants in the Securities Action. No members of the settlement class filed any objections to the Securities Settlement or any requests to participate in the Securities Action Fairness Hearing.

On June 23, 2016, the Court held the combined Fairness Hearing in both the Derivative Action and the Securities Action. Other than DreamTeam Defendants, no other objectors appeared. The Court found that the proposed settlements in both sets of cases were fair, reasonable, and adequate. Accordingly, all that remains to be determined is the reasonableness of the requested attorney's fees, expenses, and incentive awards.

## DISCUSSION

### A. Attorney's Fees

#### 1. Legal Standards

Attorney's fees may be awarded in a derivative action only where the settlement confers a "substantial benefit" on the corporation. *See Lewis v. Anderson*, 692 F.2d 1267, 1270 (9th Cir. 1982); *In re Rambus, Ind. Derivative Litig.*, 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009);

PAGE 9 – OPINION AND ORDER AWARDING ATTORNEY'S FEES

*San Antonio Fire & Police Pension Fund v. Bradbury*, 2010 WL 4273171, at *8 (Del. Ch. Oct. 28, 2010). Both monetary and specific, immediately discernible non-monetary benefits, such as corporate governance reforms, may be considered in evaluating the benefit provided to the corporation. *See Feuer v. Thompson*, 2013 WL 2950667, at *2 (N.D. Cal. June 14, 2013); *Wixon v. Wyndham Resort Dev. Corp.*, 2010 WL 3630124, at *3 (N.D. Cal. Sep.14, 2010); *In re Rambus*, 2009 WL 166689, at *3. Where a derivative case creates a common fund, courts follow the same standard in considering fees as in the analogous class action context. *See In re HQ Sustainable Mar. Indus., Inc. Derivative Litig.*, 2013 WL 5421626, at *3 (W.D. Wash. Sept. 26, 2013); *In re MRV Commc'ns, Inc. Derivative Litig.*, 2013 WL 2897874, at *6 (C.D. Cal. June 6, 2013). The Court finds that the prosecution of the Derivative Action conferred substantial benefit on Galena and that an award of attorney's fees is warranted. Because the settlement includes significant cash benefits, in determining reasonable fees the Court follows the guidance from the analogous class action common fund context.

In a class action, requests for attorney's fees must be made by a motion pursuant to Federal Rules of Civil Procedure 54(d)(2) and 23(h). To calculate appropriate fees in a class action where a common fund is created, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Under either method, the court must exercise its discretion to achieve a "reasonable" result. *Id*. Because reasonableness is the goal, "mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002) (quotation marks and citation omitted).

PAGE 10 – OPINION AND ORDER AWARDING ATTORNEY'S FEES

"Under the lodestar method, the court multiplies a reasonable number of hours by a reasonable hourly rate. Because there is a strong presumption that the lodestar amount represents a reasonable fee, adjustments to the lodestar are the exception rather than the rule." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016) (quotation marks and citations omitted). "Once the lodestar has been calculated, the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 740 (quotation marks and citations omitted). Because there were significant cash benefits obtained in the settlements, the Court will use the percentage-of-recovery method and not the lodestar method as its principal guide.

"Under the percentage-of-the-fund method, the district court may award plaintiffs' attorneys a percentage of the common fund, so long as that percentage represents a reasonable fee. The Ninth Circuit has set 25% of the fund as a 'benchmark' award under the percentage-of-the-fund method." *Id.* at 738 (quotation marks and citations omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). This amount may be adjusted, however, when "special circumstances" warrant a departure. *In re Bluetooth*, 654 F.3d at 942. Courts must place in the record the relevant special circumstances. *Id.* Factors that may be considered in making such a departure include: (1) the result obtained; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks involved in the litigation; (7) the reaction of the class; (8) non-monetary or incidental benefits, including helping similarly situated persons nationwide by clarifying certain laws; and (9) comparison with counsel's lodestar. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–

50 (9th Cir. 2002); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *18 (C.D. Cal. June 10, 2005).

Additionally, class action settlements involve "unique due process concerns for absent class members who are bound by the court's judgments." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013) (citation and quotation marks omitted). Where the settlement agreement is negotiated before formal class certification, as in this case, the district court should engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) . . . ." *Id.* (citation and quotation marks omitted). Evidence of collusion may not be evident on the face of a settlement and a court should consider whether there is evidence of more subtle signs of collusion. *Staton v. Boeing Co.*, 327 F.3d 938, 958 n.12, 960 (9th Cir. 2003). Such evidence may include:

> (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded," *Hanlon*, 150 F.3d at 1021; *see Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006); *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000);

> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class," *Lobatz [v. U.S.W. Cellular of Cal., Inc.*], 222 F.3d [781,] 1148 [9th Cir. 2000]; *see Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991) ("[L]awyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees."); and

> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund, *see Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) (Posner, J.).

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

PAGE 12 – OPINION AND ORDER AWARDING ATTORNEY'S FEES

Class members must also receive timely and appropriate notice of a motion for attorney's fees. *See* Fed. R. Civ. P. 23(h). When settlement is proposed along with a motion for certification, notice to class members of the fee motion ordinarily accompanies the notice of the settlement proposal itself. Advisory Committee Notes to Fed. R. Civ. P. 23(h).The deadline for class members and shareholders to object to requested fees must be set after the motion for the fees and documents supporting the motion have been filed. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010). "Allowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members." *Id.* at 994. Here, Class Members and Galena shareholders were provided notice of the proposed fee awards in the settlement notices, and the filing of both motions for attorney's fees complied with *In re Mercury*. Thus, Class Members and Galena shareholders had the opportunity to review the respective fee motions and supporting documents before the deadlines to object.

### 2. The Court's Decision to Consider the Fees Together

In their original motion for attorney's fees, Derivative Plaintiffs argue that the cash benefit conferred by the Settlement was $21.3 million and, therefore, the requested fee award of $5 million fell below the Ninth Circuit's "benchmark" award of 25 percent. Plaintiffs calculated the $21.3 million benefit by adding the $15 million "pass through" payment from the D&O insurers, $1.3 million from savings achieved through Defendant Ahn's forfeiture of salary and bonus, and the additional $5 million for attorney's fees that the D&O insurers agreed to pay. The plaintiffs in the Securities Action filed an amicus brief in the Derivative Action, disputing that the $15 million was a benefit attributable to the Derivative Settlement and arguing instead that it was a benefit derived from the Securities Settlement.

PAGE 13 – OPINION AND ORDER AWARDING ATTORNEY'S FEES

With both sets of plaintiffs seeking "credit" for the $15 million benefit and arguing that they are each entitled to have that sum counted as part of the "common fund" for purposes of their respective awards of attorney's fees, the Court was concerned about the risk of "double counting." Accordingly, at the Fairness Hearing in the Derivative Action on April 21, 2016, the Court stated that, under the circumstances of these cases, the Court was inclined to consider the total benefit package from both the securities and the derivative settlements globally and to evaluate attorney's fees from that perspective. The Court continued the Fairness Hearing in the Derivative Action until June 23, 2016, so that there would be a single, joint hearing to consider both the fairness of the Securities Settlement and an appropriate award of attorney's fees in both sets of cases. The Court also allowed supplemental briefing on the issue of attorney's fees.

### 3.  Considering the Settlement Benefits and Attorney's Fees Globally

In their supplemental brief, Derivative Plaintiffs object to the Court globally considering the benefits to Galena and the settlement class members in the Securities Action for purposes of calculating attorney's fees. Derivative Plaintiffs contend that attorney's fees in the derivative settlement should be considered independently. They further argue that a court's role in considering attorney's fees in a derivative action is substantially different from a court's role in considering attorney's fees in a securities class action.

Derivative Plaintiffs correctly state that in the context of a class action, a court should be mindful to protect the interests of absent class members and that, generally speaking, whatever amount is not awarded in attorney's fees reverts to the class. Derivative Plaintiffs argue that because derivative settlements do not involve absent class members, but are brought on behalf of a company, which generally participates in the settlement negotiations and resolution, such concerns are not present and thus the Court should consider independently the two applications

for fee awards. Specific to this case, Derivative Plaintiffs also assert that the $5 million fee award was negotiated separately, approved by Galena's Board of Directors, and if not fully awarded to counsel will not revert to the benefit of Galena's shareholders, but instead will result in a smaller payment being required from Galena's insurers. The fact that the $5 million requested fee award was separately negotiated and approved by Galena's Board, however, does not affect the Court's obligation to ensure the reasonableness of the fee. *See Barovic v. Ballmer*, 2016 WL 199674, at *3 (W.D. Wash. Jan. 13, 2016), *appeal dismissed* (May 6, 2016) (noting the Court's independent obligation to ensure the reasonableness of a fee award in a derivative case and concluding that the requested fee was unreasonably high even though it was separately negotiated and approved by the company's board of directors). Further, the Ninth Circuit has noted that where attorney's fees are separately negotiated, courts should consider whether it is a "subtle sign[] that class counsel ha[s] allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth*, 654 F.3d at 947; *see also Lobatz*, 222 F.3d at 1148.

Although Derivative Plaintiffs accurately describe the circumstances of securities and derivative settlements and their related fee awards, Derivative Plaintiffs offer no case law or other legal authority supporting their conclusion that because a derivative case does not involve absent class members, a court should not globally evaluate the settlement benefits and fee awards for related securities and derivative settlements. Indeed, courts have considered on a global basis the benefits of separately-pursued securities class action and related derivative lawsuits in evaluating the reasonableness of requested attorney's fees. *See In re HQ Sustainable Mar.*, 2013 WL 5421626, at *3 ("The settlement process that resolved the Federal Derivative Action also resolved three other related actions. If the Court were to use the percentage recovery method usually employed to evaluate fee awards in a common fund situation, the Court would compare

the total fees paid to counsel in all four litigations with the total benefits obtained by the class and HQSM as a result of the settlement of all four actions."); *see also In re Pub. Serv. Co of New Mexico*, 1992 WL 278452 (S.D. Cal. July 28, 1992).

Securities Plaintiffs acknowledge that they could not find any authority precluding the Court from considering the settlement benefits and allocating attorney's fees in both sets of cases as a percentage of the total benefit conferred. Instead, Securities Plaintiffs argue that the Court may award a total of $10 million in attorney's fees, as requested, and they provide examples of courts cumulatively awarding to both securities and derivative counsel more than the benchmark of 25 percent.

The Court sees no evidence that the sole credit for the $15 million settlement payment belongs only to one set of Plaintiffs' counsel. Also, no party has requested the Court to hold a mini-trial inquiring into the details of the settlement negotiations in both cases to decide the best way to allocate the credit for the $15 million payment. Further, the Court would be reluctant to do so, even if asked. Relatedly, the Court declines to double count the $15 million payment as two separate contributions of $15 million into a common fund, when there will only be one payment of $15 million received. Accordingly, under the circumstances presented here, the Court will globally consider the benefits from both the securities and derivative settlements and will consider the total benefits to be the "common fund." After that, the Court will calculate an appropriate award of attorney's fees to be divided between Plaintiffs' counsel in the Derivative Action and Plaintiffs' counsel in the Securities Action.

### 4.  Calculating the Total Benefit

Because the Court is considering the total benefits from the derivative and securities settlements globally, the Court considers both the monetary and non-monetary benefits to Galena

and the settlement class members in the Securities Action. The monetary benefits total $25 million ($15 million in "pass through" payments from the D&O insurers to the escrow fund, plus $1.7 million additional funding from the D&O insurers to the escrow fund, plus $2.3 million in cash from Galena to the escrow fund, plus $1 million worth of stock from Galena to the escrow fund, plus up to $5 million in additional payments from the D&O insurers for attorney's fees in the Derivative Action). For purposes of calculating the global recovery, a percentage of which shall be awarded as reasonable attorney's fees, the Court also will monetize, to the extent reasonably possible, the non-monetary benefits achieved through the derivative settlement, namely the cancellation of stock options and the adoption of corporate governance reforms. In performing this analysis, the Court seeks to apply methodologies accepted in other cases to make a general estimate of value.

### a. Cancelled and reduced stock options

Derivative Plaintiffs offer expert testimony from M. Travis Keath. Mr. Keath provides the following opinions regarding the estimated monetized values for the cancelled and reduced stock options: (1) the cancelled options to purchase 1.2 million shares that were granted to Galena Directors on November 26, 2013, with an exercise (or "strike") price of $3.88 per share have an estimated value of $1,050,000 if valued on December 3, 2015 based on Galena's closing stock price on that day, and $1,522,000 if valued on June 7, 2016 based on Galena's closing stock price of that day; (2) the cancelled options originally provided to Mark Ahn, including the option to purchase 100,000 shares with an exercise price of $1.38 per share, the option to purchase 150,000 shares with an exercise price of $0.72 per share, the option to purchase 406,250 shares with an exercise price of $1.71 per share, and the option to purchase 525,000 shares with an exercise price of $3.88 per share, totaling options to purchase 1,181,250 shares,

PAGE 17 – OPINION AND ORDER AWARDING ATTORNEY'S FEES

have an estimated value of $1,796,000 on August 21, 2014; (3) the cancelled options originally provided to Lidingo to purchase 83,333.3 shares with an exercise price of $1.83 per share have an estimated value of $109,000 on April 30, 2014[8]; and (4) the reduction in annual non-employee director stock option awards going forward, which will be reduced from 200,000 to 100,000 per director, have an estimated value of $5,619,000 as of June 7, 2016, calculated for years 2015-2021.

As a preliminary matter, the Court does not find Mr. Ahn's forfeiture of severance pay and stock options, effective upon Mr. Ahn's resignation on August 21, 2014, to be a benefit that is derived from the *settlement* of the Derivative Action.[9] Mr. Ahn resigned and forfeited his stock options and severance pay more than nine months before Derivative Plaintiffs first sent any settlement demands to Defendants, more than one year before the mediation was held with the Derivative parties, and 15 months before the derivative settlement agreement was concluded. Indeed, Mr. Ahn's resignation specifically was relied upon by Derivative Plaintiffs in their second and third consolidated *complaints* as evidence of Mr. Ahn's wrongdoing. *See* Derivative Action ECF 77 at 7, 9; ECF 94 at 62-63. It is unclear from the record whether Mr. Ahn resigned

---

[8] Mr. Keath states that Lidingo's stock options "were cancelled as a result of the Action on April 30, 2014." Derivative Action ECF 135-1 at 9. Mr. Keath does not, however, cite to any record evidence that supports a cancellation date of April 30, 2014. The Derivative Settlement is the purported mechanism by which those options are to be cancelled, and it was agreed-upon on December 4, 2015. The clause of the Derivative Stipulation that Mr. Keath cites as supporting the April 30, 2014 date does not indicate that Lidingo's options were cancelled on April 30, 2014, but merely states that "Galena shall cancel" the options that were granted to Lidingo in August 2013. This supports a cancellation date for valuation purposes the same as the other options that are to be cancelled as a result of the Derivative Stipulation. Further, if these stock options were cancelled on April 14, 2014, then this benefit would not have been obtained through settlement negotiations, which did not even begin until 2015.

[9] Securities Plaintiffs' do not contend, and the evidence also does not support, that the forfeitures by Mr. Ahn were a benefit obtained from the Securities Settlement.

PAGE 18 – OPINION AND ORDER AWARDING ATTORNEY'S FEES

as a result of the early bad publicity that exposed Galena's alleged misconduct, Galena's special committee investigation, the SEC investigation, the filing of one or more lawsuits, or some combination of these events. One matter is clear, however: there is no evidence that Mr. Ahn's forfeiture of salary and stock options upon his resignation were benefits achieved through and as a result of the settlement negotiations or as even partial consideration for the settlement of the Derivative Action.

Indeed, the provisions of the Derivative Stipulation support the conclusion that there is no causal link with the Derivative Settlement and Mr. Ahn's forfeiture of stock options or payments. Section 2.4(b) states that Mr. Ahn "forfeited" his contractual severance payments and "also forfeited" his stock options, calculating the intrinsic value of his forfeited stock options as of August 21, 2014, his resignation date. The use of his resignation date as the valuation date and the past tense notation of Mr. Ahn's forfeitures support a finding that these forfeitures occurred on August 21, 2014, and are contrasted by the other sections describing the settlement benefits and consideration based on actions that will occur upon approval of the Derivative Settlement. *See* Derivative Stipulation at §§ 2.1 (the cash amount is "to be paid"); 2.2 (the Galena Directors "shall" forfeit their stock options); 2.3 (Galena "shall" adopt corporate reforms); 2.4(a) (Galena "shall" cancel the Lidingo stock options).

Accordingly, in calculating the benefits achieved by the Derivative Settlement, the Court does not include the value of Mr. Ahn's cancelled stock options or the $1.3 million in salary and bonus saved by Galena. *See In re Zoran Corp. Derivative Litig.*, 2008 WL 941897, at *8 (N.D. Cal. Apr. 7, 2008) (finding that the "old concession" of repricing stock options could not "be resurrected as new consideration for post-concession claims" and "is not and should not be consideration for a release of the claims" in the settlement agreement where: (1) option repricing

occurred before the consolidated complaint was filed; (2) option repricing occurred as a result of many factors, including negative publicity, special committee investigations, shareholder scrutiny, SEC investigations, and the lawsuits; and (3) the complaint specifically called out the repriced options as evidence of guilt). The only distinguishing feature here is that Mr. Ahn's resignation occurred after the Securities and Derivative lawsuits were filed. That single fact, however, is insufficient for the Court to include the cancellation of Mr. Ahn's employment benefits in the calculation of the value attributable to the Derivative Settlement.

With regard to the remaining cancelled stock options, Mr. Keath valued them using the Black Scholes method of valuation, which uses a mathematical formula to take into account the volatility of investment returns for the underlying stock, the expected life of the option, dividend history, and the risk-free rate of return. Mr. Keath opined that the Black Scholes method was a better method for determining the fair value of stock options, as compared to the "intrinsic value" method of monetizing the worth of stock options.

The intrinsic value method takes the prevailing stock price on the valuation date less the exercise (or "strike") price of the option, multiplied by the number of options being valued. *See SEC v. Reyes*, 491 F. Supp. 2d 906, 907 (N.D. Cal. 2007) ("At any given point in time, finding the 'intrinsic value' of a stock option involves a straightforward calculation: an option is worth the amount by which the market price exceeds the strike price."); *see also* Derivative Action ECF 135-1 at 8. If, however, the prevailing stock price is below the exercise price (as is true for many of the cancelled options in this case), then the intrinsic value of an option is zero.

The Court finds that under the circumstances of this case, the Black Scholes method, and therefore the opinions of Derivative Plaintiffs' expert, grossly inflates the value of the cancelled stock options. Galena's stock is trading below the exercise (or strike) prices of most of the

options. Further, with the exception of the time period during the alleged artificial inflation of Galena's stock due to the alleged fraudulent manipulation, throughout the past five years Galena stock has generally traded between $1.50 and $2.25. The Court is highly skeptical that any arms-length buyer today would pay $1,522,000 for the option to buy 1.2 million shares of Galena at $3.88 per share (as those cancelled stock options are valued under Mr. Keath's analysis). Accordingly, the Court declines to use the Black Scholes methodology in valuing the cancelled stock options and disregards the testimony of Derivative Plaintiffs' expert. Instead, the Court uses the "intrinsic value" method to monetize the cancelled stock options. *Cf. In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 591 F. Supp. 2d 1023, 1035 (D. Minn. 2008) (noting both Black Scholes and intrinsic values when stock price was higher but because of the precipitous decline in the stock price as a result of the litigation, using only the intrinsic value in identifying the final settlement value, when the stock price was low); *In re Zoran Corp.*, 2008 WL 941897, at *9 (noting in comparing Black Scholes valuation and intrinsic valuation that "prudence and caution would favor using the lower of the two figures" and ultimately concluding the options had a zero value).

The value of the cancelled options will continue to fluctuate as Galena's price fluctuates. For purposes of the Court's general analysis considering the benefits achieved from the Derivative Settlement, the Court will use Galena's stock price as of the date of the Fairness Hearing, June 23, 2016, $2.15 per share, to calculate the intrinsic value of the stock.[10] With a

---

[10] The Court recognizes that in some circumstances the date of the settlement agreement may be appropriate for valuation purposes. Here, there was a memorandum of understanding executed on December 3, 2015, the original stipulation of settlement, dated January 20, 2016, and the amended stipulation of settlement, dated February 1, 2016, providing multiple possible dates if the date of settlement were to be used. More importantly, however, the Court is valuing actions that are to be taken upon approval of the Derivative Settlement, and thus the Court uses the date of the Fairness Hearing for valuation.

market price of $2.15 per share, the 1.2 million options shares granted to the Directors on November 26, 2013 with an exercise price of $3.88 have an intrinsic value of zero, because the strike price is well above Galena's market price on June 21, 2016. The cancelled options that were originally granted to Lidingo have an intrinsic value of $26,667, calculated by taking the market price of $2.15 per share, subtracting the option strike price of $1.83 per share, and multiplying the difference by the 83,333.3 options shares that were cancelled.

It is somewhat more challenging to monetize the value of the reduced amount of stock options to be granted each year to Galena's seven non-employee directors. Derivative Plaintiffs' expert again uses the Black Scholes method and calculates the value as $5,619,000 for the years 2015 to 2021. The Court again disregards this valuation as overinflating the value of the stock options. For 2015, the stock option strike price of this option grant was $1.77 per share. Calculating the intrinsic value of those 700,000 options using the market price on June 21, 2016 of $2.15 per share results in a value of $266,000. Because Derivative Plaintiffs have provided no method of valuation that does not overinflate the value of the stock options, the Court takes this $266,000 value for the year 2015 and extends it for each year through 2021, without applying any discount for present value.[11] Thus, for purposes of generally valuing the reduction in stock options, the Court monetizes this reform with a value of $1,862,000 (seven years multiplied by $266,000).

### b. Corporate governance reforms

Although Derivative Plaintiffs fail to offer any expert opinion declaration or testimony supporting their valuation of the specific corporate governance reforms achieved in the

---

[11] The Court assumes that discounting the value of future option savings to present value roughly approximates the likely increase in stock price based on inflationary factors alone.

Derivative Settlement, Derivative Plaintiffs assert that the value of the reforms is somewhere between $5,893,500 and $67,161,000. In addition to the fact that this range spans more than an order of magnitude, these figures appear to be significantly and unreasonably inflated. In *In re Emerson Radio Shareholder Derivative Litig.*, 2011 WL 1135006 (Del. Ch. Mar. 28, 2011), Vice Chancellor J. Travis Laster of the Delaware Court of Chancery wisely cautioned:

> There is danger in allowing plaintiffs to claim significant incremental credit for therapeutic benefits when (i) the defendants have paid a fixed amount of tangible consideration and (ii) awarding fees for the therapeutic benefits will increase the plaintiffs' attorneys' share of that consideration. Ideally, plaintiffs' lawyers should be seeking to enlarge the total settlement pie by extracting more tangible consideration from the defendants, not finding ways to argue for a bigger share of the existing pie.

*Id.* at *5.

The Court recognizes that the corporate governance reforms agreed to by Galena as part of the Settlement provide some amount of non-trivial benefit to Galena's shareholders. The Court rejects, however, counsel's estimated range of the value of those benefits, especially given the lack of any expert opinion supporting any such valuation with sound and accepted methodology. Accordingly, the Court will consider the non-trivial amount of $1 million as the most that the Court will value these benefits in the absence of a well-supported expert opinion.

### c. Total estimated monetized benefit

The Court considers the total value of the benefit to Galena and the securities Class Members to be $27,888,667, as set out in the chart below:

| | |
|---|---|
| "Pass through" cash from D&O to securities escrow account | $15,000,000 |
| Other cash from D&O to securities escrow account | 1,700,000 |
| Cash from Galena to securities escrow account | 2,300,000 |
| Stock from Galena to securities escrow account | 1,000,000 |
| Cash from D&O for derivative attorney's fees | 5,000,000 |
| Benefit from cancelling Lidingo stock options | 26,667 |
| Benefit from reducing ongoing stock option awards | 1,862,000 |

PAGE 23 – OPINION AND ORDER AWARDING ATTORNEY'S FEES

| Corporate governance reforms | 1,000,000 |
|---|---|
| **TOTAL:** | **$27,888,667** |

### 5. Calculating the Appropriate Attorney's Fees Percentage

The Court finds that an increase from the "benchmark" 25 percent fee award is warranted in considering reasonable attorney's fees for both the Securities and Derivative Action. The Court notes that a recent case from the U.S. District Court for the Western District of Washington considered fees in a similar context, calculating the total percentage for both derivative and securities class action fees from a single global benefit. *In re HQ Sustainable Mar.*, 2013 WL 5421626, at *3. The Court approved an increase to 32 percent from the 25 percent benchmark fee, noting that "the complexity of this international commercial dispute, the expense of prosecuting four separate actions in four separate venues, and the difficulties of reaching a universal settlement with so many participants all support a higher percentage award than would normally be allowed." *Id.* Similar considerations apply here, and the Court finds that an increase to approximately 32 percent is warranted. The expenses and complexities of multiple actions being litigated simultaneously, the suggestion by the mediator of a higher fee, the difficulties in reaching a universal settlement with so many participants, the results obtained, and the lack of objections to the settlements and proposed (higher) fee awards in both the securities and derivative actions all support a higher percentage award. Accordingly, the Court will award $9 million in total attorney's fees (rounding up from 32 percent of the total benefit of $27,888,667, which is $8,924,373.44). Further, the total of $9 million in approved attorney's fees shall be divided equally between Lead Plaintiffs' counsel in the Derivative Action and Class Counsel in the Securities Action.

In addition, the reasonableness of this fee is confirmed by a cross-check against each counsel's lodestar. *See Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). For Plaintiffs' counsel in the Derivative Action, the reported lodestar amount is $3,334,092.75. Because a modest upward adjustment to Derivative counsel's lodestar would not be inappropriate in light of the global benefits obtained, $4.5 million is a reasonable fee for Lead Plaintiffs' counsel in the Derivative Action.

For Class Counsel in the Securities Action, the reported lodestar is $1,493,175. In class action settlements such as this, applying multipliers to increase the lodestar when performing the cross-check is not inappropriate. *See* Securities Action ECF 176 at 25 (listing cases). Again, in light of the global benefits obtained, a $4.5 million fee is a reasonable fee for Class Counsel in the Securities Action. The lodestar analysis here is simply a cross-check for the fee award, and the Court would not want to discourage what may be particularly efficient conduct by Class Counsel, or to encourage the opposite behavior.

## B. Expenses

Class Counsel in the Securities Action seeks reimbursement from the common fund in the amount of $112,534.65 for expenses, including legal research, investigation, discovery, expert fees and expenses, travel, and mediation fees. The Court finds that the requested expenses have been reasonably and necessarily incurred and are recoverable from the proceeds of the common fund. *See, e.g.*, *Wininger v. SI Mgmt., L.P.*, 301 F.3d 1115, 1120-21 (9th Cir. 2002) (noting that "jurisdiction over a fund allows for the district court to spread the costs of the litigation among the recipients of the common benefit"); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("Reasonable costs and expenses incurred by an

attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement.").

Plaintiffs' counsel in the Derivative Action did not originally seek expenses separate from the $5 million in requested attorney's fees because $5 million was the total negotiated amount that the D&O insurers agreed to pay for fees and expenses. Because the Court has found that $4.5 million is the appropriate and reasonable attorney's fee award, the Court additionally orders expenses to be reimbursed from the agreed-upon $5 million payment. The Court finds that these expenses were reasonably and necessarily incurred. Accordingly, Derivative counsel is awarded $153,081.02 for expenses.

## C. Incentive Awards

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe*, 715 F.3d at 1163. They are often taken from a common settlement fund. *Id.* Although incentive awards are "fairly typical in class action cases," *Rodriguez v. W. Publ'n Corp.*, 563 F.3d 948, 958 (9th Cir. 2009), they should be scrutinized carefully to ensure "that they do not undermine the adequacy of the class representatives." *Radcliffe*, 715 F.3d at 1163. A court should analyze incentive awards individually and, as relevant to this case, should consider factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Staton*, 327 F.3d at 977 (citation and quotation marks omitted).  The adequacy of class representatives can also be undermined by incentive awards that are contingent on the named representatives approving the class settlement. *Radcliffe*, 715 F.3d at 1164-65.

Here, the requested incentive award in the Securities Action is $5,000 for each of the four named representatives, for a total incentive award of $20,000. The requested incentive award in the Derivative Action is $5,000 for two lead plaintiffs, for a total incentive award of $10,000. Given the size of the Settlement Class, the $20 million Settlement Fund, and the global benefits achieved in the settlements, the incentive awards requested are not unreasonably high. These plaintiffs spent time and effort meeting and speaking with counsel throughout the litigation, reviewing pleadings and documents, participating in settlement discussion, and searching for and producing documents. The Court finds that the incentive awards as requested are reasonable and do not undermine the adequacy of the named representatives.

## CONCLUSION

In the Derivative Action, the motion for attorney's fees and incentive awards (Derivative Action ECF 117) is GRANTED IN PART. Plaintiffs' counsel in the Derivative Action is awarded $4.5 million in attorney's fees plus $153,081.02 for expenses. Derivative Plaintiffs Klein and Rathore are each awarded $5,000 as an incentive award, to be paid out of the award of attorney's fees, per the parties' stipulation. In the Securities Action, the motion for attorney's fees, expenses, and incentive awards (Securities Action ECF 176) is GRANTED IN PART. Class Counsel in the Securities Action is awarded $4.5 million in attorney's fees plus $112,534.65 for expenses. The four named representatives are each awarded $5,000 as an incentive award, to be paid out of the Settlement Fund, per the parties' stipulation.

**IT IS SO ORDERED.**

DATED this 24th day of June, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

PAGE 27 – OPINION AND ORDER AWARDING ATTORNEY'S FEES