# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| IN RE GALENA BIOPHARMA, INC. SECURITIES LITIGATION, | CASE No.:3:14-cv-00367-SI |

**NOTICE OF MOTION AND MOTION FOR AN ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, pursuant to an Order of the Court issued on February 16, 2016 ("Preliminary Approval Order"), on November 17, 2017  at 3:30 p.m., or as soon thereafter as counsel may be heard, at the United States Court, District of Oregon, Portland Division, 1000 Southwest Third Avenue, Portland, Oregon 97204, before the Honorable Michael H. Simon, Class Representatives Kisuk Cho, Anthony Kim, Pantelis Lavidas, and Joseph Buscema ("Class Representatives") will move for an order approving the partial settlement of this Action and partially dismissing it with prejudice.

This motion is supported by this Notice of Motion; the Declaration of Jonathan Horne in Support of Class Representatives' Motion and supporting exhibits ("Horne Decl."), filed herewith; the Declaration Of Justin R. Hughes Regarding (A) Mailing Of The Notice And Proof Of Claim; and (B) Report On Requests For Exclusion Received To Date ("Hughes Decl."), filed herewith; the Motion and Memorandum of Law in Support of Attorneys' Fees and Reimbursement of Expenses and exhibits in support thereof, filed with the Court herewith; the accompanying Memorandum of Points and Authorities in Support thereof; the Stipulation and the exhibits filed therewith; and all other pleadings and papers filed in this action.

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND ................................................................................................ 2

    A. Procedural History ................................................................................. 3

    B. Preliminary Approval and Notice ......................................................... 6

III. APPLICABLE STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENTS ................................................................................................ 6

IV. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT
AND CERTIFY THE SETTLEMENT CLASS ................................................. 8

    A. The Settlement Is Fair, Reasonable And Adequate ............................... 8

        1. The Overall Strength of Plaintiffs' Case, Including the Risk,
Expense, Complexity, and Likely Duration of Further Litigation,
Supports Final Approval of the Settlement .................................... 9

        2. The Risks of Continued Litigation Weigh Heavily in Favor of
Settlement ...................................................................................... 10

        3. The Settlement Recovers a Substantial Proportion of the Promoter
Defendants' Net Worth .................................................................. 12

        4. The Amount of Discovery Completed and the Stage of the
Proceedings Support Approval of the Settlement ......................... 13

        5. Experienced Counsel Concur that the Settlement, Which Was
Negotiated in Good Faith and at Arm's-Length, Is Fair,
Reasonable, and Adequate ............................................................. 14

        6. The Absence of a Governmental Participant ................................. 16

        7. The Reaction of the Class Members Supports Approval of the
Settlement ...................................................................................... 16

    B. The Notice Program Satisfied Due Process And Complied With Fed. R.
Civ. P. 23(E) ........................................................................................ 17

        1. The Dissemination Plan Satisfies Due Process ............................. 17

        2. The Contents of the Notice Satisfy Due Process ........................... 18

V. CONCLUSION ............................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell v. Consumer Cellular, Inc.*,
  No. 3:15-CV-941-SI, 2017 WL 2672073 (D. Or. June 21, 2017) .................................. 7, 8, 14

*Browne v. Am. Honda Motor Co.*,
  No. CV 09-06750 MMM DTBX, 2010 WL 9499072 (C.D. Cal. July 29, 2010).................. 11

*Colesberry v. Ruiz Food Products, Inc.*,
  No. CV F 04-5516, 2006 WL 1875444 (E.D. Cal. Jun. 30, 2006) ........................................ 17

*Edwards v. Nat'l Milk Producers Fed'n*,
  No. 11-CV-04766-JSW, 2017 WL 3623734 (N.D. Cal. June 26, 2017) ................................ 7

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)............................................................................................................. 17

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D.Cal. 1980)............................................................................................. 14

*Franks v. Kroger Co.*,
  649 F.2d 1216 (6th Cir. 1981) ............................................................................................ 17

*Hicks v. Stanley*,
  No. 01 CIV 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2007) ............................ 15

*Hughes v. Microsoft Corp.*,
  No. C98-1646C, C93-0178C, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) .................. 8

*In re Apple Inc. Sec. Litig.*,
  No. 5:06-CV-05208-JF HRL, 2011 WL 1877988 (N.D. Cal. May 17, 2011)....................... 16

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000), as amended (June 19, 2000)............................................. 13, 16

*In re Mfrs. Life Ins. Co. Premium Litig.*,
  MDL 1109, 1998 WL 1993385 (S.D. Cal. Dec. 21, 1998).................................................... 10

*In re OmniVision Techs.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................................................................... 10, 16

*In re Syncor ERISA Litigation*,
  516 F.3d 1095 (9th Cir. 2008) ............................................................................................ 12

*Lane v. Brown*,
  166 F. Supp. 3d 1180 (D. Or. 2016) ................................................................................... 6, 8

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) .............................................................................................. 8

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002).................................................................................. 12

*Marshall v. Holiday Magic, Inc.*,
550 F.2d 1173 (9th Cir. 1977) ........................................................................ 17, 18

*McPhail v. First Command Fin. Planning, Inc.*,
No. 05-171-IEG, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ............................... 7

*Mendoza v. United States*,
623 F.2d 1338 (9th Cir. 1980),
*cert. denied*, 450 U.S. 912 (1981) ...................................................................... 17

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................... 12

*Nobles v. MBNA Corp.*,
No. C 06-3723-CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009)...................... 10

*Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ............................................................................ 6, 7

*Riker v, Gibbons*,
No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) ........... 15

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) .................................................................. 13

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ............................................................................... 7

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ...................................................................... 7, 8, 17

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) ................................................................................ 6

*Vinh Nguyen v. Radient Pharm.*,
No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014)................ 11

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ............................................................................ 10

*Whirlpool Corp. v. CIT Grp./Bus. Credit, Inc.*,
293 F. Supp. 2d 1144 (D. Haw. 2003) abrogated on other grounds by *Durham v. Cty. of Maui*, No. CIV 08-00342 JMS/JEK, 2010 WL 3431128 (D. Haw. Aug. 31, 2010) ............. 12

*White v. Experian Info. Solutions, Inc.*,
803 F. Supp. 2d 1086 (C.D. Cal. 2011) ............................................................... 12

**Rules**

Fed. R. Civ. P. 23(e) ................................................................................. 1, 7, 8, 16

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (Third) § 30.42 (1995)..................................... 15

*Newberg on Class Actions*,
4 A. Conte & H.B. Newberg (4th ed. 2002) .................................................. 15, 17

NOTICE OF MOTION & MOTION; MPA ISO FINAL APPROVAL

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Class Representatives respectfully request that this Court grant final approval of the proposed partial settlement (the "Settlement") reached in this action ("Action") between Class Representatives Kisuk Cho, Anthony Kim, Pantelis Lavidas, and Joseph Buscema ("Class Representatives"), on behalf of the Class, and Defendants The DreamTeam Group ("DreamTeam"), LLC, Michael McCarthy ("McCarthy," and with DreamTeam, the "DreamTeam Defendants"), Lidingo Holdings, LLC ("Lidingo") and Kamilla Bjorlin ("Bjorlin," and with Lidingo, the "Lidingo Defendants"; all settling defendants collectively, the "Promoter Defendants").[1]

After extensive settlement negotiations, the Settling Parties entered into a stipulation setting forth the terms of the settlement of the claims asserted in the Action (the "Stipulation of Settlement" or "Settlement"). Under the terms of the Settlement, a settlement fund was created for the benefit of the class consisting of $165,000 in cash (the "Settlement Fund").

Defendant DreamTeam is a corporation whose liabilities exceed its assets, and does not have any insurance coverage for the claims asserted herein. Defendant McCarthy is personally contributing roughly one third of his net worth to settle this case, in addition to another six-figure settlement with the SEC, and a $35,000 settlement in a separate unrelated action. The Lidingo Defendants, which are a defunct Corporation without insurance and a failed actress, are contributing $65,000. Plaintiffs have confirmed through discovery that this settlement is substantial in light of the Promoter Defendants' assets. The settlement thus serves a useful deterrent and punitive function, while amounting to a meaningful recovery for Class Members.

---

[1] Class Representatives, on behalf of themselves and the Class, and Promoter Defendants are collectively referred to as the "Settling Parties."

On June 27, 2017, the Court signed an Order of Preliminarily Approval (the "Order"), Dkt. No. 224, and set a hearing date for final approval of November 17, 2017. Pursuant to the Order, approximately 5,676 Notice Packets setting forth the terms of the Settlement were mailed to potential Class Members and shareholders of record. Pursuant to the Order, the Summary Notice was published once on *PR Newswire* on August 11, 2017, and all of the relevant settlement papers, including the Notice and Proof of Claim form, have been available online at www.Galenasecuritieslitigation.com. To date, no Class Members have objected to the Settlement, and no Class Members have excluded themselves.

Accordingly, Class Representatives respectfully submit that the Settlement should be approved by this Court,[2] Final Judgment entered, and that the Court award Co-Class Counsel's reimbursement of expenses in the form attached as Exhibits [###] to the Horne Decl.[3]

## II.    BACKGROUND

Class Representatives bring this action on behalf of all persons who purchased or otherwise acquired Galena common stock during the period between August 6, 2013 and May 14, 2014, inclusive (the "Class Period"). Class Representatives' Consolidated Class Action Complaint for Violations of Federal Securities Laws (the "Complaint") (Dkt. No. 59) alleges that Defendants violated Sections 10(b) and 20(a) of the Securities and Exchange Act (the "Exchange Act").

Class Representatives allege that the Defendants conducted a pump-and-dump scheme whereby (a) the Promoter Defendants published bullish articles to boost Galena's stock price,

---

[2] The Court previously approved the Plan of Allocation in connection with the Galena Settlement.

[3] Pursuant to the Order, Lead Plaintiffs filed all papers in support of the Motion for Attorneys Fees and Reimbursement of Expenses concurrent herewith. The Proposed Final Order is materially identical to Exhibit B to the Stipulation of Settlement, Dkt. No. 221-5.

and then (b) the Galena Defendants dumped personally-held shares once the Promoter Defendants had boosted Galena's stock price. Complaint ¶1. Plaintiffs allege that the Promoter Defendants' articles were misleading because they omitted to disclose that the articles were paid promotions.  Complaint ¶3.

Plaintiffs allege that the Promoter Defendants knew, or recklessly disregarded the fact, that throughout the Class Period, the articles and the message board posts by DreamTeam and Lidingo authors never disclosed that they were paid promotions, nor that the authors were using false aliases. *Id.*

Plaintiffs allege loss causation through a series of six corrective disclosures from January 2014 to May 2014, ultimately revealing the fraud through an expose by an undercover investigator and disclosure of an SEC investigation. This series of disclosures wiped out more than half of Galena's market value. Complaint ¶9.

Promoter Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged in the litigation.

### A.    Procedural History

The first of the five actions that make up this consolidated securities class action was filed on March 5, 2014. Dkt. No. 1. Pursuant to the Private Securities Litigation Reform Act (the "PSLRA"), on October 3, 2014, the Court appointed Lead Plaintiffs, and approved their choice of Co-Class Counsel. Dkt. No. 52, at 24-25.

On October 31, 2014, Class Representatives filed their Consolidated Amended Class Action Complaint ("Complaint"). Dkt. No. 59. The Complaint sought to recover on behalf of investors who bought Galena shares between August 6, 2013, and May 14, 2014. *Id.* at ¶1. The Complaint named as Defendants Ahn, Schwartz, Kriegsman, DreamTeam, Meyer, McCarthy,

Lidingo, Bjorn, Bernarda, Chin, Galliker, Nisi, and Hillsberg. *Id.* at ¶¶21-39. The Complaint alleged six corrective disclosures. *Id.* at ¶¶138, 140, 145, 149, 151, 152. The Complaint also alleged claims under Section 20A of the Exchange Act, allowing recovery for insider trading violations.

The Complaint relied on Plaintiffs' investigation, including discussions with former employees of DreamTeam, Lidingo and Galena, discussions with Seeking Alpha, and a review of message board postings that appeared to have been made by the Promoter Defendants. *Id.* at ¶¶ 52, 80. The Complaint also relied on a report prepared by a Galena Special Committee, as well as the Exhibits thereto, resulting from an investigation into the wrongdoing alleged in this Action. *E.g. id.* at ¶ 73 and n.6. As reflected in an order dated April 28, 2015, the Special Committee Report has been filed under seal with the Court. Dkt. No. 116.

On May 12, 2015, the Promoter Defendants moved to dismiss the Complaint. Dkts. No. 99, 138. On August 8, 2015, after a full briefing by the parties on the motion to dismiss, the Court granted in part and denied in part the Promoter Defendants' Motions to Dismiss. Dkt. No. 149.

In December 2015, Class Representatives and the Galena Defendants agreed to settle the Class's claims against the Galena Defendants for $19.0 million in cash and $1.0 million in Galena stock (*i.e.*, the Galena Settlement). The Galena Settlement was finally approved on June 23, 2016. Dkts. No. 172, 194.

The Galena Settlement expressly carved out the claims against the Promoter Defendants. Dkt. # 170 ¶I.1(mm). Class Representatives reviewed documents the Galena Defendants produced to the SEC as part of the Galena Settlement. Class Representatives conducted

discovery on the Promoter Defendants and served Requests for Production and Interrogatories on each of the Promoter Defendants. *Id.* II.2.(f).

Through discovery, Class Representatives ascertained and confirmed that the Promoter Defendants did not have any applicable insurance policies that would cover the claims. Declaration of Jonathan Horne in Support of Motion for (I) Final Approval of Class Action Settlement; (II) Approval of Plan of Allocation; (III) Class Certification; (IV) Award of Attorneys' Fees; and (V) Reimbursement of Expenses (the "Horne Decl.") ¶3. Class Representatives conducted an asset search on the DreamTeam Defendants, and obtained a declaration of financial resources from the DreamTeam Defendants. Id. ¶4. Similarly, Class Representatives obtained particularized representations of financial resources from the Lidingo Defendants, and Defendant Bjorlin's 2014 and 2015 tax returns. *Id.*

Meanwhile, Class Representatives also moved for Class Certification, supported by an expert declaration, which the Promoter Defendants did not oppose. On December 12, 2016, the Court certified the Class, appointed Plaintiffs as Class Representatives and The Rosen Law Firm, P.A. and Pomerantz LLP as Co-Class Counsel. Dkt. No. 203.

In late 2015, Class Representatives and the Promoter Defendants conducted settlement negotiations by telephone and email. The settlement discussions, however, reached an impasse by the end of 2015. Horne Decl. ¶6.  Lead Plaintiffs continued forward with the litigation.

In the fall of 2016, Class Representatives renewed settlement discussions with the Promoter Defendants. At this time, Class Representatives obtained a declaration of financial resources from DreamTeam and McCarthy. These settlement discussions also reached an impasse. *Id.* ¶ 7. In January 2017, Class Representatives resumed settlement discussions with the Lidingo and Bjorlin and agreed to settle the Class's claims against Lidingo and Bjorlin for

$65,000. Shortly thereafter, Class Representatives resumed settlement discussions with the DreamTeam and McCarthy. Shortly before the scheduled 30(b)(1) deposition of McCarthy and 30(b)(6) deposition of DreamTeam, Class Representatives agreed to settle the claims against DreamTeam and McCarthy for $100,000. *Id.* ¶8.

**B.    Preliminary Approval and Notice**

On May 17, 2017, Class Representatives moved the Court for an order granting preliminary approval to the Settlement and directing dissemination of an approved notice of settlement to the Class, which was approved on June 27, 2017.

The Claims Administrator, KCC Class Action Services ("KCC"), disseminated Notice to Class members previously identified during the administration of the Galena Settlement. Declaration of Justin R. Hughes Regarding (A) Mailing of the Notice; (B) Publication of the Publication Notice; (C) Update to the Settlement Website; and (D) Report on Requests for Exclusion Received to Date ("Hughes Decl.") ¶2. KCC also caused the approved summary notice to be published over *PR Newswire* on August 11, 2017. *Id.* ¶3. In addition, KCC continues to maintain the previously designed and implemented website (www.Galenasecuritieslitigation.com) dedicated to the Settlement to assist potential Class Members. *Id.* ¶4. The website was operational beginning on March 3, 2016, and is accessible 24 hours a day, 7 days a week.

**III.    APPLICABLE STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS**

In the Ninth Circuit, "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *accord Lane v. Brown*, 166 F. Supp. 3d 1180, 1188 (D. Or. 2016). Class action suits readily lend themselves to compromise because of the

difficulties of proof, the uncertainties of the outcome and the typical length of the litigation. An "overriding public interest" exists in settling litigation, and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *accord Edwards v. Nat'l Milk Producers Fed'n*, No. 11-CV-04766-JSW, 2017 WL 3623734, at *3 (N.D. Cal. June 26, 2017).

In approving a proposed class action settlement under Fed. R. Civ. P. 23(e), the Court must find that the proposed settlement is "fair, reasonable, and adequate." To make this determination, the Ninth Circuit instructs the lower courts to consider several factors:

> [T]he strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625; *accord Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

Determining fairness falls within the "sound discretion" of the district court. *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375-76 (9th Cir. 1993). However, a strong initial presumption of fairness applies where, as here, the settlement is reached by experienced counsel after arm's-length negotiations. *See McPhail v. First Command Fin. Planning, Inc*., No. 05-171-IEG, 2009 WL 839841, at *3 (S.D. Cal. Mar. 30, 2009).

The Ninth Circuit has placed limits on the inquiry to be made by the Court in considering a settlement. The *Officers for Justice* court held that a:

> [F]airness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed

> settlement is not to be judged against a hypothetical or speculative measure of
> what might have been achieved by the negotiators.

688 F.2d at 625 (citations omitted); *accord Bell v. Consumer Cellular, Inc.*, No. 3:15-CV-941-SI,

2017 WL 2672073, at *4 (D. Or. June 21, 2017).

Here, it is Co-Class Counsel's considered judgment that this Settlement provides for a

fair, reasonable and adequate resolution of the litigation and thus, should be entitled to a

presumption of reasonableness. Horne Dec. ¶9. *See Hughes v. Microsoft Corp.*, No. C98-1646C,

C93-0178C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001); *accord Lane*, 166 F. Supp.

3d at 1190-91.

Thus, Class Representatives request that the Court find that the Settlement is "fair,

reasonable, and adequate," as required by Fed. R. Civ. P. 23(e). As demonstrated below,

consideration of several factors asserted by the Ninth Circuit weighs in favor of settlement in this

case.

## IV. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AND CERTIFY THE SETTLEMENT CLASS

### A. The Settlement Is Fair, Reasonable And Adequate

To determine whether a proposed settlement is fair, reasonable and adequate, a court may

consider "some or all" of the following factors: (1) the strength of the plaintiffs' case, including

the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining

class action status through trial; (3) the amount offered in settlement; (4) the extent of discovery

completed and the stage of the proceedings; (5) the experience and views of counsel; (6) the

presence of a governmental participant; and (7) the reaction of the class members to the proposed

settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *accord Bell*,

2017 WL 2672073, at *4. "This list is not exclusive and different factors may predominate in

different factual contexts." *Torrisi*, 8 F.3d at 1376 (citation omitted). As set forth below, an

analysis of each of these factors demonstrates that the Settlement is fair, adequate, and reasonable in this case.

> **1.    The Overall Strength of Plaintiffs' Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlement**

1.    Co-Class Counsel, who have a great deal of experience in litigating and resolving complex securities class actions, carefully evaluated the merits of this case, in light of all of the risks and potential weaknesses, before Class Representatives entered into the Settlement. First, Class Representatives and their counsel conducted a thorough investigation of the claims in this complex case with a multitude of Defendants. Co-Class Counsel conducted a detailed review of Galena's public filings with the SEC, its press releases and transcripts from its quarterly earnings calls and investment conference appearances, a broad review of media, analyst and news reports about the Company, and other publicly-available data, including trading data relating to the price and trading volume of Galena's publicly-traded securities. In addition, Co-Class Counsel conducted extensive investigation and analysis of non-public information, including interviews with former employees of Galena and the Promoter Defendants. Co-Class Counsel also reviewed internal Galena emails and board minutes and agendas concerning the stock promotion, as well as the Report of Galena's Independent Committee. Co-Class Counsel obtained and reviewed about 20,000 pages of documents from Galena as part of the Galena Settlement. Furthermore, Co-Class Counsel engaged an expert in seeking and obtaining class certification. Declaration of Jonathan Horne In Support of Lead Plaintiffs' Unopposed Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Horne Fee Decl.") ¶5.

While the case is strong – ***because of*** the substantial research and investigation conducted – continued litigation poses many risks, but most importantly, the Promoter Defendants would be unable to satisfy any potential judgment Plaintiffs received. The Promoter Defendants have

extremely limited financial resources and would likely exhaust their funds available for settlement in continuing to litigate. Class Representatives thoroughly vetted each Promoter Defendant's assets and liabilities through both discovery and Class Representatives' own investigation, prior to entering any settlement.

### 2. The Risks of Continued Litigation Weigh Heavily in Favor of Settlement

The risk that the litigation might result in the Class not recovering at all from the Settling Defendants, particularly in a case involving complicated legal issues, is a significant factor. *In re OmniVision Techs.,* 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (*citing Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

Although this case is meritorious, the outcome of lengthy litigation and trial are extremely uncertain. *See In re Mfrs. Life Ins. Co. Premium Litig.*, No. 1109, 1998 WL 1993385, at *5 (S.D. Cal. Dec. 21, 1998) (stating that "even if it is assumed that a successful outcome for plaintiffs at summary judgment or at trial would yield a greater recovery than the Settlement— which is not at all apparent—there is easily enough uncertainty in the mix to support settling the dispute rather than risking no recovery in future proceedings"). Therefore, careful consideration of the litigation risks supports approval of the Settlement as fair, adequate and reasonable. *See Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009), (deferring to the "reasoned judgment" of class counsel in opting to settle, although the class might have achieved greater recovery in taking the case to trial).

While this case is meritorious, there is a risk that part or all of it might be dismissed, or that Class Representatives might not succeed at trial. The Court has already trimmed certain of the claims in this action. The Court ***has*** found that the Complaint states a claim against most

Defendants. The Court, however, dismissed all claims against the Promoter Defendants except those based on scheme liability.  Dkt. No. 149, at 57-58.

Further, Plaintiffs would now have to prove that the Promoter Defendants made false statements *with scienter*. "[A]ny claim requiring proof of an intentional mental state presents challenges." *Vinh Nguyen v. Radient Pharm.,* No. SACV 11-00406 DOC, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014).

And while Plaintiffs allege several partial disclosures of the scheme, the Galena Defendants claim these disclosures did not reveal the fraud, or only revealed publicly available information. While the Court ruled in Plaintiffs' favor, it expressly acknowledged that the Galena Defendants (and therefore the Promoter Defendants) might be able to provide evidence to support their arguments at summary judgment or trial. Dkt. No. 149, at 63.

Moreover, this Action, if taken to trial, would have required tremendous preparation and resources by both sides, as well as substantial Court resources. *Browne v. Am. Honda Motor Co.*, No. CV 09-06750 MMM DTBX, 2010 WL 9499072, at *6 (C.D. Cal. July 29, 2010) ("Had the parties aggressively litigated class certification and tried the case, it could have consumed substantial party and court resources. There is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.") While Promoter Defendants do not appear to have the resources for such preparation, this fact does not necessarily help the Class, which would not benefit if the Promoter Defendants wasted all of their resources defending themselves, leaving nothing to pay a judgment.

And even if Class Representatives obtained a judgment on behalf of the Class, collecting it is another matter. The Promoter Defendants are not covered by any insurance policy and have

limited financial resources. Therefore, it is hard to imagine circumstances that would allow the Promoter Defendants to satisfy any judgment.

In sum, despite the strength of Class Representatives' case, the risk, expense, complexity, and likely duration of further litigation clearly support approval of the Settlement. *See In re Syncor ERISA Litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, approval is preferable to lengthy and expensive litigation with uncertain results.") Thus, this factor supports the Settlement because, "[u]nlike protracted litigation with an uncertain outcome, the Settlement offers class members prompt, efficient and guaranteed relief." *White v. Experian Info. Solutions, Inc.*, 803 F. Supp. 2d 1086, 1095 (C.D. Cal. 2011).

### 3.    The Settlement Recovers a Substantial Proportion of the Promoter Defendants' Net Worth

A defendant's inability to contribute substantially more to a settlement heavily favors approval. *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 365 (S.D.N.Y. 2002) (finding that the settlement provided maximum available cash in light of the "limited insurance coverage and poor cash position of the Company").

The settlement amount of $165,000 is a substantial proportion of the Promoter Defendants' net worth. DreamTeam and its affiliates, all small companies, managed to lose more than $730,000 between 2014 and 2015. Their liabilities exceeds their assets. McCarthy's personal net worth was less than $450,000. Dkt. No. 209-6 ¶¶7-9. The DreamTeam Defendants are also paying approximately $120,000 to settle claims brought by the SEC over misconduct involving Galena and another company. *In the Matter of Michael A. McCarthy et al*, Order

Instituting Cease-and-Desist Proceedings, at p.8.[4] As such, McCarthy is paying almost half of his net worth to put this alleged misconduct behind him. Class Representatives reviewed Ms. Bjorlin's tax returns for 2014 and 2015 and certain other financial information, confirming that the Lidingo Defendants have limited resources. Further, the Lidingo Defendants also face claims from the SEC. *Securities and Exchange Commission v. Lidingo Holdings*, LLC et al, 17-cv-2540 (S.D.N.Y. April 10, 2017).

> **4.    The Amount of Discovery Completed and the Stage of the Proceedings Support Approval of the Settlement**

"[I]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), as amended (June 19, 2000) (internal quotations omitted). Rather, "[t]he pertinent inquiry is what facts and information have been provided." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 587 (N.D. Ill. 2011).[5]

Class Representatives have sufficient information to evaluate the prospects for this case and assess the adequacy of the Settlement because the settlement was achieved at the close the discovery. By the time the Settlement was reached, Co-Class Counsel had: (1) reviewed and analyzed Galena's Class Period and pre-Class Period public filings, annual reports, press releases, quarterly earnings call and industry and investment conference transcripts, and other public statements; (2) collected and reviewed a compilation of analyst reports and major financial news service reports on Galena; (3) reviewed and analyzed stock trading data relating

---

[4] Available at < https://www.sec.gov/litigation/admin/2017/33-10343.pdf>
[5] The Court reached a similar conclusion in approving the Galena Settlement, finding that "the Settling Parties had sufficient information to make an informed decision and thus this factor supports approving the settlement." Dkt. # 190, at 8-9. Plaintiffs have more information now than they did then.

to Galena; (4) reviewed any potential defenses to Class Representatives' adequacy as class representatives; (5) investigated third party promoter industry specific practices; (6) conducted extensive investigation and analysis of publicly-available data, presentations, and other relevant materials; (7) conducted extensive investigation and analysis of non-public information, including interviews with former Galena and DreamTeam employees; (8) drafted the initial complaint and the detailed Amended Consolidated Complaint to comply with the PSLRA"; (9) researched, drafted and argued the opposition to five separate Motions to Dismiss by varying Defendants, as well as Defendants' additional Request for Judicial Notice; (10) prepared for and engaged in two separate full days of mediation, including drafting a mediation statement, as well as continued negotiation efforts over the weeks following the mediation sessions in order to finalize the Settlement; (11) obtained and reviewed over 20,000 pages of internal documents during the settlement process to confirm the adequacy of the Galena Settlement; (12) reviewed the Promoter Defendants' production of documents and responses to interrogatories, and reviewed and analyzed financial information about the Promoter Defendants. Horne Fee Decl. ¶5. Under these circumstances, Class Representatives and Co-Class Counsel were in an excellent position to evaluate the strengths and weaknesses of the Action and the substantial risks of continued litigation, and to conclude that the Settlement provides a fair, adequate, and reasonable recovery in the best interests of the Class. Having sufficient information to properly evaluate the Action, Co-Class Counsel has managed to settle this Action on terms very favorable to the Class without the substantial additional expense, risk, and uncertainty of continued litigation.

> **5.      Experienced Counsel Concur that the Settlement, Which Was Negotiated in Good Faith and at Arm's-Length, Is Fair, Reasonable, and Adequate**

"[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis v. Naval Air Rework Facility*,

87 F.R.D. 15, 18 (N.D. Cal. 1980); *see also Bell*, 2017 WL 2672073, at *6 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation") (internal quotations omitted). Moreover, "a presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." MANUAL FOR COMPLEX LITIGATION (Third) § 30.42 (1995); *Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) (quoting 4 A. Conte & H.B. Newberg, *Newberg on Class Actions* §11:42 (4th ed. 2002)).

This case has been litigated by experienced and well-respected counsel on both sides. *See* Exhibit A to the Smollar, Horne, and Ratliff Declarations. The Parties engaged in negotiations over multiple months.  Negotiations with the Promoter Defendants began in fall 2015, only to break apart by December 2015. They began again in May and October of 2016, only to fall apart again. Only in February 2017, after more than a year of protracted settlement negotiations and impasses, did the negotiations succeed.  *See Hicks v. Stanley*, No. 01 CIV 10071 (RJH), 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2007) ("A breakdown in settlement negotiations can tend to display the negotiation's arms-length and non-collusive nature.") Beyond that, it is evident that the negotiations were not collusive, given that the Promoter Defendants are giving up a significant portion of their own personal net worth to settle this case.

### 6. The Absence of a Governmental Participant

At the time of the Settlement, there was no governmental participant litigating on behalf of or alongside the Class.[6] Without this private, civil action there would have been no recovery for the Class. Accordingly, this factor supports Settlement approval.

### 7. The Reaction of the Class Members Supports Approval of the Settlement

Pursuant to the Court's Order dated February 16, 2016 (the "Preliminary Approval Order" Dkt. No. 172), 5,676 Notices Packets were sent to potential Settlement Class Members, and Summary Notices were distributed over *PR Newswire*. Hughes Decl. ¶¶2. The reaction of the Class to the Settlement was completely favorable. While the deadline for Settlement Class Members to exclude themselves from the Settlement Class is on October 27, 2017 and the deadline to object to the Settlement and the application for attorneys' fees and reimbursement of litigation expenses is on November 3, 2017, as of the filing of this Motion (October 18, 2017), there are no objections and no requests for exclusion. Hughes Decl. ¶5. "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027; *see also Mego*, 213 F.3d at 458. The fact that there have been no objections raises a strong presumption that the settlement is favorable to the class. *See OmniVision,* 559 F.Supp.2d at 1043; *In re Apple Inc. Sec. Litig.,* No. 5:06-CV-05208-JF HRL, 2011 WL 1877988, at *3 (N.D. Cal. May 17, 2011) Accordingly, Class Members' reaction to the Settlement strongly warrants approval.

---

[6] While the SEC was investigating the DreamTeam and Lidingo Defendants, they did not file actions until after the Promoter Settlement was reached.

NOTICE OF MOTION & MOTION; MPA ISO FINAL APPROVAL

**B.    The Notice Program Satisfied Due Process And Complied With Fed. R. Civ. P. 23(E)**

Due process requires that the class members be given notice of a proposed settlement and their right to be heard at the fairness hearing. There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements. Rather, to satisfy due process and comply with Fed. R. Civ. P. 23(e), notice for the approval of a class settlement by class members must only fairly apprise them of the subject matter of the suit, the proposed terms of the settlement, and the members' opportunity to be heard. *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177 (9th Cir. 1977); *see also Torrisi*, 8 F.3d at 1374-75. Thus, notice may contain only a "very vague description" of the proposed settlement. *Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980). Notice is "adequate if it may be understood by the average class member." 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.53 at 167.

**1.    The Dissemination Plan Satisfies Due Process**

There is no statutory or due process requirement that all class members receive actual notice by mail or other means. Rather, "individual notices must be provided to those Class Members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974). "Rule 23(e)  gives the Court 'virtually complete' discretion as to the manner of service of settlement notice." *Colesberry v. Ruiz Food Products, Inc.*, No. CVF 04-5516 AWISMS, 2006 WL 1875444, at *7 (E.D. Cal. June 30, 2006)  (citing *Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981)).  Here the notice was mailed to all class members who filed a claim in the Galena Settlement and would be eligible to also receive a recovery in the Promoter Settlement. This form of notice is common in cases where a partial settlement had already been approved by the court. *E.g. In re Worldcom, Inc., Sec. Litig.*, 03-cv-6229, dkt. # 20,

¶5.a. (S.D.N.Y. October 2, 2012); *In re Puda Coal Inc. Sec. Litigation*, 11-cv-2598, dkt. # 643 (S.D.N.Y. December 12, 2016).[7] Moreover, the Claims Administrator provided an estimate of the costs to mail the notice to all persons who were previously mailed a notice packet. That estimate is approximately $80,000, or about half the Settlement Fund, which would leave little to be distributed to Class Members.

### 2.    The Contents of the Notice Satisfy Due Process

This circuit provides that proper notice should provide: (1) the material terms of the proposed settlement; (2) disclosure of any special benefit to the class representatives; (3) disclosure of the attorneys' fees provisions; (4) the time and place of the final approval hearing and the method for objecting to the settlement; (5) and explanation regarding the procedures for allocating and distributing the settlement funds; and (6) the address and phone number of class counsel and the procedures for making inquiries. *See Marshall*, 550 F.2d at 1178.

Here, the Court-approved Notice provided all of the required information: a description of the $165,000 Settlement Fund; Co-Class Counsel's intent to apply for a fee award in an amount not to exceed 25% of the Settlement Fund for settlement of the class claims and an amount not to exceed $30,000 for reimbursement of expenses; and the contact information for Co-Class Counsel and the Claims Administrator, including how to make inquiries to both. The notice also included the date, time, and place of the fairness hearing, described how to object, and informed class members that any objection must be postmarked or received by the Court no later than November 3, 2017. Furthermore, the Court-approved notice adequately informed class members of the impact of the settlement, including release of claims against Defendants for any class members who do not opt out.

---

[7] These orders were previously filed in this case and are located at Dkts. No. 220-1 and 220-2.

In sum, broad dissemination of the Court-approved notice satisfied every conceivable requirement of due process. Accordingly, the settlement should be granted final approval.

## V.    CONCLUSION

The complexity of the facts at issue, the substantial expenses if this litigation were to continue to trial, and the risks attendant to prevailing on any, summary judgment, trial and subsequent appeals, weigh in favor of accepting a $165,000 recovery now on behalf of the Class. The Settlement presents an immediate benefit to Class Members. Accordingly, Class Representatives respectfully request this Court to approve the Settlement, Notices, and Plan of Allocation as fair, reasonable and adequate.

Dated: October 18, 2017                 Respectfully submitted,

                                        /s/  *Phillip Kim* (pro hac vice)
                                        **THE ROSEN LAW FIRM, P.A.**
                                        Laurence M. Rosen (pro hac vice)
                                        Phillip Kim (pro hac vice)
                                        Jonathan Horne (pro hac vice)
                                        275 Madison Avenue, 34th Floor
                                        New York, NY  10016
                                        Phone: (212) 686-1060
                                        Fax: (212) 202-3827
                                        Email: lrosen@rosenlegal.com

                                        -and-

                                        **POMERANTZ LLP**
                                        Patrick V. Dahlstrom
                                        Leigh Handelman Smollar
                                        Ten South LaSalle Street, Suite 3505
                                        Chicago, Illinois 60603
                                        Tel:  (312) 377-1181

                                        **POMERANTZ LLP**
                                        Jeremy A. Lieberman (pro hac vice)
                                        600 Third Avenue, 20th Floor
                                        New York, NY 10016
                                        Tel: 212-661-1100

                                        *Co-Class Counsel*

                                        **RANSOM, GILBERTSON, MARTIN &
                                        RATLIFF, L.L.P.**
                                        Jeffrey Ratliff
                                        1500 NE Irving Street, Suite 412
                                        Portland, Oregon 97232
                                        Tel: 503-226-3664

                                        *Liaison Counsel for the Class*

NOTICE OF MOTION & MOTION; MPA ISO FINAL APPROVAL

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record who have consented to electronic notification. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all non-CM/ECF participants.

DATED: October 18, 2017

/s/ Phillip Kim